SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MATTHEW S. MCCONNELL, Cal. Bar No. 209672
mmcconnell@sheppardmullin.com
TRAVIS J. ANDERSON, Cal. Bar No. 265540
tanderson@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California  92130
Telephone:   858.720.8900
Facsimile:   858.509.3691

DON J. PELTO, Cal. Bar No. 140499
dpelto@sheppardmullin.com
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006-6801
Telephone:   202.747.1911
Facsimile:   202.747.3389

Attorneys for Plaintiff
MEDICINOVA, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDICINOVA INC., a Delaware Corporation, | Case No. 14-cv-2513-L-KSC |
| Plaintiff, | **JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE** |
| v. | |
| GENZYME CORPORATION, a Massachusetts Corporation, | Magistrate Judge Karen S. Crawford |
| Defendants. | |

# I. __INTRODUCTION__

This is the Parties' "Joint Motion for Determination of Discovery Dispute," initiated by Plaintiff MediciNova, Inc.

**A.**     __MediciNova's Introduction__

In 2005, Plaintiff MediciNova, Inc.'s predecessor in interest licensed its patented gene therapy technology to defendant Genzyme Corporation.  In exchange, Genzyme promised to pay certain milestones should products covered by the gene therapy technology be developed.  In or about March 2014, Genzyme commenced a Phase 1 clinical trial for an age-related macular degeneration product called AAV2-sFLT01.  The parties dispute whether AAV2-sFLT01 is covered by the licensed gene therapy technology.  If it is, Genzyme owes a minimum of $1 million.

While the gene therapy technology may be complex, the question at the heart of this motion is simple.  Is MediciNova limited in discovery to the Investigational New Drug Application that Genzyme prepared and submitted to the federal Food and Drug Administration after it had already developed the drug product?  Or is it entitled to more—to discovery, for instance, of (i) straightforward admissions (or denials, if appropriate) of basic facts that bear directly on MediciNova's contentions regarding the nature of the development process, and (ii) documents and things that originated from the actual development process and are the best contemporaneous evidence of what happened therein?

So far, Genzyme has taken the position that the Investigational New Drug Application is the only necessary evidence.  In essence, Genzyme wants to deny MediciNova the opportunity to review the source documents and internal communications which will demonstrate what actually happened and whether the

1  Investigational New Drug Application is an accurate representation of that process.

2  By imposing this arbitrary limitation, Genzyme, which is in possession of

3  essentially all of the material evidence in this case, is trying to place itself in

4  complete control of the universe of evidence available to MediciNova.  But the right

5  to discovery is not so limited—MediciNova is entitled to discover all nonprivileged

6  evidence that is relevant to the parties' claims and/or defenses and proportional to

7  the needs of the case.  In an action with at least $1 million at stake, that surely

8  includes both admissions about the development process and contemporaneous

9  evidence of the events thereof that form the basis for MediciNova's claims (among

10 other materials discussed more fully herein).

11

12        As the Court recognized when it granted the parties' Joint Motion to Amend

13 the Scheduling Order (Doc. No. 43), much of the delay in discovery in this action

14 came about as a result of Genzyme's refusal to respond to **any** discovery except

15 under an attorneys' eyes only designation.  MediciNova served its first round of

16 discovery in July 2016, immediately after completing its Rule 26 call.  (Declaration

17 of Matthew S. McConnell ("McConnell Decl.") ¶¶ 2-3, Exs. A and C.)  Genzyme

18 refused to produce any discovery without an AEO designation.  The Court

19 ultimately issued a protective order on January 31, 2017 based on Genzyme's

20 representation that such an AEO designation was necessary.  (Doc. No. 40, 42.)  In

21 February 2017—more than six months after MediciNova first served its discovery

22 requests—Genzyme finally served written responses.[1]  (McConnell Decl. ¶ 4, Exs.

23 E-H.)

24

25 _____

26 [1]    Genzyme apparently faults MediciNova for waiting to produce its own
   discovery responses until after the protective order was in place.  (*See* Section
27 I.B.2, *infra*.)  In fact, the parties agreed to extend the discovery response

28

-2-

In its initial responses, Genzyme did not provide any substantive responses to the first set of interrogatories (nos. 1-18) or the second set of interrogatories (nos. 19-29) on the ground that combined the interrogatories totaled more than 25. (McConnell Decl., ¶ 4.)  Genzyme also refused to respond to many of the requests for admissions on relevancy and ambiguity.  (Exs. E-F.)  In addition, Genzyme marked every page of its responses to the interrogatories and admissions as attorneys' eyes only, despite the fact that all of Genzyme's responses to the interrogatories and most of the admissions were nothing but *objections*.[2] (McConnell Decl, ¶ 4; Exs. E-F.)  On March 15, 2017, after extensive meet and confer efforts, Genzyme provided supplemental responses to the requests for admissions and the first set of interrogatories[3] wherein Genzyme entirely withdrew the attorneys' eyes only designation.  (*Id.* ¶ 9, Exs. N-P.)

---

deadline while the protective order issue was dealt with.  MediciNova cannot reasonably be faulted for adhering to the parties' agreement, nor would it have been reasonable to expect MediciNova to produce its discovery while waiting for months to receive responses from Genzyme—even though MediciNova served its requests first.  MediciNova has believed and argued throughout that no attorneys' eyes only designation was necessary.  Genzyme's insistence to the contrary is the only cause for the delay in discovery.

[2] Genzyme pursued the same strategy in its initial disclosures under Federal Rule of Civil Procedure 26, initially designating every page "attorneys' eyes only" before withdrawing the designation entirely after MediciNova objected. (McConnell Decl. ¶ 10, Ex. Q.)

[3] On March 13, 2017, Genzyme provided substantive responses to the first set of interrogatories, but continued to refused to provide any substantive responses to the second set.  Genzyme marked every page of its March 13 responses to the first set of interrogatories as attorneys' eyes only. (McConnell Decl. ¶ 7.)

Of the documents Genzyme has produced, MediciNova is currently aware of approximately 9,000 pages out of about 121,000 produced that are designated attorneys' eyes only.  As an example, Genzyme labeled "attorneys' eyes only" a 2005 letter to an official at the FDA's Center for Biologics Evaluation and Research and its attachments, which include a journal article that was published in the American Society of Gene Therapy's journal "Molecular Therapy" in 2005.[4]  (*Id.* ¶ 11.)  MediciNova is not convinced that any part of this document is properly designated attorneys' eyes only; surely a published article that is part of the public record is not.[5]  Due to the manner in which Genzyme's documents were produced, as well as the sheer volume of those documents, MediciNova is still analyzing and reviewing the documents including Genzyme's use of the AEO designation.

In the end, none of Genzyme's written discovery responses are designated attorneys' eyes only, and the same is true of more than 90 percent of the documents Genzyme refused to produce until an AEO designation was available.  At this point, it appears that Genzyme insisted for many months on an attorneys' eyes only

---

[4]  On April 17, 2017, Genzyme identified this document as an example of a document marked by Genzyme as AEO.  MediciNova inquired whether Genzyme had any record of which documents were marked AEO, to which to Genzyme replied that it did not.  On April 18, 2017, MediciNova inquired whether Genzyme could identify the volume of documents marked AEO, to which no response has been received.  (McConnell Decl., ¶ 13.)

[5]  Genzyme's counsel claims in a concurrently filed declaration that it took only 15.3 hours for counsel to review all 121,000 pages of documents Genzyme produced and identify confidential and attorneys' eyes only material contained therein.  (Lambert Decl. ¶ 8.)  This equates to counsel reviewing and analyzing highly technical documents at a staggering pace of more than 130 pages per minute.  Yet the vast majority of the pages relate to the IND application, which itself primarily consists of complex scientific information typically taking minutes per page to review and analyze.

-4-

designation despite knowing that it only impacted a minor percentage of Genzyme's document production and none of its written discovery responses.  It appears that this was a tactic designed to delay discovery until Genzyme could get past the Court's discovery cut-off while producing as little useful information as possible.

**B.    Genzyme's Refusal To Participate In This Motion**

MediciNova provided a copy of the joint motion to Genzyme on Friday, April 14, 2017.  (McConnell Decl. ¶ 12.)  On April 19, 2017, Genzyme informed MediciNova that it would not participate in the joint motion because it believes the motion violates the Court's 45 day time limit on presenting discovery disputes.  (*Id.* ¶ 12, Ex. R.)  MediciNova addresses Genzyme's refusal to participate below.

As to the requests for admissions, Genzyme's position is without merit, as Genzyme provided supplemental responses on March 15, 2017 when it removed all of the AEO designations.[6]  (*Id.* ¶ 9, Exs. N-P.)  Regardless, good cause exists for the Court to consider this dispute.

**1.    MediciNova Should Not Be Punished For Diligently Meeting And Conferring In An Attempt To Informally Resolve These Disputes**

---

[6] Genzyme's response, based on *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, 2017 WL 951037 (S.D. Cal. Mar. 9, 2017), and *Cruz v. United States*, 2016 WL 727066 (S.D. Cal. Feb. 24, 2016), is a non sequitur.  *FlowRider* involved a situation in which a party asked informally for certain discovery on several occasions over a period of six months, but repeatedly conceded the point during the meet and confer process; that is not what happened here.  In *Cruz*, the Court denied a motion to compel as untimely because it sought to compel a response to an RFP that was identical to one previously served in the action. Again, that is not what happened here.

-5-

As detailed above, Genzyme has done everything possible to prevent MediciNova from having access to records and information that are exclusively in the control of Genzyme.  Genzyme's document dump of 121,000 pages of pdf files with no metadata has made it extremely cumbersome and time consuming to review the records.  In the end, the vast majority of these records are irrelevant and produced in such a way as to make it nearly impossible for MediciNova to reasonably use.

Genzyme's initial responses were served on February 6, 2017.  (McConnell Decl. ¶ 4, Exs. E and G.)  On February 17, 2017, MediciNova sent a 17-page meet and confer letter regarding Genzyme's discovery responses.  (*Id.* ¶ 5, Ex. I.)  Eleven days later, on February 28, 2017, Genzyme responded with a three page letter, which was mostly focused on purported deficiencies in MediciNova's discovery responses.  (*Id.* ¶ 6, Ex. J.)  On March 3, 2017, MediciNova responded in writing and requested a telephonic meet and confer call on March 6, 8, or 9.  (*Id.* ¶ 7, Ex. K.)  On March 6, Genzyme indicated that none of those dates worked, and proposed March 13, 2017.  (*Id.* ¶ 7, Ex. L)

A telephonic meet and confer call took place on March 13, 2017.  (*Id.* ¶ 7.)  Prior to the call, Genzyme finally provided substantive responses to the first set of interrogatories (but not the second), while marking every page attorneys' eyes only.  (*Id*.)  During the call, Genzyme agreed to review all of its objections a second time.  (*Id.*)  On March 15, 2017, Genzyme provided a letter in which it indicated that it had reviewed all of its objections to the document requests and requests for admissions and that it was standing by those objections.  (*Id.* ¶ 8, Ex. M.)  At that same time, Genzyme provided supplemental responses to the requests for admissions and first

set of interrogatories in which Genzyme removed *all* of the AEO designations.  (*Id.* ¶ 9, Exs. O and P.)

Thus, until March 15, 2017, MediciNova did not know whether Genzyme would rescind its frivolous objections and agree to provide good faith responses and relevant documents.  It was Genzyme that took 11 days to respond with a three page letter to the initial meet and confer letter, and it was Genzyme that asked to hold the meet and confer call a week after the earliest date proposed by MediciNova.  It was also Genzyme who promised to review all of its objections a second time, suggesting that Genzyme would thereafter do so in good faith.  During the meet and confer process, Genzyme never mentioned anything about a 45-day deadline, nor was MediciNova aware of this deadline.  (McConnell Decl., ¶ 14.)  Regardless, by the time Genzyme informed MediciNova on March 15, 2017 that it would not change any of its responses to the requests for production or the requests for admission, 37 days had passed since Genzyme's discovery responses were provided.  MediciNova would have had to prepare the joint motion in one day in order to provide it Genzyme seven days in advance of the 45 day filing date.  That would have been an impossible task given the number of deficient discovery responses.

This is not a situation in which MediciNova waited until the last moment and half-heartedly attempted to meet and confer.  To the contrary, within 11 days of receiving the responses, MediciNova provided a detailed, 17-page meet and confer letter.  MediciNova continued to meet and confer in good faith right up until March 15 when Genzyme stated it was not going to change any of its objections.  In hindsight, it appears that Genzyme may have intentionally dragged out the meet and confer process in another strategic attempt to avoid producing relevant and material information that only it possesses.  After being informed Genzyme would not

-7-

change any of its responses, MediciNova further analyzed Genzyme's discovery responses, and thereafter worked diligently on the joint motion, for which MediciNova's portion is over 120 pages long.  MediciNova should not be punished for working in good faith to try to resolve these discovery disputes, rather than going through the motions in order to quick pitch a discovery motion.

Notwithstanding its repeated attempts to avoid providing answers and producing documents, Genzyme's response to MediciNova's genuine attempt to resolve the discovery issues in this case is to object on timeliness.  Genzyme cannot have it both ways.  There is also absolutely no prejudice to Genzyme in having this motion heard, other than the fact that Genzyme will likely be required to provide straightforward answers and produce relevant documents.  MediciNova respectfully requests that the Court consider this motion in order to ensure that this lawsuit can be fairly resolved on the merits.

2.     **<u>Genzyme's Repeated Representations To The Court Regarding The Need For An Attorneys' Eyes Only Designation Appears To Have Been Designed To Mislead The Court And Deprive MediciNova The Opportunity To Conduct Discovery</u>**

The parties filed a Joint Motion to Amend the Scheduling Order on January 30, 2017.  (Doc. No. 41.)  At that time, Genzyme had to have known that less than ten percent of the records it was contemplating producing, and none of its discovery responses, warranted an attorneys' eyes only designation.  Yet Genzyme argued strenuously to this Court that MediciNova should be deprived of the right to conduct any further discovery because Genzyme had previously offered to produce all of its

1  discovery under Patent L.R. 2.2 by marking it *all* attorneys' eyes only.  (Joint

2  Motion (Doc. No. 41), at 8-14.)  For example, Genzyme argued:

3     Genzyme has *at all times* been willing to produce its
      information, provided certain routine and well-accepted
4     protections were in place.  MediciNova refused over and
      over again (eight times, to be exact), insisting that
5     Genzyme disclose its highly confidential information to
      MediciNova's high-ranking competitive decisionmakers.
6     MediciNova's hyperbole is merely an attempt to divert the
      Court's attention away from the central issue of the instant
7     motion:  whether MediciNova was **diligent**.  The facts
      demonstrate that the answer to this is a resounding "no."

8

9  (*Id.* at 10, n. 4.)

10

11     Later, Genzyme stated the following:

12     The parties are at a stage in the case where they will be
       responding to written discovery requests and producing
13     non-privileged documents responsive to document
       requests (subject to objections) within 5 business days
14     after entry of the Protective Order.  The discovery will be
       documents and written responses that would have been
15     produced long ago had MediciNova agreed to protect
       Genzyme's highly confidential information in accord with
16     the provisions of Patent L.R. 2.2, in which the Court
       expressly mandated that parties should not wait for a
17     Protective Order prior to making discovery exchanges.
       MediciNova's refusal to respect Genzyme's highly
18     confidential information or heed the Court's mandate on
       this issue was the cause of the discovery delay.

19

20  (*Id.* at 13.)

21

22     Finally, Genzyme made the following representation:

23     MediciNova's suggestion that Genzyme never offered to
       produce non-privileged or non-confidential documents and
24     information is incorrect.  Genzyme offered *eight times*—
       beginning almost five months ago—to produce *all* of its
25     information.  It is hard to imagine what more Genzyme
       could have done.  MediciNova's repeated protestations
26     that Genzyme "has all of the records and information"
       (*supra* p.7) is a problem of MediciNova's own making and
27     could have been easily cured—indeed, could be cured
       today—if MediciNova would simply agree to treat

28

-9-

1    Genzyme's highly confidential information as AEO
     materials.

2

3    (*Id.* at 13, n. 6.)

4

5         Genzyme produced its responses and documents on February 6, just one week

6    after submitting these arguments in the Joint Motion.  Genzyme's arguments to the

7    Court in the Joint Motion are incompatible with the reality that none of the written

8    discovery responses ended up being designated attorneys' eyes only, and to date

9    only about 9,000 pages out of about 121,000 pages were marked AEO.  Genzyme

10   had to have known these facts when it submitted the Joint Motion.  Yet Genzyme

11   appears to have attempted to mislead the Court by continuing to assert that it could

12   not provide responses or produce documents without an AEO designation.

13

14        The Joint Motion To Amend the Scheduling Order contains a detailed history

15   of the events leading to the protective order.  (Joint Motion (Doc. No. 41) at 1-3.)

16   The parties previously filed a Joint Motion for a Protective Order, in which

17   Genzyme argued at length for an attorneys' eyes only designation, making repeated

18   representations to this Court about the highly sensitive nature of the information that

19   it would be producing.  (Joint Motion re Protective Order (Doc. No. 36) at 2-9.)

20   This Court believed Genzyme and granted Genzyme's request.  If Genzyme had

21   been forthright and revealed that the AEO designation applied to less than ten

22   percent of the documents, and none of its discovery responses, discovery could have

23   and should have taken place six months ago.  The dispute over the protective order

24   could have and should have been limited to the less than ten percent of the

25   documents ultimately produced by Genzyme.

26

27

28

The record demonstrates that Genzyme has created tremendous delay by refusing to produce *any* discovery responses or documents until it obtained a protective order with an attorneys' eyes only designation.  Yet the record is now equally clear that such a designation was unnecessary for all of Genzyme's written responses, and the vast majority of the documents it chose to produce.  Genzyme, who is single-handedly responsible for this delay, should not be permitted to now argue that MediciNova should be denied its right to full and fair discovery because this motion is being filed more than 45 days after Genzyme's responses, particularly given the diligent meet and confer record described above.

## B.    Genzyme's Introduction

MediciNova's false accusations about Genzyme's discovery conduct are designed to mask the critical point that MediciNova has continuously delayed this litigation and exhibited a striking lack of diligence, culminating in MediciNova's **failure to comply with the Court-ordered 45-day deadline** by which it was required to file any discovery motion pertaining to Genzyme's discovery responses. So now, with less than six weeks remaining in the fact discovery period—which itself was previously extended by four months due to MediciNova's earlier lack of diligence and refusal to agree to an attorneys' eyes' only category of information exchange—MediciNova proposes that discovery be re-done and inevitably that the schedule be altered.  MediciNova's vitriolic mud-slinging cannot excuse MediciNova's lack of diligence and self-inflicted delays in discovery.

### 1.    The Subject Matter of This Case

MediciNova filed suit alleging that Genzyme breached the December 19, 2005, Assignment Agreement, in particular, that Genzyme's use of a specific

1   recombinant gene therapy product (known as AAV2-sFLT01) in a Phase I clinical

2   trial triggered a $1,000,000 milestone payment.  Genzyme has denied all liability.

3   The milestone payment is due only if the AAV2-sFLT01 product is covered by one

4   or more claims of U.S. Patent No. 6,376,237 (the "'237 Patent").  Thus, the key

5   inquiry in this case is whether any claims of the '237 Patent cover the AAV2-

6   sFLT01 product.  This question is answered in two steps: **<u>First</u>**, what do the claims

7   cover?  This is an issue of claim construction, a matter of law.  And **<u>Second</u>**,

8   comparing the AAV2-sFLT01 product to the claims of the '237 Patent.  This

9   requires (a) knowing what comprises the AAV-sFLT product and (b) knowing how

10  it was made.

11

12       Genzyme has responded to discovery requests and has produced documents

13  that answer all of these questions.  Genzyme's document production (and pinpoint

14  cites in its interrogatory responses) provide a very detailed description of the AAV2-

15  sFLT01 product and describe all aspects of how the AAV2-sFLT01 product is

16  created.  Of note, Genzyme has produced its Investigational New Drug Application

17  ("IND") file for the AAV2-sFLT01 product.  The IND is the complete file that

18  Genzyme has provided to the FDA regarding the AAV2-sFLT01 product pursuant to

19  regulatory requirements.  The IND for the AAV2-sFLT01 product contains, among

20  other things:

21           - a detailed description of the AAV2-sFLT01 product;

22           - the details regarding how the AAV2-sFLT01 product was created;

23           - the details of all testing of the AAV2-sFLT01 product; and

24           - a description of protocols used in the manufacturing and testing of the

25             AAV2-sFLT01 product.

26

27

28

1    Declaration of Curt Lambert ("Lambert Decl.") ¶ 7.  Moreover, Genzyme has

2    produced other material documents, including the '237 patent's prosecution history,

3    the agreement at issue, and other documents.  *See id.*

4

5         Thus, Genzyme has produced information that is sufficient to answer every

6    factual question in this case.  MediciNova does not identify any additional

7    documents or information that it needs for any issue in this case.  Instead, it argues

8    that it "is entitled to discover all nonprivileged evidence," regardless of how

9    duplicative, and regardless of the proportionality of the case.  As discussed below

10    with regard to the specific document requests, this is simply not the current

11    discovery standard.

12

13         **2.**      **The Attorneys' Eyes Only Designation Is Necessary In This Case.**

14

15         MediciNova's arguments about the AEO designation and how it is allegedly

16    unwarranted essentially reargues an issue that it already lost when the Court ruled

17    that an AEO designation was warranted in this case.  *See* ECF No. 40.  Without a

18    doubt, information that MediciNova has sought—and that Genzyme has produced in

19    discovery—easily meets the criteria of AEO information.  Specifically, the IND for

20    the AAV-sFLT product contains detailed descriptions of Genzyme's highly

21    confidential genetic materials and the processes and protocols used to create and test

22    those materials.  ECF No. 36-10.

23         It was MediciNova's refusal to move forward with discovery using an AEO

24    designation that caused the delays in this case.  First, Genzyme proposed a

25    reasonable Protective Order for the case—based on the Court's form order—yet

26    MediciNova rejected it, insisting on an order that did not allow AEO designation.

27

28

1   Ultimately, the Court adopted Genzyme's proposal and rejected MediciNova's.[7]

2   Also, for nearly two months and on eight separate occasions—from September 13,

3   2016, to November 1, 2016—Genzyme sought to produce documents to

4   MediciNova using the interim confidentiality designation set forth in Patent Local

5   Rule 2.2.  Lambert Decl. ¶ 3; ECF No. 41, at 9–10 & n.4.  MediciNova's attorneys

6   refused each and every time, apparently because they wanted to give Genzyme's

7   sensitive information to MediciNova's high-ranking competitive decision-makers

8   and inventors who are affiliated with numerous other biotechnology entities.  *Id.*

9   Had MediciNova agreed to either (a) Genzyme's proposed protective order (which

10  the Court ultimately adopted) or (b) the interim AEO designation (provided for in

11  the Local Rules), the case would not have been delayed.  MediciNova's

12  characterization that Genzyme waited "six months" to produce documents is a gross

13  mischaracterization—the delay was wholly of MediciNova's own doing.  The

14  parties ultimately agreed that all discovery responses would be served five business

15  days after the Court entered the Protective Order.  Lambert Decl. ¶ 4 & Ex. B.  The

16  Order was issued January 31, 2017, (ECF No. 42), and Genzyme served its

17  discovery responses and document production four business days later, on February

18  6, 2017.  Lambert Decl. ¶ 6 & Ex. D.  MediciNova's accusation of delay on the part

19  of Genzyme is simply untrue.

20

21         MediciNova's allegations that Genzyme misused the AEO designation is also

22  untrue.  Counsel for Genzyme and their staff spent more than 30 hours designating

23  _____

24  [7] The Protective Order issue has also been resolved by the Court in Genzyme's

25  favor.  In that briefing, Genzyme explained why it is improper for MediciNova's
    management team to have access to Genzyme's confidential information.  To the

26  extent required to rebut MediciNova's rehash of that argument in this briefing,
    Genzyme incorporates by reference its arguments pertaining to the parties'

27  Protective Order Discovery Dispute (*See* ECF No. 36, at 2–9).

28

-14-

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

the 121,043 pages of Genzyme's document production, carefully determining which documents deserve public, Confidential, and AEO treatment.   Lambert Decl. ¶ 8.  It has become apparent that counsel for MediciNova never even reviewed Genzyme's document production, and confirmed by statements made by MediciNova as part of the draft exchange for this motion.  *See id.* ¶ 11.

MediciNova's argument that "none of Genzyme's written discovery responses are designated attorneys' eyes' only" is misleading.  Genzyme incorporates AEO portions of its document production in many written discovery responses, often by reference pursuant to Fed. R. Civ. P. 33(d), thus the responses are certainly designated AEO, and the responses could not have been made until the AEO documents were subject to a protective order.  Lambert Decl. ¶ 17 & Ex. M.[8]

Finally, MediciNova's argument that only a portion of Genzyme's document production was designated AEO, thus Genzyme could have produced some of the documents earlier, is nonsensical.  Genzyme produced its documents—including the IND for the AAV-sFLT product—as they existed in their ordinary course.  Lambert Decl. ¶ 9.  The IND for AAV2-sFLT01 was produced in electronic folders and subfolders, providing organizational and chronological structure to the individual documents comprising the IND for AAV2-sFLT01.  *Id.*  To break up the documents or produce only the non-confidential parts would have served no purpose because the most relevant documents—describing the makeup of the AAV2-sFLT01 product and how it was created—are all AEO documents because of their highly confidential nature.  The form of production also refutes MediciNova's argument that

_____

[8] MediciNova, in its Introduction section, makes reference to Genzyme's numerosity objections to MediciNova's interrogatories.  Those objections, although not relevant here, were proper.  *See* Lambert Decl. ¶ 5.

Genzyme's document production was made in a way that "make[s] it nearly impossible for MediciNova to reasonably use."  Moreover, MediciNova itself withheld ***all of its own discovery responses*** due to the protective order dispute despite the fact that not a single page of MediciNova's document production or interrogatory responses is designated Confidential or AEO.  Thus, under MediciNova's own logic, MediciNova could have and should have produced all of its documents and served its interrogatory responses long before the Protective Order was entered.

In any event, MediciNova's arguments pertaining to the confidentiality designation of documents—which serve only to show MediciNova's unreasonableness and demonstrate MediciNova's fault for delaying the case—are irrelevant to the instant motion.  The Court agreed with Genzyme's proposed protective order, and due to the time it took to address MediciNova's rejected arguments regarding AEO materials and enter the protective order, the Court added an additional four months onto the fact discovery period.  Thus, the delays in entering the protective order—none of which can be faulted to Genzyme—are irrelevant to either MediciNova's failure to timely bring this motion or the substance of Genzyme's proper responses and objections.

-16-

**3.      This Motion Required Court Permission, Which Was Received (Subject to Genzyme's Timeliness Arguments) at the April 21 Case Management Conference.**

This Court's precedent has prohibited the filing of discovery motions (even agreed-upon discovery motions) beyond the 45-day window absent prior Court approval. *See Stoba v. Saveology.Com*, LLC, No. 13cv2925 BAS NLS, 2015 WL 3916475, at *1 (S.D. Cal. June 25, 2015) (denying Plaintiff's motion to compel discovery responses "because it was filed late, in violation of this chambers' 45-day rule regarding discovery disputes," *even though the parties had agreed to jointly file the motion*), *reconsideration denied*, No. 13-CV-02925-BAS NLS, 2015 WL 5040024 (S.D. Cal. Aug. 26, 2015). Based on that understanding, Genzyme informed MediciNova, on April 19, 2017, that the filing of a late discovery motion is prohibited. Instead, MediciNova would need to seek permission from the Court before the motion could be filed in accordance with the Court's decisions. At the April 21, 2017, Case Management Conference, MediciNova raised the issue of its proposed late discovery motion, and the Court informed the parties that a joint motion should be filed that addressed both issues—the lateness of the motion and the substantive discovery issues themselves. This joint motion addresses those issues.

**3.      MediciNova's Motion Is Untimely and Thus Barred Because It Was Brought Long After the 45-Day Window Provided in the Scheduling Order and This Court's Chambers' Rules.**

**a.      The Court's 45-Day Rule**

This Court has rigorously adhered to its Rule—set forth in Chambers' Rules and, in this case, also expressly set forth in the Scheduling Order—that prohibits the filing of discovery motions later than 45 days after discovery responses have been served. The Rule, as stated in the Scheduling Order in this case, states:

-17-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> All discovery motions must be filed within 45 days of the service of an objection, answer, or response which become the subject of a dispute, or the passage of a discovery due date without response or production, and only after counsel have met and conferred and have reached an impasse with regard to the particular issue. . . . **A failure to comply in this regard will result in a waiver of a party's discovery issue.**

Amended Scheduling Order ¶ 2 [ECF No. 43] (emphasis added).  Similarly, this Court's Chambers' Rules state:

> Unless otherwise ordered, discovery motions shall be filed no later than 45 days after the event giving rise to the dispute and only after counsel have met and conferred as described in Section "B" below.  The event giving rise to a discovery dispute is **NOT** the date on which counsel reach an impasse in meet and confer efforts.  For written discovery, the event giving rise to the dispute is the service of an objection, answer, or response, or the passage of a discovery due date without response or production.

Chambers' Rules ¶ V.A (emphasis in original).

The Court has consistently enforced these provisions, which protect litigants against the undue prejudice of discovery dispute resolution and remedies late in (or after) the discovery period.  *See Cruz v. United States*, No. 14CV2956-LAB (DHB), 2016 WL 727066, at *3 (S.D. Cal. Feb. 24, 2016) (denying motion to compel document production due to untimeliness); *LaNier v. United States*, No. 15CV360-BAS(BLM), 2017 WL 951040, at *5 (S.D. Cal. Mar. 10, 2017) (denying motion to compel further testimony and document production due to untimeliness); *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No. 15CV1879-BEN (BLM), 2017 WL 951037, at *7 (S.D. Cal. Mar. 9, 2017) (denying "untimely motion to compel irrelevant, duplicative, and confidential documents, which are not proportional to the needs of this case" and finding that "the imposition of sanctions [under Fed. R. Civ. Proc. 37(a)(5)(B) for doing so] is warranted and appropriate").

-18-

"[T]here is a sound reason for the rule, as it is meant to prevent a flurry of discovery motions being filed at the end of the discovery period, exactly what Plaintiffs appear to be doing here."  *Stoba v. Saveology.Com*, 2015 WL 3916475, at *1.

### b.      The "Trigger" for the Court's 45-Day Rule

The Scheduling Order and Chambers' Rules leave no doubt as to what event triggers the counting of the 45 days as part of the 45-Day Rule:  "The event giving rise to a discovery dispute is **<u>NOT</u>** the date on which counsel reach an impasse in meet and confer efforts.  For written discovery, the event giving rise to the dispute is the service of an objection, answer, or response, or the passage of a discovery due date without response or production."  Chambers' Rules ¶ V.A; *see also Cruz v. United States*, 2016 WL 727066, at *2 ("For written discovery, the event giving rise to the dispute is the date of the service of the initial response."); Amended Scheduling Order ¶ 2 [ECF No. 43].  The Court has strictly construed this and has rejected litigants' attempts to circumvent it.  "Courts in this district routinely reject attempts to end-run around discovery deadlines."  *Cruz*, 2016 WL 727066, at *2; *see also Bird v. PSC Holdings I, LLC*, 2013 WL 1120659 (S.D. Cal. Mar. 18, 2013) (holding that "any discovery demands which are substantially similar to previous demands will not re-start the clock for filing a discovery motion, and may be grounds for a protective order."); *ViaSat, Inc. v. Space Systems/Loral Inc.*, 2013 WL 3467413 (S.D. Cal. July 10, 2013) ("The Court is not inclined to indicate to these parties, or any parties, that they will be allowed to do an end run around discovery deadlines that were missed through a party's own lack of due diligence.  The consequences for failing to meet Court deadlines are undermined if the neglectful party is allowed to seek the same information through a different discovery vehicle.").

This Court has specifically rejected the argument that meet and confer efforts re-start or give cause to avoid the 45-Day Rule.  *See LaNier*, 2017 WL 951040, at *4.  Indeed this mandate appears in both the Scheduling Order and the Chambers' Rules, as recited above.   *See* Chambers' Rules ¶ V.A ("The event giving rise to a discovery dispute is **NOT** the date on which counsel reach an impasse in meet and confer efforts.").

### c.      Failure to Comply with the Court's 45-Day Rule

The Scheduling Order expressly spells out the consequence for failing to comply with the 45-Day Rule:  "A failure to comply in this regard will result in a waiver of a party's discovery issue."   Amended Scheduling Order ¶ 2 [ECF No. 43].

The Court has set a framework for a party's motion for potential relief from a court order such as the 45-Day Rule.  First, the movant must demonstrate that it has "good cause" to modify the 45-Day Rule:

> Once a Rule 16 scheduling order is issued, dates set forth therein may be modified only "for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *see also* ECF No. 41, at 7 (stating that the dates set forth in the CMC Order regulating discovery and other pretrial proceedings "will not be modified except for good cause shown").  The Rule 16 good cause standard focuses on the "reasonable diligence" of the moving party.  *Noyes v. Kelly Servs*., 488 F.3d 1163, 1174 n.6 (9th Cir. 2007); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294-95 (9th Cir. 2000) (stating Rule 16(b) scheduling order may be modified for "good cause" based primarily on diligence of moving party).  Essentially, "the focus of the inquiry is upon the moving party's reasons for seeking modification."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  However, a court also may consider the "existence or degree of prejudice to the party opposing the modification...."  *Id*.

*LaNier*, 2017 WL 951040, at *2.

1    Second, where (as here) the 45 days have passed before the motion is made,

2  the movant must show "excusable neglect":

3       In addition to being required to establish good cause, a party moving to
        extend time after a scheduling order deadline has passed must
4       demonstrate excusable neglect. *Mireles v. Paragon Sys., Inc.*, 2014
        WL 575713, at *2 (S.D. Cal. Feb. 11, 2014) (citing *Weil v. Carecore*
5       *Nat'l, LLC*, 2011 WL 1938196, at *2 (D. Colo. May 19, 2011)); *see*
        *also* Fed. R. Civ. P. 6(b)(1)(B) (stating "the court may, for good cause,
6       extend the time on motion made after the time has expired if the party
        failed to act because of excusable neglect."). The following factors are
7       considered in determining whether there has been excusable neglect:
8       the danger of prejudice to the non-moving party; the length of the delay
        and its potential impact on judicial proceedings; the reason for the
9       delay, including whether it was within the reasonable control of the
        movant; and whether the moving party's conduct was in good faith.
10      *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380,
        395 (1993).
11
12  *Id*.
13

14          **d.    MediciNova Failed to Comply With the Court's 45-Day Rule**
                    **and Cannot Show Good Cause and Excusable Neglect, Thus**
15                  **Its Discovery Motion Is Barred**

16

17    Genzyme served its objections and responses to MediciNova's discovery

18  requests on **February 6, 2017**. Lambert Decl. ¶¶ 6–7 & Ex. D.   Thus,

19  MediciNova's deadline for filing a discovery motion pertaining to these discovery

20  responses was **March 23, 2017**, which is 45 days after February 6, 2017.

21  MediciNova's discovery motion, given an effective filing date of **April 21, 2017**,

22  (the date of the telephonic Case Management Conference) is thus untimely because

23  MediciNova missed the 45-day window by a month. Therefore, the motion is

24  barred in accordance with the express requirement of Paragraph 2 of the Amended

25  Scheduling Order (ECF No. 43) and Chambers' Rules ¶ V.A. To allow MediciNova

26  to bring its late motion would contravene the purpose of the 45-Day Rule. *See*

27  *Stoba v. Saveology.Com*, 2015 WL 3916475, at *1 ("[T]here is a sound reason for

28

-21-

the rule, as it is meant to prevent a flurry of discovery motions being filed at the end of the discovery period, exactly what Plaintiffs appear to be doing here.").

Moreover, MediciNova's "excuses" for missing the deadline are just that— excuses.  None of MediciNova's "excuses" rises to the level of good cause (which is required in order to modify a scheduling order date), and none of them meets the standard for excusable neglect (which is required because the 45-day deadline passed before MediciNova filed its motion[9]).  *See Lanier*, 2017 WL 951040, at *4 ("Because the Court already has issued a scheduling order and the deadline at issue has passed, Plaintiff must demonstrate good cause and excusable neglect in order to have the deadline amended.").

First, MediciNova argues that because it was engaged in the meet and confer process, the 45-Day Rule should be suspended.  As explained above, this argument is outright rejected by the Scheduling Order, the Chambers' Rule, and case law, all of which expressly refute that argument.  *See* Section 4(b) above, citing Chambers' Rules ¶ V.A, *Cruz v. United States*, and Amended Scheduling Order ¶ 2 [ECF No. 43].  Genzyme's *discovery responses* triggered the 45-day window, and the meet and confer process did not suspend it.  Otherwise, a litigant could file a discovery motion as discovery is coming to an end, wholly disrupting the case schedule and the discovery process.  Indeed, this is precisely what MediciNova seeks to do, and the Court should enforce the Rule, as opposed to rewarding MediciNova for its lack of diligence.  Moreover, MediciNova **admits** that the meet and confer process had

---

[9] As this Court recently stated, "If a party is unable to comply with the [discovery motion] deadline, the party should file a motion to extend the deadline before the deadline passes and not wait nearly three months after the deadline passed before taking action."  *Lanier*, 2017 WL 951040, at *4.

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

concluded by March 15, 2017.  *See* above at pages 6–7.  Yet MediciNova **waited another full month**—unexplained in its argument above and inexcusable on its face—to begin the process of filing a discovery motion.  This is far from establishing "good cause," and in fact is the opposite of excusable neglect—it is *inexcusable disregard* that serves only to delay the case, cause the Court and parties unwarranted work, and prejudice Genzyme.[10]

Second, as to Genzyme's responses to MediciNova's Requests for Admission, MediciNova seeks to move the trigger date from February 7, 2017, (when Genzyme served its responses) to March 15, 2017, the date on which Genzyme removed its AEO designation for those responses.  This weak "excuse" fails—Genzyme did not substantively amend its responses; instead, it merely changed the confidentiality designation.  Lambert Decl. ¶ 14 & Ex. J.  This MediciNova "excuse" seeks to elevate form over substance, something this Court has consistently rejected.  *See, e.g., FlowRider Surf, Ltd.*, 2017 WL 951037, at *5 (rejecting party's argument that new substantially similar document requests re-triggered the window to file a discovery motion); *Cruz*, 2016 WL 727066, at *2 (rejecting party's argument a reiteration of its discovery requests re-triggered the 45-day window).

---

[10] MediciNova's argument implies that Genzyme was less than diligent during the meet and confer process.  This is simply inaccurate.  Genzyme responded diligently to each discovery letter that it received.  MediciNova complains that Genzyme took "11 days" to respond to its initial discovery complaint letter.  That letter was received after business hours on the Friday of a holiday weekend.  Lambert Decl. ¶ 18.  Genzyme responded to that lengthy letter within one business week.  *Id.* & Ex. N.   Similarly, MediciNova's March 3, 2017, e-mail that requested a meet and confer was also sent after hours on a Friday, and Genzyme replied the same effective business day (Monday, March 6, 2017), proposing a date that was necessarily after counsel for Genzyme returned to the office from a trip and thus would be available.  Lambert Decl. ¶ 19.  Finally, Genzyme sent an e-mail two days after the parties' March 13th meet and confer confirming the status of the discovery disputes, thus concluding the meet and confer process.  Lambert Decl. ¶ 20 & Ex. O.

1    Third, MediciNova's argument that it did not know of the 45-Day Rule[11] fails

2    to establish either good cause or excusable neglect.  *See Lanier*, 2017 WL 951040,

3    at *4 ("Plaintiff's other proffered reason for missing the deadline, that he simply

4    forgot there was a deadline, also fails to demonstrate reasonable diligence.").

5

6    Finally, although Genzyme need not establish that it would be prejudiced if

7    MediciNova were allowed to proceed with its motion, Genzyme will certainly be

8    prejudiced.  Fact discovery closes June 2, 2017, which is less than six weeks away.

9    There is simply no time under the current schedule to argue and adjudicate a

10    discovery motion, to implement any remedy (if any) that the Court may require (if

11    MediciNova has its way, this would mean the production of Genzyme's lab

12    notebooks and other materials that will take a significant amount of time and effort

13    to locate and produce, and a revision of written discovery responses), and to do all

14    of this without interfering with other case activities—such as depositions, expert

15    reports, and summary judgment briefing (which will include claim construction).

16    The time by which MediciNova should have initiated a discovery motion passed

17    long ago, and MediciNova should not be rewarded for acting in a clearly dilatory

18    manner and should not be excused from missing a Scheduling Order deadline and

19    Chambers' Rule in a way that unduly prejudices Genzyme.  This is especially so

20    because MediciNova already sought—and was granted—a four-month schedule

21    extension that was necessitated by MediciNova's refusal to agree to AEO document

22    designation, yet it squandered that additional time due to its lack of diligence.

23

24    Accordingly, MediciNova failed to comply with the Court's 45-Day Rule,

25    and cannot show both good cause and excusable neglect, thus its discovery motion

26

27  [11] MediciNova argues, "nor was MediciNova aware of this deadline."  *See above* at

28  page 6.

is barred.  Genzyme thus respectfully requests that MediciNova's motion be denied, and, as the Court ordered in *FlowRider*, fees be awarded to Genzyme pursuant to Fed. R. Civ. P. 37(a)(5)(B).  *See Flowrider*, 2017 WL 951037, at *7 ("Defendant nevertheless filed an untimely motion to compel irrelevant, duplicative, and confidential documents, which are not proportional to the needs of this case.  The Court therefore finds that Defendant's motion to compel was not substantially justified, and that the imposition of sanctions is warranted and appropriate.").  The fees are particularly appropriate here because MediciNova provided Genzyme with a **126-page draft** of its untimely motion, and Genzyme had to respond to both the untimeliness of it and the lengthy substance of the unwarranted requests.

## II.  ISSUES IN DISPUTE

A.   **Genzyme's Responses to MediciNova's Requests for Admissions**

   3.   **Request for Admission No. 14**

**MediciNova's Request for Admission No. 14**

Admit that YOU do not dispute that the PATENT-IN-SUIT is valid.

**Genzyme's Response to MediciNova's Request for Admission No. 14**

Defendant objects to the Request on the ground that the Request is improper under Fed. R. Civ. P. 33(a) in that it does not seek an admission of facts, the application of law to fact, or opinions about either; or the genuineness of any described documents.  Instead, the Request relates to a "contention" and is not an appropriate Request for Admission pursuant to Fed. R. Civ. P. 33.  To the extent a response is required, Defendant responds that it cannot appropriately or honestly admit or deny the Request because contentions such as the subject of the Request may change, especially as here when Plaintiff has provided insufficient information about its contentions.

**MediciNova's Contentions Regarding Request for Admission No. 14**

Federal Rule of Civil Procedure 33 governs interrogatories and has no application to MediciNova's requests for admissions.  Presuming that Genzyme intended to cite Rule 36, MediciNova's Request for Admission No. 14 properly asks Genzyme to apply law to fact as the express language of Rule 36(a)(1)(A) permits. Specifically, the request asks Genzyme to admit—based on the information available to it at the time the request was propounded—that it does not dispute the validity of the patent-in-suit.  *See Branch Banking and Trust Co. v. Deutz-Allis Corp.*, 120 F.R.D. 655, 658 (E.D.N.C. 1988) ("Clearly, a request for admission is not improper merely because it relates to an 'ultimate fact' or to an issue of fact that is dispositive of one aspect of the case.").  Genzyme either disputes the validity of the patent-in-suit or it does not.  The purpose of this request is not to ascertain whether the patent-in-suit is legally valid, but rather to ascertain whether Genzyme will contest that point in this action.

Genzyme's objection that its response may change over time is not a valid reason to refuse to respond.  Rule 36 contemplates this possibility and includes a mechanism by which a party may change its response to a request for admission based on later-discovered information.  *See* Fed. R. Civ. P. 36(b); *Branch Banking and Trust Co.*, 120 F.R.D. at 660 ("[W]hen an admission is made inadvertently, or new evidence is discovered after the admission despite due diligence, Rule 36(b) withdrawal should be allowed.").

**Genzyme's Response to MediciNova's Contentions Regarding Request for Admission No. 14**

Genzyme's objection includes an obvious typographical error, citing to Rule 33 rather than Rule 36 (from which the objection quotes).

-26-

MediciNova's Request for Admission asks for Genzyme to admit that it "does not dispute that the PATENT-IN-SUIT is valid."  Such a request is improper because it is directed to contentions.  "[C]ourts have repeatedly deemed as improper a RFA that seeks a legal conclusion."  *Veasley ex rel. Veasley v. United States*, No. 3:12-CV-03053-WQH, 2015 WL 1013699, at *4 (S.D. Cal. Mar. 9, 2015) ("As the plain text of at least three of these RFAs reveals, they invariably delve into such patently contested matters."); *see also Medigus Ltd. v. Endochoice, Inc.*, No. CV 15-505-LPS-CJB, 2016 WL 5791409, at *3 (D. Del. July 19, 2016) ("'[R]equests that seek legal conclusions are not allowed' (**e.g., a request for a party to admit whether a patent is valid or is infringed**)." (emphasis added)); *Fed. Trade Comm'n v. Amazon.com, Inc.*, No. C14-1038-JCC, 2015 WL 11256313, at *3 (W.D. Wash. Nov. 23, 2015) ("Requests [that] call for a legal conclusion . . . are inappropriate."); *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 2015 WL 2208444, at *5 (D. Or. May 11, 2015) ("Although Plaintiff has nominally tied its RFAs to the facts of the case, the request remains a legal conclusion: whether or not the Victaulic products are defective . . . ."); *Duchesneau v. Cornell Univ.*, No. CIV.A. 08-4856, 2010 WL 4117753, at *3 (E.D. Pa. Oct. 19, 2010) ("[A] RFA that 'calls for a legal conclusion that is one of the ultimate issues of the case is properly objectionable.'"); *Perez v. Miami–Dade County*, 297 F.3d 1255, 1269 (11th Cir. 2002) ("[I]ssues *obviously subject to dispute should be resolved at trial,* not in a discovery motion." (emphasis in original)); *Tulip Computers Int'l, B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) (holding that "determining whether a patent is valid would call for a legal conclusion although dependent on factual inquiries"); *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057 (S.D. Cal. 1999) (holding that a defendant may object to an RFA asking her to admit that she is a "public figure" as defined in Supreme Court case law as improperly seeking a purely legal conclusion); *Fulhorst v. United Techs. Auto., Inc.*, No. CIV. A. 96–

-27-

577–JJF, 1997 WL 873548, at *2–3 (D. Del. Nov. 17, 1997) ("By asking Plaintiff to admit to infringement in the context of the hypothetical use of its device, Defendant is improperly asking Plaintiff to draw a legal conclusion, which is not permitted by Rule 36.  Therefore, Plaintiff will not be required to comply with this request.").

Genzyme's objections are therefore proper.

### 4.        Request for Admission No. 15

**MediciNova's Request for Admission No. 15**

Admit that YOU do not dispute that the PATENT-IN-SUIT is enforceable.

**Genzyme's Response to MediciNova's Request for Admission No. 15**

Defendant objects to the Request on the ground that the Request is improper under Fed. R. Civ. P. 33(a) in that it does not seek an admission of facts, the application of law to fact, or opinions about either; or the genuineness of any described documents.  Instead, the Request relates to a "contention" and is not an appropriate Request for Admission pursuant to Fed. R. Civ. P. 33.  To the extent a response is required, Defendant responds that it cannot appropriately or honestly admit or deny the Request because contentions such as the subject of the Request may change, especially as here when Plaintiff has provided insufficient information about its contentions.

**MediciNova's Contentions Regarding Request for Admission No. 15**

Federal Rule of Civil Procedure 33 governs interrogatories and has no application to MediciNova's requests for admissions.  Presuming that Genzyme intended to cite Rule 36, MediciNova's Request for Admission No. 15 properly asks Genzyme to apply law to fact as the express language of Rule 36(a)(1)(A) permits.

-28-

Specifically, the request asks Genzyme to admit—based on the information available to it at the time the request was propounded—that it does not dispute the enforceability of the patent-in-suit.  *See Branch Banking and Trust Co.*, 120 F.R.D. at 658 ("Clearly, a request for admission is not improper merely because it relates to an 'ultimate fact' or to an issue of fact that is dispositive of one aspect of the case."). Genzyme either disputes the enforceability of the patent-in-suit or it does not.  The purpose of this request is not to ascertain whether the patent-in-suit is legally valid, but rather to ascertain whether Genzyme will contest that point in this action.

Genzyme's objection that its response may change over time is not a valid reason to refuse to respond.  Rule 36 contemplates this possibility and includes a mechanism by which a party may change its response to a request for admission based on later-discovered information.  *See* Fed. R. Civ. P. 36(b); *Branch Banking and Trust Co.*, 120 F.R.D. at 660 ("[W]hen an admission is made inadvertently, or new evidence is discovered after the admission despite due diligence, Rule 36(b) withdrawal should be allowed.").

**Genzyme's Response to MediciNova's Contentions Regarding Request for Admission No. 15**

Genzyme's objection includes an obvious typographical error, citing to Rule 33 rather than Rule 36 (from which the objection quotes).

MediciNova's Request for Admission asks for Genzyme to admit that it "does not dispute that the PATENT-IN-SUIT is enforceable."  Such a request is improper because it is directed to contentions.  "[C]ourts have repeatedly deemed as improper a RFA that seeks a legal conclusion."  *Veasley ex rel. Veasley v. United States*, No. 3:12-CV-03053-WQH, 2015 WL 1013699, at *4 (S.D. Cal. Mar. 9, 2015) ("As the

-29-

plain text of at least three of these RFAs reveals, they invariably delve into such patently contested matters."); *see also Medigus Ltd. v. Endochoice, Inc.*, No. CV 15-505-LPS-CJB, 2016 WL 5791409, at *3 (D. Del. July 19, 2016) ("'[R]equests that seek legal conclusions are not allowed' (e.g., a request for a party to admit whether a patent is valid or is infringed)."); *Fed. Trade Comm'n v. Amazon.com, Inc.*, No. C14-1038-JCC, 2015 WL 11256313, at *3 (W.D. Wash. Nov. 23, 2015) ("Requests [that] call for a legal conclusion . . . are inappropriate."); *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 2015 WL 2208444, at *5 (D. Or. May 11, 2015) ("Although Plaintiff has nominally tied its RFAs to the facts of the case, the request remains a legal conclusion: whether or not the Victaulic products are defective . . . ."); *Duchesneau v. Cornell Univ.*, No. CIV.A. 08-4856, 2010 WL 4117753, at *3 (E.D. Pa. Oct. 19, 2010) ("[A] RFA that 'calls for a legal conclusion that is one of the ultimate issues of the case is properly objectionable.' "); *Perez v. Miami–Dade County*, 297 F.3d 1255, 1269 (11th Cir. 2002) ("[I]ssues *obviously subject to dispute should be resolved at trial,* not in a discovery motion." (emphasis in original)); *Tulip Computers Int'l, B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) (holding that "determining whether a patent is valid would call for a legal conclusion although dependent on factual inquiries"); *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057 (S.D. Cal. 1999) (holding that a defendant may object to an RFA asking her to admit that she is a "public figure" as defined in Supreme Court case law as improperly seeking a purely legal conclusion); *Fulhorst v. United Techs. Auto., Inc.*, No. CIV. A. 96–577–JJF, 1997 WL 873548, at *2–3 (D. Del. Nov. 17, 1997) ("By asking Plaintiff to admit to infringement in the context of the hypothetical use of its device, Defendant is improperly asking Plaintiff to draw a legal conclusion, which is not permitted by Rule 36. Therefore, Plaintiff will not be required to comply with this request.").

Genzyme's objections are therefore proper.

### 5.      Request for Admission No. 18

**MediciNova's Request for Admission No. 18**

Admit that the claims in the PATENT-IN-SUIT do not include any mention of a herpes simplex virus type-1.

**Genzyme's Response to MediciNova's Request for Admission No. 18**

Defendant objects to the Request on the grounds that the phrase "do not include any mention" is unintelligible.  Patent claims are construed with reference to the patent's intrinsic record.

For the foregoing reasons, this request is DENIED.

**MediciNova's Contentions Regarding Request for Admission No. 18**

A party must respond to a request for admission unless it is so unintelligible that the responding party cannot, in good faith, frame an intelligent reply.  *See Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994) (parties should "admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted").  Contrary to Genzyme's objection, the phrase "do not include any mention" is not unintelligible or even ambiguous in the context of MediciNova's Request for Admission No. 18.  The request simply asks Genzyme to admit that the claims set forth in the patent-in-suit do not mention a herpes simplex virus type-1.  The virus is either mentioned in the claims or it is not.  Genzyme has not sufficiently explained its refusal to admit the request due to unintelligibility (or any other reason).

1  **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**
2  **No. 18**

3      MediciNova's Request for Admission asks for Genzyme to admit that "the
4  claims of the PATENT-IN-SUIT do not include any mention of a herpes simplex
5  virus type-1." Contrary to MediciNova's assertion, Genzyme has not objected on
6  the grounds that the Request is vague or ambiguous. Genzyme objected on the
7  grounds that the request is unintelligible, and DENIED the request. Patents describe
8  inventions and the manner and process of making and using them in full, clear,
9  concise, and exact terms as to enable a person of ordinary skill in the art to make
10 and use the invention and also conclude with claims that particularly point out and
11 distinctly claim the subject matter which the inventor regards as the invention. 35
12 U.S.C. § 112(a), (b). MediciNova's request is meaningless and unintelligible
13 because patents do not "include a mention" of things. Nonetheless, Genzyme
14 DENIED the request because patent claims are construed with reference to the
15 patent specification, and herpes simplex virus type-1is discussed in the patent
16 specification. Genzyme's objections are therefore proper, and Genzyme's denial on
17 this basis is appropriate. *See Davis v. Villagrana*, No. 1:09-CV-01897-AWI, 2013
18 WL 1003590, at *3 (E.D. Cal. Mar. 13, 2013) ("Defendant denied these requests for
19 admission and Plaintiff is required to accept those answers.").

20
21      **6.      Request for Admission No. 21**

22 **MediciNova's Request for Admission No. 21**

23      Admit that prior to June 15, 2016, YOU never informed MediciNova, Inc.
24 that YOU believed there was an exclusion in the PATENT-IN-SUIT for the use of a
25 herpes simplex virus type-1.

26
27
28

**Genzyme's Response to MediciNova's Request for Admission No. 21**

Defendant objects to the Request on the grounds that the phrase "exclusion in the PATENT-IN-SUIT for the use of a herpes simplex virus type-1" is unintelligible.  MediciNova was fully informed of the patent and its claims either expressly or as implicit in the patent and its intrinsic record and extrinsic record, and thus MediciNova was aware or should have been aware of the scope of the claims of the patent-in-suit.

For the foregoing reasons, this Request is DENIED.

**MediciNova's Contentions Regarding Request for Admission No. 21**

A party must respond to a request for admission unless it is so unintelligible that the responding party cannot, in good faith, frame an intelligent reply.  *See Marchand*, 22 F.3d at 938 (parties should "admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted").  Contrary to Genzyme's objection, the phrase "exclusion in the PATENT-IN-SUIT for the use of a herpes simplex virus type-1" is not unintelligible or even ambiguous in the context of MediciNova's Request for Admission No. 21.

Further, it is irrelevant to the request whether MediciNova was or should have been aware of the scope of the claims of the patent-in-suit.  The request simply asks Genzyme to admit that it never informed MediciNova of its belief regarding the exclusion.  It either informed MediciNova of such a belief or did not.  Genzyme has not sufficiently explained its refusal to admit the request due to unintelligibility (or any other reason).

SMRH:482717025.3

**Genzyme's Response to MediciNova's Contentions Regarding Request for Admission No. 21**

MediciNova's Request for Admission asks for Genzyme to admit that it did not inform MediciNova that it believed there was an "exclusion in the PATENT-IN-SUIT for the use of a herpes simplex virus type-1."  Contrary to MediciNova's assertion, Genzyme has not objected on the grounds that the Request is vague or ambiguous.  Genzyme has objected on the grounds that the request is unintelligible.  Patents describe inventions and the manner and process of making and using them in full, clear, concise, and exact terms as to enable a person of ordinary skill in the art to make and use the invention and also conclude with claims that particularly point out and distinctly claim the subject matter which the inventor regards as the invention.  35 U.S.C. § 112(a), (b).  To the extent that MediciNova is requesting an admission regarding the construction of patent claims or claim terms, such a request would be improper on the grounds that it would seek a legal conclusion.

Genzyme's objections are therefore proper.

### 7.   Request for Admission No. 23

**MediciNova's Request for Admission No. 23**

Admit that the manufacturing of the DRUG PRODUCT uses or has used an adeno-associated virus ("AAV") vector that contains a nucleic acid sequence encoding a protein that is not native to the virus (hereinafter referred to as "Production Molecule") and a separate AAV vector that assists the PRODUCTION MOLECULE with replication and/or packaging in a host cell (hereinafter referred to as "Helper Molecule").

-34-

1  **Genzyme's Response to MediciNova's Request for Admission No. 23**

2      In addition to its General Objections and Objections to Plaintiff's Definitions

3  and Instructions, Defendant objects to the Request on the grounds that the phrase "a

4  separate AAV vector that assists the PRODUCTION MOLECULE with replication

5  and/or packaging in a host cell" is ambiguous.

6

7      For the foregoing reasons, this Request is denied.

8

9  **MediciNova's Contentions Regarding Request for Admission No. 23**

10      A party must respond to a request for admission unless it is so unintelligible

11 that the responding party cannot, in good faith, frame an intelligent reply.  *See*

12 *Marchand*, 22 F.3d at 938 (parties should "admit to the fullest extent possible, and

13 explain in detail why other portions of a request may not be admitted").  Genzyme

14 did not object that MediciNova's Request for Admission No. 23 is unintelligible,

15 and contrary to Genzyme's objection, the phrase "a separate AAV vector that assists

16 the PRODUCTION MOLECULE with replication and/or packaging in a host cell"

17 is not ambiguous in the context of the request.  Genzyme has not explained in what

18 way it believes the phrase it identified is ambiguous or how any supposed ambiguity

19 prevents it from admitting the request.

20

21 **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

22 **No. 23**

23      MediciNova's Request for Admission asks for Genzyme to admit that a

24 "separate vector" assists a PRODUCTION MOLECULE with "replication and/or

25 packaging" in a host cell.  The Request for Admission contains multiple

26 ambiguities.  First, the term "separate AAV vector" is ambiguous because

27 MediciNova has not specified what the vector is separate from.  Second, the term

28

1  PRODUCTION MOLECULE is ambiguous because MediciNova has not made it

2  clear whether the term refers to the vector, the nucleic acid sequence, the protein, or

3  some combination thereof.  Third, the term "replication and/or packaging" is

4  ambiguous because MediciNova has not specified whether the "separate AAV

5  vector" must "assist" the PRODUCTION MOLECULE with replication *or*

6  packaging *or both*; clearly the "separate AAV vector" cannot "assist" the

7  PRODUCTION MOLECULE with replication *and* packaging *or* packaging at the

8  same time.  Accordingly, the Request for Admission is ambiguous.

9

10       Genzyme's objections are therefore proper, and Genzyme's denial on this

11  basis is appropriate.  *See Davis v. Villagrana*, No. 1:09-CV-01897-AWI, 2013 WL

12  1003590, at *3 (E.D. Cal. Mar. 13, 2013) ("Defendant denied these requests for

13  admission and Plaintiff is required to accept those answers.").

14       **8.**     **Request for Admission No. 24**

15

16  **MediciNova's Request for Admission No. 24**

17       Admit that the HELPER MOLECULE contains a region that codes for an

18  AAV replication protein or a protein that is capable of replicating the

19  PRODUCTION MOLECULE in the host cell (hereinafter referred to as "Rep

20  Protein").

21

22  **Genzyme's Response to MediciNova's Request for Admission No. 24**

23       In addition to its General Objections and Objections to Plaintiff's Definitions

24  and Instructions, Defendant objects to the Request on the grounds that the definition

25  of the term "HELPER MOLECULE" set forth in Request No. 23 is ambiguous.

26

27       For the foregoing reasons, this Request is denied.

28

**MediciNova's Contentions Regarding Request for Admission No. 24**

A party must respond to a request for admission unless it is so unintelligible that the responding party cannot, in good faith, frame an intelligent reply. *See Marchand*, 22 F.3d at 938 (parties should "admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted"). Genzyme did not object that MediciNova's Request for Admission No. 24 is unintelligible, and contrary to Genzyme's objection, the defined term "HELPER MOLECULE" ("a separate AAV vector that assists the PRODUCTION MOLECULE with replication and/or packaging in a host cell") is not ambiguous in the context of the request. Genzyme has not explained in what way it believes the defined term is ambiguous or how any supposed ambiguity prevents it from admitting the request.

**Genzyme's Response to MediciNova's Contentions Regarding Request for Admission No. 24**

MediciNova's definition of HELPER MOLECULE in Request for Admission No. 23 is ambiguous because MediciNova has not specified whether the term refers to the "separate AAV vector," the "host cell," or the "separate AAV vector" and "host cell" together (or potentially some combination with the PRODUCTION MOLECULE). The term "replication and/or packaging" is ambiguous because MediciNova has not specified whether the "separate AAV vector" must "assist" the PRODUCTION MOLECULE with replication *or* packaging *or both*; clearly the "separate AAV vector" cannot "assist" the PRODUCTION MOLECULE with replication *and* packaging *or* packaging at the same time. MediciNova's subsequent Requests for Admission asking for Genzyme to admit aspects of the HELPER MOLECULE only add to the ambiguity of MediciNova's definition. Specifically, the subsequent Requests for Admission ask whether the HELPER MOLECULE "contains a region that codes" (RFA Nos. 24 and 25), "contains an AAV p5

promoter" (RFA Nos. 26-31), "codes for" and "expresses" and "contains" protein (RFA Nos. 32-33), and "contains" protein (RFA No. 36).  Accordingly, MediciNova's definition of HELPER MOLECULE is hopelessly ambiguous.

Genzyme's objections are therefore proper, and Genzyme's denial on this basis is appropriate.  *See Davis v. Villagrana*, No. 1:09-CV-01897-AWI, 2013 WL 1003590, at *3 (E.D. Cal. Mar. 13, 2013) ("Defendant denied these requests for admission and Plaintiff is required to accept those answers.").

### 9.    Request for Admission No. 25

**MediciNova's Request for Admission No. 25**

Admit that the HELPER MOLECULE contains a region that codes for an AAV capsid protein or a protein that is capable of packaging the PRODUCTION MOLECULE into a virion in the host cell (hereinafter referred to as "Cap Protein").

**Genzyme's Response to MediciNova's Request for Admission No. 25**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that the definition of the term "HELPER MOLECULE" set forth in Request No. 23 is ambiguous.

For the foregoing reasons, this Request is denied.

**MediciNova's Contentions Regarding Request for Admission No. 25**

A party must respond to a request for admission unless it is so unintelligible that the responding party cannot, in good faith, frame an intelligent reply.  *See Marchand*, 22 F.3d at 938 (parties should "admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted").  Genzyme

-38-

did not object that MediciNova's Request for Admission No. 25 is unintelligible, and contrary to Genzyme's objection, the defined term "HELPER MOLECULE" ("a separate AAV vector that assists the PRODUCTION MOLECULE with replication and/or packaging in a host cell") is not ambiguous in the context of the request.  Genzyme has not explained in what way it believes the defined term is ambiguous or how any supposed ambiguity prevents it from admitting the request.

**Genzyme's Response to MediciNova's Contentions Regarding Request for Admission No. 25**

MediciNova's definition of HELPER MOLECULE in Request for Admission No. 23 is ambiguous because MediciNova has not specified whether the term refers to the "separate AAV vector," the "host cell," or the "separate AAV vector" and "host cell" together (or potentially some combination with the PRODUCTION MOLECULE).  The term "replication and/or packaging" is ambiguous because MediciNova has not specified whether the "separate AAV vector" must "assist" the PRODUCTION MOLECULE with replication *or* packaging *or both*; clearly the "separate AAV vector" cannot "assist" the PRODUCTION MOLECULE with replication *and* packaging *or* packaging at the same time.  MediciNova's subsequent Requests for Admission asking for Genzyme to admit aspects of the HELPER MOLECULE only add to the ambiguity of MediciNova's definition.  Specifically, the subsequent Requests for Admission ask whether the HELPER MOLECULE "contains a region that codes" (RFA Nos. 24 and 25), "contains an AAV p5 promoter" (RFA Nos. 26-31), "codes for" and "expresses" and "contains" protein (RFA Nos. 32-33), and "contains" protein (RFA No. 36).  Accordingly, MediciNova's definition of HELPER MOLECULE is hopelessly ambiguous.

-39-

1    Genzyme's objections are therefore proper, and Genzyme's denial on this

2    basis is appropriate.  *See Davis v. Villagrana*, No. 1:09-CV-01897-AWI, 2013 WL

3    1003590, at *3 (E.D. Cal. Mar. 13, 2013) ("Defendant denied these requests for

4    admission and Plaintiff is required to accept those answers.").

5

6       **10.     Request for Admission No. 26**

7    **MediciNova's Request for Admission No. 26**

8       Admit that the HELPER MOLECULE contains an AAV p5 promoter.

9

10   **Genzyme's Response to MediciNova's Request for Admission No. 26**

11      In addition to its General Objections and Objections to Plaintiff's Definitions

12   and Instructions, Defendant objects to the Request on the grounds that the definition

13   of the term "HELPER MOLECULE" set forth in Request No. 23 is ambiguous.

14

15      Defendant further objects to the Request on the grounds that it seeks

16   information that has no relevance to the claims and defenses in this litigation, and

17   therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows

18   requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*,

19   *Amergen Energy Co., LLC ex rel. Exelon Generation Co., LLC v. United States*, 94

20   Fed. Cl. 413, 416-17 (2010) ("One ground, among many, that can justify an

21   objection to a request for admission is that the request for admission seeks an

22   admission that is irrelevant to the case being tried."); *Estate of Cederloff v. United*

23   *States*, No. DKC 08-2863, 2010 WL 157512, at *2 (D. Md. Jan. 13, 2010) (denying

24   Rule 36(a)(6) motion because the requests for admission in question were "wholly

25   irrelevant" to the case); *Mercantile Safe Deposit & Trust Co. v. Glass*, No. CIV. A.

26   HM 91-2606, 1993 WL 313613, at *3 (D. Md. June 2, 1993) (denying motion to

27   compel because "the discovery requests and the requests for admission at issue are

28

1   not relevant to the proceedings as they currently stand"); *Walker v. State Farm Mut.*

2   *Auto. Ins. Co.*, No. CIV. A. 5:11-0529, 2012 WL 1155140, at *10 (S.D. W. Va. Apr.

3   5, 2012) (denying plaintiffs' motion regarding sufficiency of objections to requests

4   for admission); *Tuvalu v. Woodford*, No. S04-1724 DFLKJMP, 2006 WL 3201096,

5   at *7 (E.D. Cal. Nov. 2, 2006), *report and recommendation adopted*, No.

6   CIVS041724JAMKJMP, 2008 WL 2774571 (E.D. Cal. July 15, 2008) (granting

7   motion to compel response to only one request for admission out of more than

8   thirty).

9

10      Because "the responding party waives any objections to the request for

11   admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this

12   request is neither admitted nor denied.

13

14   **MediciNova's Contentions Regarding Request for Admission No. 26**

15      A party must respond to a request for admission unless it is so unintelligible

16   that the responding party cannot, in good faith, frame an intelligent reply.  *See*

17   *Marchand*, 22 F.3d at 938 (parties should "admit to the fullest extent possible, and

18   explain in detail why other portions of a request may not be admitted").  Genzyme

19   did not object that MediciNova's Request for Admission No. 26 is unintelligible,

20   and contrary to Genzyme's objection, the defined term "HELPER MOLECULE"

21   ("a separate AAV vector that assists the PRODUCTION MOLECULE with

22   replication and/or packaging in a host cell") is not ambiguous in the context of the

23   request.  Genzyme has not explained in what way it believes the defined term is

24   ambiguous or how any supposed ambiguity prevents it from admitting the request.

25

26      Genzyme's objection that MediciNova's Request for Admission No. 26 seeks

27   information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

28

broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 663 (D. Kan. 2003) (internal quotations omitted). MediciNova's complaint alleges that Genzyme owes MediciNova a milestone payment under the terms of the Assignment Agreement between the parties because Genzyme used MediciNova's AAV vector technology in manufacturing the drug product.  AAV is a helper-dependent virus, requiring co-infection with a helper molecule in order to form AAV virions.  This Request for Admission, which relates to a specified characteristic of the helper molecule, is therefore relevant to the issue of how Genzyme manufactured its recombinant AAV product, and whether it did so using the technology described and embodied in the '237 Patent.  As such, this Request for Admission is also relevant to the ultimate issues in this case, including whether Genzyme breached the Assignment Agreement between the parties by using MediciNova's AAV vector technology.  Accordingly, the characteristics of the helper molecule—and specifically, whether it contains an AAV p5 promoter, as the request asks Genzyme to admit—relate directly to the dispute as to whether the drug product is covered by the '237 patent, and Genzyme should respond to this Request for Admission.

**Genzyme's Response to MediciNova's Contentions Regarding Request for Admission No. 26**

MediciNova's definition of HELPER MOLECULE in Request for Admission No. 23 is ambiguous because MediciNova has not specified whether the term refers to the "separate AAV vector," the "host cell," or the "separate AAV vector" and "host cell" together (or potentially some combination with the PRODUCTION MOLECULE).  The term "replication and/or packaging" is ambiguous because

-42-

1    MediciNova has not specified whether the "separate AAV vector" must "assist" the

2    PRODUCTION MOLECULE with replication *or* packaging *or both*; clearly the

3    "separate AAV vector" cannot "assist" the PRODUCTION MOLECULE with

4    replication *and* packaging *or* packaging at the same time.  MediciNova's subsequent

5    Requests for Admission asking for Genzyme to admit aspects of the HELPER

6    MOLECULE only add to the ambiguity of MediciNova's definition.  Specifically,

7    the subsequent Requests for Admission ask whether the HELPER MOLECULE

8    "contains a region that codes" (RFA Nos. 24 and 25), "contains an AAV p5

9    promoter" (RFA Nos. 26-31), "codes for" and "expresses" and "contains" protein

10   (RFA Nos. 32-33), and "contains" protein (RFA No. 36).  Accordingly,

11   MediciNova's definition of HELPER MOLECULE is hopelessly ambiguous.

12

13       Moreover, it is irrelevant whether the HELPER MOLECULE (whatever the

14   term means) contains an AAV p5 promoter.  This inquiry has nothing whatsoever to

15   do with ascertaining the scope of the '237 patent—particularly whether the '237

16   patent covers drug products derived from the herpes virus—and whether that scope

17   covers Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this

18   litigation.  Accordingly, the Request seeks information that is not "relevant to any

19   party's claim or defense" and is certainly not "proportional to the needs of the case,

20   considering the importance of the issues at stake in the action, the amount in

21   controversy, the parties' relative access to relevant information, the parties'

22   resources, the importance of the discovery in resolving the issues, and whether the

23   burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.

24   Civ. Proc. 26(b)(1).

25

26       Genzyme's objections are therefore proper—and the case law recited in

27   Genzyme's response fully supports the proposition that a party should not be made

28

1   to admit or deny information not relevant to the case.  *See, e.g.*, *Amergen Energy*

2   *Co., LLC ex rel. Exelon Generation Co., LLC v. United States*, 94 Fed. Cl. 413, 416-

3   17 (2010) ("One ground, among many, that can justify an objection to a request for

4   admission is that the request for admission seeks an admission that is irrelevant to

5   the case being tried."); *Estate of Cederloff v. United States*, No. DKC 08-2863, 2010

6   WL 157512, at *2 (D. Md. Jan. 13, 2010) (denying Rule 36(a)(6) motion because

7   the requests for admission in question were "wholly irrelevant" to the case);

8   *Mercantile Safe Deposit & Trust Co. v. Glass*, No. CIV. A. HM 91-2606, 1993 WL

9   313613, at *3 (D. Md. June 2, 1993) (denying motion to compel because "the

10   discovery requests and the requests for admission at issue are not relevant to the

11   proceedings as they currently stand"); *Walker v. State Farm Mut. Auto. Ins. Co.*, No.

12   CIV. A. 5:11-0529, 2012 WL 1155140, at *10 (S.D. W. Va. Apr. 5, 2012) (denying

13   plaintiffs' motion regarding sufficiency of objections to requests for admission);

14   *Tuvalu v. Woodford*, No. S04-1724 DFLKJMP, 2006 WL 3201096, at *7 (E.D. Cal.

15   Nov. 2, 2006), *report and recommendation adopted*, No. CIVS041724JAMKJMP,

16   2008 WL 2774571 (E.D. Cal. July 15, 2008) (granting motion to compel response to

17   only one request for admission out of more than thirty).

18

19          Indeed, MediciNova's Requests for Admission 26 through 50 are all clearly

20   designed as a "fishing expedition," asking for admission on information that is

21   wholly irrelevant to the issue in this case—whether the '237 patent covers

22   Genzyme's AAV2-sFLT01 drug product.  During the meet and confer process,

23   MediciNova's counsel has no answer to the question of "how is the information

24   sought in these RFAs relevant to this case?"  And MediciNova's argument (above)

25   is equally barren with regard to relevance.

26

27

28

-44-

**11.   Request for Admission No. 27**

**MediciNova's Request for Admission No. 27**

Admit that the HELPER MOLECULE contains an AAV p5 promoter and the p5 promoter is modified such that the p5 promoter does not function in transcription initiation.

**Genzyme's Response to MediciNova's Request for Admission No. 27**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that the definition of the term "HELPER MOLECULE" set forth in Request No. 23 is ambiguous.

Defendant further objects to the Request on the grounds that it seeks information that has no relevance to the claims and defenses in this litigation, and therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows requests to admit the truth of matters "within the scope of Rule 26(b)(1)." *See, e.g.*, *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2; *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

Because "the responding party waives any objections to the request for admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this request is neither admitted nor denied.

**MediciNova's Contentions Regarding Request for Admission No. 27**

A party must respond to a request for admission unless it is so unintelligible that the responding party cannot, in good faith, frame an intelligent reply. *See Marchand*, 22 F.3d at 938 (parties should "admit to the fullest extent possible, and

1    explain in detail why other portions of a request may not be admitted").  Genzyme

2    did not object that MediciNova's Request for Admission No. 27 is unintelligible,

3    and contrary to Genzyme's objection, the defined term "HELPER MOLECULE"

4    ("a separate AAV vector that assists the PRODUCTION MOLECULE with

5    replication and/or packaging in a host cell") is not ambiguous in the context of the

6    request.  Genzyme has not explained in what way it believes the defined term is

7    ambiguous or how any supposed ambiguity prevents it from admitting the request.

8

9         Genzyme's objection that MediciNova's Request for Admission No. 27 seeks

10   information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

11   broadly construed, and a request for discovery should be considered relevant if there

12   is any possibility that the information sought may be relevant to the claim or defense

13   of any party."  *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

14   omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

15   milestone payment under the terms of the Assignment Agreement between the

16   parties because Genzyme used MediciNova's AAV vector technology in

17   manufacturing the drug product.  AAV is a helper-dependent virus, requiring co-

18   infection with a helper molecule in order to form AAV virions.  This Request for

19   Admission, which relates to a specified characteristic of the helper molecule, is

20   therefore relevant to the issue of how Genzyme manufactured its recombinant AAV

21   product, and whether it did so using the technology described and embodied in the

22   '237 Patent.  As such, this Request for Admission is also relevant to the ultimate

23   issues in this case, including whether Genzyme breached the Assignment

24   Agreement between the parties by using MediciNova's AAV vector technology.

25   Accordingly, the characteristics of the helper molecule—and specifically, whether it

26   contains an AAV p5 promoter with the specific characteristics identified in the

27   request, as the request asks Genzyme to admit— relate directly to the dispute as to

28

-46-

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

1   whether the drug product is covered by the '237 patent, and Genzyme should

2   respond to this Request for Admission.

3

4   **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

5   **No. 27**

6        MediciNova's definition of HELPER MOLECULE in Request for Admission

7   No. 23 is ambiguous because MediciNova has not specified whether the term refers

8   to the "separate AAV vector," the "host cell," or the "separate AAV vector" and

9   "host cell" together (or potentially some combination with the PRODUCTION

10  MOLECULE).  The term "replication and/or packaging" is ambiguous because

11  MediciNova has not specified whether the "separate AAV vector" must "assist" the

12  PRODUCTION MOLECULE with replication *or* packaging *or both*; clearly the

13  "separate AAV vector" cannot "assist" the PRODUCTION MOLECULE with

14  replication *and* packaging *or* packaging at the same time.  MediciNova's subsequent

15  Requests for Admission asking for Genzyme to admit aspects of the HELPER

16  MOLECULE only add to the ambiguity of MediciNova's definition.  Specifically,

17  the subsequent Requests for Admission ask whether the HELPER MOLECULE

18  "contains a region that codes" (RFA Nos. 24 and 25), "contains an AAV p5

19  promoter" (RFA Nos. 26-31), "codes for" and "expresses" and "contains" protein

20  (RFA Nos. 32-33), and "contains" protein (RFA No. 36).  Accordingly,

21  MediciNova's definition of HELPER MOLECULE is hopelessly ambiguous.

22

23        Moreover, it is irrelevant whether the HELPER MOLECULE (whatever the

24  term means) contains an AAV p5 promoter with certain characteristics.  This

25  inquiry has nothing whatsoever to do with ascertaining the scope of the '237

26  patent—particularly whether the '237 patent covers drug products derived from the

27  herpes virus—and whether that scope covers Genzyme's drug product.  As

28

-47-

MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request seeks information that is not "relevant to any party's claim or defense," and is certainly not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

Genzyme's objections are therefore proper.

### 12.    Request for Admission No. 28

**MediciNova's Request for Admission No. 28**

Admit that the HELPER MOLECULE contains an AAV p5 promoter and the p5 promoter is modified to not include a TATA box.

**Genzyme's Response to MediciNova's Request for Admission No. 28**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that the definition of the term "HELPER MOLECULE" set forth in Request No. 23 is ambiguous.

Defendant further objects to the Request on the grounds that it seeks information that has no relevance to the claims and defenses in this litigation, and therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*, *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2; *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

-48-

1    Because "the responding party waives any objections to the request for

2 admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this

3 request is neither admitted nor denied.

4

5 **MediciNova's Contentions Regarding Request for Admission No. 28**

6    A party must respond to a request for admission unless it is so unintelligible

7 that the responding party cannot, in good faith, frame an intelligent reply.  *See*

8 *Marchand*, 22 F.3d at 938 (parties should "admit to the fullest extent possible, and

9 explain in detail why other portions of a request may not be admitted").  Genzyme

10 did not object that MediciNova's Request for Admission No. 28 is unintelligible,

11 and contrary to Genzyme's objection, the defined term "HELPER MOLECULE"

12 ("a separate AAV vector that assists the PRODUCTION MOLECULE with

13 replication and/or packaging in a host cell") is not ambiguous in the context of the

14 request.  Genzyme has not explained in what way it believes the defined term is

15 ambiguous or how any supposed ambiguity prevents it from admitting the request.

16

17    Genzyme's objection that MediciNova's Request for Admission No. 28 seeks

18 information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

19 broadly construed, and a request for discovery should be considered relevant if there

20 is any possibility that the information sought may be relevant to the claim or defense

21 of any party."  *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

22 omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

23 milestone payment under the terms of the Assignment Agreement between the

24 parties because Genzyme used MediciNova's AAV vector technology in

25 manufacturing the drug product.  AAV is a helper-dependent virus, requiring co-

26 infection with a helper molecule in order to form AAV virions.  This Request for

27 Admission, which relates to a specified characteristic of the helper molecule, is

28

1  therefore relevant to the issue of how Genzyme manufactured its recombinant AAV

2  product, and whether it did so using the technology described and embodied in the

3  '237 Patent.  As such, this Request for Admission is also relevant to the ultimate

4  issues in this case, including whether Genzyme breached the Assignment

5  Agreement between the parties by using MediciNova's AAV vector technology.

6  Accordingly, the characteristics of the helper molecule—and specifically, whether it

7  contains an AAV p5 promoter with the specific characteristics identified in the

8  request, as the request asks Genzyme to admit— relate directly to the dispute as to

9  whether the drug product is covered by the '237 patent, and Genzyme should

10  respond to this Request for Admission.

11

12  **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

13  **No. 28**

14      MediciNova's definition of HELPER MOLECULE in Request for Admission

15  No. 23 is ambiguous because MediciNova has not specified whether the term refers

16  to the "separate AAV vector," the "host cell," or the "separate AAV vector" and

17  "host cell" together (or potentially some combination with the PRODUCTION

18  MOLECULE).  The term "replication and/or packaging" is ambiguous because

19  MediciNova has not specified whether the "separate AAV vector" must "assist" the

20  PRODUCTION MOLECULE with replication *or* packaging *or both*; clearly the

21  "separate AAV vector" cannot "assist" the PRODUCTION MOLECULE with

22  replication *and* packaging *or* packaging at the same time.  MediciNova's subsequent

23  Requests for Admission asking for Genzyme to admit aspects of the HELPER

24  MOLECULE only add to the ambiguity of MediciNova's definition.  Specifically,

25  the subsequent Requests for Admission ask whether the HELPER MOLECULE

26  "contains a region that codes" (RFA Nos. 24 and 25), "contains an AAV p5

27  promoter" (RFA Nos. 26-31), "codes for" and "expresses" and "contains" protein

28

-50-

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

(RFA Nos. 32-33), and "contains" protein (RFA No. 36).  Accordingly, MediciNova's definition of HELPER MOLECULE is hopelessly ambiguous.

Moreover, it is irrelevant whether the HELPER MOLECULE (whatever the term means) contains an AAV p5 promoter with certain characteristics, or a TATA box.  This inquiry has nothing whatsoever to do with ascertaining the scope of the '237 patent—particularly whether the '237 patent covers drug products derived from the herpes virus—and whether that scope covers Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request seeks information that is not "relevant to any party's claim or defense" and is certainly not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

Genzyme's objections are therefore proper.

**13.**     **Request for Admission No. 29**

**MediciNova's Request for Admission No. 29**

Admit that the HELPER MOLECULE contains an AAV p5 promoter and the p5 promoter is situated in a location such that the p5 promoter does not function in transcription initiation.

**Genzyme's Response to MediciNova's Request for Admission No. 29**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that the definition of the term "HELPER MOLECULE" set forth in Request No. 23 is ambiguous.

Defendant further objects to the Request on the grounds that it seeks information that has no relevance to the claims and defenses in this litigation, and therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows requests to admit the truth of matters "within the scope of Rule 26(b)(1)." *See, e.g.*, *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2; *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

Because "the responding party waives any objections to the request for admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this request is neither admitted nor denied.

**MediciNova's Contentions Regarding Request for Admission No. 29**

A party must respond to a request for admission unless it is so unintelligible that the responding party cannot, in good faith, frame an intelligent reply. *See Marchand*, 22 F.3d at 938 (parties should "admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted"). Genzyme did not object that MediciNova's Request for Admission No. 29 is unintelligible, and contrary to Genzyme's objection, the defined term "HELPER MOLECULE" ("a separate AAV vector that assists the PRODUCTION MOLECULE with replication and/or packaging in a host cell") is not ambiguous in the context of the

request.  Genzyme has not explained in what way it believes the defined term is ambiguous or how any supposed ambiguity prevents it from admitting the request.

Genzyme's objection that MediciNova's Request for Admission No. 29 seeks information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party."  *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a milestone payment under the terms of the Assignment Agreement between the parties because Genzyme used MediciNova's AAV vector technology in manufacturing the drug product.  AAV is a helper-dependent virus, requiring co-infection with a helper molecule in order to form AAV virions.  This Request for Admission, which relates to a specified characteristic of the helper molecule, is therefore relevant to the issue of how Genzyme manufactured its recombinant AAV product, and whether it did so using the technology described and embodied in the '237 Patent.  As such, this Request for Admission is also relevant to the ultimate issues in this case, including whether Genzyme breached the Assignment Agreement between the parties by using MediciNova's AAV vector technology.  Accordingly, the characteristics of the helper molecule—and specifically, whether it contains an AAV p5 promoter with the specific characteristics identified in the request, as the request asks Genzyme to admit— relate directly to the dispute as to whether the drug product is covered by the '237 patent, and Genzyme should respond to this Request for Admission.

1 **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**
2 **No. 29**

3        MediciNova's definition of HELPER MOLECULE in Request for Admission

4 No. 23 is ambiguous because MediciNova has not specified whether the term refers

5 to the "separate AAV vector," the "host cell," or the "separate AAV vector" and

6 "host cell" together (or potentially some combination with the PRODUCTION

7 MOLECULE).  The term "replication and/or packaging" is ambiguous because

8 MediciNova has not specified whether the "separate AAV vector" must "assist" the

9 PRODUCTION MOLECULE with replication *or* packaging *or both*; clearly the

10 "separate AAV vector" cannot "assist" the PRODUCTION MOLECULE with

11 replication *and* packaging *or* packaging at the same time.  MediciNova's subsequent

12 Requests for Admission asking for Genzyme to admit aspects of the HELPER

13 MOLECULE only add to the ambiguity of MediciNova's definition.  Specifically,

14 the subsequent Requests for Admission ask whether the HELPER MOLECULE

15 "contains a region that codes" (RFA Nos. 24 and 25), "contains an AAV p5

16 promoter" (RFA Nos. 26-31), "codes for" and "expresses" and "contains" protein

17 (RFA Nos. 32-33), and "contains" protein (RFA No. 36).  Accordingly,

18 MediciNova's definition of HELPER MOLECULE is hopelessly ambiguous.

19

20        Moreover, it is irrelevant whether the HELPER MOLECULE (whatever the

21 term means) contains an AAV p5 promoter with certain characteristics.  This

22 inquiry has nothing whatsoever to do with ascertaining the scope of the '237

23 patent—particularly whether the '237 patent covers drug products derived from the

24 herpes virus—and whether that scope covers Genzyme's drug product.  As

25 MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request

26 seeks information that is not "relevant to any party's claim or defense," and is

27 certainly not "proportional to the needs of the case, considering the importance of

28

1   the issues at stake in the action, the amount in controversy, the parties' relative

2   access to relevant information, the parties' resources, the importance of the

3   discovery in resolving the issues, and whether the burden or expense of the proposed

4   discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

5

6       Genzyme's objections are therefore proper.

7

8       **14.    Request for Admission No. 30**

9   **MediciNova's Request for Admission No. 30**

10      Admit that the HELPER MOLECULE contains an AAV p5 promoter and the

11  p5 promoter is located 3' relative to a REP PROTEIN.

12

13  **Genzyme's Response to MediciNova's Request for Admission No. 30**

14      In addition to its General Objections and Objections to Plaintiff's Definitions

15  and Instructions, Defendant objects to the Request on the grounds that the definition

16  of the term "HELPER MOLECULE" set forth in Request No. 23 is ambiguous.

17

18      Defendant further objects to the Request on the grounds that it seeks

19  information that has no relevance to the claims and defenses in this litigation, and

20  therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows

21  requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*,

22  *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2;

23  *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL

24  1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

25

26

27

28

1    Because "the responding party waives any objections to the request for

2    admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this

3    request is neither admitted nor denied.

4

5    **MediciNova's Contentions Regarding Request for Admission No. 30**

6    A party must respond to a request for admission unless it is so unintelligible

7    that the responding party cannot, in good faith, frame an intelligent reply.  *See*

8    *Marchand*, 22 F.3d at 938 (parties should "admit to the fullest extent possible, and

9    explain in detail why other portions of a request may not be admitted").  Genzyme

10   did not object that MediciNova's Request for Admission No. 30 is unintelligible,

11   and contrary to Genzyme's objection, the defined term "HELPER MOLECULE"

12   ("a separate AAV vector that assists the PRODUCTION MOLECULE with

13   replication and/or packaging in a host cell") is not ambiguous in the context of the

14   request.  Genzyme has not explained in what way it believes the defined term is

15   ambiguous or how any supposed ambiguity prevents it from admitting the request.

16

17   Genzyme's objection that MediciNova's Request for Admission No. 30 seeks

18   information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

19   broadly construed, and a request for discovery should be considered relevant if there

20   is any possibility that the information sought may be relevant to the claim or defense

21   of any party." *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

22   omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

23   milestone payment under the terms of the Assignment Agreement between the

24   parties because Genzyme used MediciNova's AAV vector technology in

25   manufacturing the drug product.  AAV is a helper-dependent virus, requiring co-

26   infection with a helper molecule in order to form AAV virions.  This Request for

27   Admission, which relates to a specified characteristic of the helper molecule, is

28

therefore relevant to the issue of how Genzyme manufactured its recombinant AAV product, and whether it did so using the technology described and embodied in the '237 Patent.  As such, this Request for Admission is also relevant to the ultimate issues in this case, including whether Genzyme breached the Assignment Agreement between the parties by using MediciNova's AAV vector technology. Accordingly, the characteristics of the helper molecule—and specifically, whether it contains an AAV p5 promoter with the specific characteristics identified in the request, as the request asks Genzyme to admit— relate directly to the dispute as to whether the drug product is covered by the '237 patent, and Genzyme should respond to this Request for Admission.

**<u>Genzyme's Response to MediciNova's Contentions Regarding Request for Admission No. 30</u>**

MediciNova's definition of HELPER MOLECULE in Request for Admission No. 23 is ambiguous because MediciNova has not specified whether the term refers to the "separate AAV vector," the "host cell," or the "separate AAV vector" and "host cell" together (or potentially some combination with the PRODUCTION MOLECULE).  The term "replication and/or packaging" is ambiguous because MediciNova has not specified whether the "separate AAV vector" must "assist" the PRODUCTION MOLECULE with replication *or* packaging *or both*; clearly the "separate AAV vector" cannot "assist" the PRODUCTION MOLECULE with replication *and* packaging *or* packaging at the same time.  MediciNova's subsequent Requests for Admission asking for Genzyme to admit aspects of the HELPER MOLECULE only add to the ambiguity of MediciNova's definition.  Specifically, the subsequent Requests for Admission ask whether the HELPER MOLECULE "contains a region that codes" (RFA Nos. 24 and 25), "contains an AAV p5 promoter" (RFA Nos. 26-31), "codes for" and "expresses" and "contains" protein

1  (RFA Nos. 32-33), and "contains" protein (RFA No. 36).  Accordingly,

2  MediciNova's definition of HELPER MOLECULE is hopelessly ambiguous.

3

4      Moreover, it is irrelevant whether the HELPER MOLECULE (whatever the

5  term means) contains an AAV p5 promoter with certain characteristics.  This

6  inquiry has nothing whatsoever to do with ascertaining the scope of the '237

7  patent—particularly whether the '237 patent covers drug products derived from the

8  herpes virus—and whether that scope covers Genzyme's drug product.  As

9  MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request

10  seeks information that is not "relevant to any party's claim or defense," and is

11  certainly not "proportional to the needs of the case, considering the importance of

12  the issues at stake in the action, the amount in controversy, the parties' relative

13  access to relevant information, the parties' resources, the importance of the

14  discovery in resolving the issues, and whether the burden or expense of the proposed

15  discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

16

17      Genzyme's objections are therefore proper.

18

19      **15.      Request for Admission No. 31**

20  **MediciNova's Request for Admission No. 31**

21      Admit that the HELPER MOLECULE contains an AAV p5 promoter and the

22  p5 promoter is located 3' relative to a CAP PROTEIN.

23

24  **Genzyme's Response to MediciNova's Request for Admission No. 31**

25      In addition to its General Objections and Objections to Plaintiff's Definitions

26  and Instructions, Defendant objects to the Request on the grounds that the definition

27  of the term "HELPER MOLECULE" set forth in Request No. 23 is ambiguous.

28

-58-

1    Defendant further objects to the Request on the grounds that it seeks

2 information that has no relevance to the claims and defenses in this litigation, and

3 therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows

4 requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*,

5 *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2;

6 *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL

7 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

8

9    Because "the responding party waives any objections to the request for

10 admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this

11 request is neither admitted nor denied.

12

13 **MediciNova's Contentions Regarding Request for Admission No. 31**

14    A party must respond to a request for admission unless it is so unintelligible

15 that the responding party cannot, in good faith, frame an intelligent reply.  *See*

16 *Marchand*, 22 F.3d at 938 (parties should "admit to the fullest extent possible, and

17 explain in detail why other portions of a request may not be admitted").  Genzyme

18 did not object that MediciNova's Request for Admission No. 31 is unintelligible,

19 and contrary to Genzyme's objection, the defined term "HELPER MOLECULE"

20 ("a separate AAV vector that assists the PRODUCTION MOLECULE with

21 replication and/or packaging in a host cell") is not ambiguous in the context of the

22 request.  Genzyme has not explained in what way it believes the defined term is

23 ambiguous or how any supposed ambiguity prevents it from admitting the request.

24

25    Genzyme's objection that MediciNova's Request for Admission No. 31 seeks

26 information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

27 broadly construed, and a request for discovery should be considered relevant if there

28

1   is any possibility that the information sought may be relevant to the claim or defense

2   of any party." *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

3   omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

4   milestone payment under the terms of the Assignment Agreement between the

5   parties because Genzyme used MediciNova's AAV vector technology in

6   manufacturing the drug product.  AAV is a helper-dependent virus, requiring co-

7   infection with a helper molecule in order to form AAV virions.  This Request for

8   Admission, which relates to a specified characteristic of the helper molecule, is

9   therefore relevant to the issue of how Genzyme manufactured its recombinant AAV

10  product, and whether it did so using the technology described and embodied in the

11  '237 Patent.  As such, this Request for Admission is also relevant to the ultimate

12  issues in this case, including whether Genzyme breached the Assignment

13  Agreement between the parties by using MediciNova's AAV vector technology.

14  Accordingly, the characteristics of the helper molecule—and specifically, whether it

15  contains an AAV p5 promoter with the specific characteristics identified in the

16  request, as the request asks Genzyme to admit— relate directly to the dispute as to

17  whether the drug product is covered by the '237 patent, and Genzyme should

18  respond to this Request for Admission.

19

20  **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

21  **No. 31**

22        MediciNova's definition of HELPER MOLECULE in Request for Admission

23  No. 23 is ambiguous because MediciNova has not specified whether the term refers

24  to the "separate AAV vector," the "host cell," or the "separate AAV vector" and

25  "host cell" together (or potentially some combination with the PRODUCTION

26  MOLECULE).  The term "replication and/or packaging" is ambiguous because

27  MediciNova has not specified whether the "separate AAV vector" must "assist" the

28

-60-

PRODUCTION MOLECULE with replication *or* packaging *or both*; clearly the "separate AAV vector" cannot "assist" the PRODUCTION MOLECULE with replication *and* packaging *or* packaging at the same time.  MediciNova's subsequent Requests for Admission asking for Genzyme to admit aspects of the HELPER MOLECULE only add to the ambiguity of MediciNova's definition.  Specifically, the subsequent Requests for Admission ask whether the HELPER MOLECULE "contains a region that codes" (RFA Nos. 24 and 25), "contains an AAV p5 promoter" (RFA Nos. 26-31), "codes for" and "expresses" and "contains" protein (RFA Nos. 32-33), and "contains" protein (RFA No. 36).  Accordingly, MediciNova's definition of HELPER MOLECULE is hopelessly ambiguous.

Moreover, it is irrelevant whether the HELPER MOLECULE (whatever the term means) contains an AAV p5 promoter with certain characteristics.  This inquiry has nothing whatsoever to do with ascertaining the scope of the '237 patent—particularly whether the '237 patent covers drug products derived from the herpes virus—and whether that scope covers Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request seeks information that is not "relevant to any party's claim or defense," and is certainly not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

Genzyme's objections are therefore proper.

1

**16.**   **Request for Admission No. 32**

2

**MediciNova's Request for Admission No. 32**

3
4

Admit that the HELPER MOLECULE codes for both a long form and a short form of REP PROTEIN.

5

6

**Genzyme's Response to MediciNova's Request for Admission No. 32**

7
8
9

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that the definition of the term "HELPER MOLECULE" set forth in Request No. 23 is ambiguous.

10

11
12
13
14
15
16
17

Defendant further objects to the Request on the grounds that it seeks information that has no relevance to the claims and defenses in this litigation, and therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*, *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2; *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

18

19
20
21

Because "the responding party waives any objections to the request for admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this request is neither admitted nor denied.

22

23

**MediciNova's Contentions Regarding Request for Admission No. 32**

24
25
26
27

A party must respond to a request for admission unless it is so unintelligible that the responding party cannot, in good faith, frame an intelligent reply.  *See Marchand*, 22 F.3d at 938 (parties should "admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted").  Genzyme

28

did not object that MediciNova's Request for Admission No. 32 is unintelligible, and contrary to Genzyme's objection, the defined term "HELPER MOLECULE" ("a separate AAV vector that assists the PRODUCTION MOLECULE with replication and/or packaging in a host cell") is not ambiguous in the context of the request.  Genzyme has not explained in what way it believes the defined term is ambiguous or how any supposed ambiguity prevents it from admitting the request.

Genzyme's objection that MediciNova's Request for Admission No. 32 seeks information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party."  *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a milestone payment under the terms of the Assignment Agreement between the parties because Genzyme used MediciNova's AAV vector technology in manufacturing the drug product.  AAV is a helper-dependent virus, requiring co-infection with a helper molecule in order to form AAV virions.  This Request for Admission, which relates to a specified function of the helper molecule, is therefore relevant to the issue of how Genzyme manufactured its recombinant AAV product, and whether it did so using the technology described and embodied in the '237 Patent.  As such, this Request for Admission is also relevant to the ultimate issues in this case, including whether Genzyme breached the Assignment Agreement between the parties by using MediciNova's AAV vector technology.  Accordingly, the functionality of the helper molecule—and specifically, whether it codes for both a long form and a short form of REP PROTEIN, as the request asks Genzyme to admit— relates directly to the dispute as to whether the drug product is covered by the '237 patent, and Genzyme should respond to this Request for Admission.

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

1  **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

2  **No. 32**

3        MediciNova's definition of HELPER MOLECULE in Request for Admission

4  No. 23 is ambiguous because MediciNova has not specified whether the term refers

5  to the "separate AAV vector," the "host cell," or the "separate AAV vector" and

6  "host cell" together (or potentially some combination with the PRODUCTION

7  MOLECULE).  The term "replication and/or packaging" is ambiguous because

8  MediciNova has not specified whether the "separate AAV vector" must "assist" the

9  PRODUCTION MOLECULE with replication *or* packaging *or both*; clearly the

10 "separate AAV vector" cannot "assist" the PRODUCTION MOLECULE with

11 replication *and* packaging *or* packaging at the same time.  MediciNova's subsequent

12 Requests for Admission asking for Genzyme to admit aspects of the HELPER

13 MOLECULE only add to the ambiguity of MediciNova's definition.  Specifically,

14 the subsequent Requests for Admission ask whether the HELPER MOLECULE

15 "contains a region that codes" (RFA Nos. 24 and 25), "contains an AAV p5

16 promoter" (RFA Nos. 26-31), "codes for" and "expresses" and "contains" protein

17 (RFA Nos. 32-33), and "contains" protein (RFA No. 36).  Accordingly,

18 MediciNova's definition of HELPER MOLECULE is hopelessly ambiguous.

19

20        Moreover, it is irrelevant whether the HELPER MOLECULE (whatever the

21 term means) codes for a REP PROTEIN.  This inquiry has nothing whatsoever to do

22 with ascertaining the scope of the '237 patent—particularly whether the '237 patent

23 covers drug products derived from the herpes virus—and whether that scope covers

24 Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this

25 litigation.  Accordingly, the Request seeks information that is not "relevant to any

26 party's claim or defense," and is certainly not "proportional to the needs of the case,

27 considering the importance of the issues at stake in the action, the amount in

28

-64-

1    controversy, the parties' relative access to relevant information, the parties'

2    resources, the importance of the discovery in resolving the issues, and whether the

3    burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.

4    Civ. Proc. 26(b)(1).

5

6            Genzyme's objections are therefore proper.

7

8        **17.    Request for Admission No. 33**

9    **MediciNova's Request for Admission No. 33**

10            Admit that the HELPER MOLECULE expresses a greater amount of a short

11   form of a REP PROTEIN than a long form of the REP PROTEIN.

12

13   **Genzyme's Response to MediciNova's Request for Admission No. 33**

14            In addition to its General Objections and Objections to Plaintiff's Definitions

15   and Instructions, Defendant objects to the Request on the grounds that the definition

16   of the term "HELPER MOLECULE" set forth in Request No. 23 is ambiguous.

17

18            Defendant further objects to the Request on the grounds that it seeks

19   information that has no relevance to the claims and defenses in this litigation, and

20   therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows

21   requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*,

22   *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2;

23   *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL

24   1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

25

26

27

28

1    Because "the responding party waives any objections to the request for

2  admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this

3  request is neither admitted nor denied.

4

5  **MediciNova's Contentions Regarding Request for Admission No. 33**

6    A party must respond to a request for admission unless it is so unintelligible

7  that the responding party cannot, in good faith, frame an intelligent reply. *See*

8  *Marchand*, 22 F.3d at 938 (parties should "admit to the fullest extent possible, and

9  explain in detail why other portions of a request may not be admitted"). Genzyme

10  did not object that MediciNova's Request for Admission No. 33 is unintelligible,

11  and contrary to Genzyme's objection, the defined term "HELPER MOLECULE"

12  ("a separate AAV vector that assists the PRODUCTION MOLECULE with

13  replication and/or packaging in a host cell") is not ambiguous in the context of the

14  request. Genzyme has not explained in what way it believes the defined term is

15  ambiguous or how any supposed ambiguity prevents it from admitting the request.

16

17    Genzyme's objection that MediciNova's Request for Admission No. 33 seeks

18  information irrelevant to the parties' claims and defenses is meritless. "Relevancy is

19  broadly construed, and a request for discovery should be considered relevant if there

20  is any possibility that the information sought may be relevant to the claim or defense

21  of any party." *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

22  omitted). MediciNova's complaint alleges that Genzyme owes MediciNova a

23  milestone payment under the terms of the Assignment Agreement between the

24  parties because Genzyme used MediciNova's AAV vector technology in

25  manufacturing the drug product. AAV is a helper-dependent virus, requiring co-

26  infection with a helper molecule in order to form AAV virions. This Request for

27  Admission, which relates to a specified function of the helper molecule, is therefore

28

SMRH:482717025.3                                JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

relevant to the issue of how Genzyme manufactured its recombinant AAV product, and whether it did so using the technology described and embodied in the '237 Patent.  As such, this Request for Admission is also relevant to the ultimate issues in this case, including whether Genzyme breached the Assignment Agreement between the parties by using MediciNova's AAV vector technology.  Accordingly, the functionality of the helper molecule—and specifically, whether it expresses greater amount of a short form of a REP PROTEIN than a long form of the REP PROTEIN, as the request asks Genzyme to admit— relate directly to the dispute as to whether the drug product is covered by the '237 patent, and Genzyme should respond to this Request for Admission.

**Genzyme's Response to MediciNova's Contentions Regarding Request for Admission No. 33**

MediciNova's definition of HELPER MOLECULE in Request for Admission No. 23 is ambiguous because MediciNova has not specified whether the term refers to the "separate AAV vector," the "host cell," or the "separate AAV vector" and "host cell" together (or potentially some combination with the PRODUCTION MOLECULE).  The term "replication and/or packaging" is ambiguous because MediciNova has not specified whether the "separate AAV vector" must "assist" the PRODUCTION MOLECULE with replication *or* packaging *or both*; clearly the "separate AAV vector" cannot "assist" the PRODUCTION MOLECULE with replication *and* packaging *or* packaging at the same time.  MediciNova's subsequent Requests for Admission asking for Genzyme to admit aspects of the HELPER MOLECULE only add to the ambiguity of MediciNova's definition.  Specifically, the subsequent Requests for Admission ask whether the HELPER MOLECULE "contains a region that codes" (RFA Nos. 24 and 25), "contains an AAV p5 promoter" (RFA Nos. 26-31), "codes for" and "expresses" and "contains" protein

-67-

1   (RFA Nos. 32-33), and "contains" protein (RFA No. 36).  Accordingly,

2   MediciNova's definition of HELPER MOLECULE is hopelessly ambiguous.

3

4           Moreover, it is irrelevant whether the HELPER MOLECULE (whatever the

5   term means) codes for a REP PROTEIN.  This inquiry has nothing whatsoever to do

6   with ascertaining the scope of the '237 patent—particularly whether the '237 patent

7   covers drug products derived from the herpes virus—and whether that scope covers

8   Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this

9   litigation.  Accordingly, the Request seeks information that is not "relevant to any

10  party's claim or defense," and is certainly not "proportional to the needs of the case,

11  considering the importance of the issues at stake in the action, the amount in

12  controversy, the parties' relative access to relevant information, the parties'

13  resources, the importance of the discovery in resolving the issues, and whether the

14  burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.

15  Civ. Proc. 26(b)(1).

16

17          Genzyme's objections are therefore proper.

18

19      **18.    Request for Admission No. 34**

20  **MediciNova's Request for Admission No. 34**

21          Admit that the PRODUCTION MOLECULE contains an AAV Rep binding

22  site that binds a REP PROTEIN.

23

24  **Genzyme's Response to MediciNova's Request for Admission No. 34**

25          In addition to its General Objections and Objections to Plaintiff's Definitions

26  and Instructions, Defendant objects to the Request on the grounds that it seeks

27  information that has no relevance to the claims and defenses in this litigation, and

28

-68-

1  therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows

2  requests to admit the truth of matters "within the scope of Rule 26(b)(1)." *See, e.g.*,

3  *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2;

4  *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL

5  1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

6

7       Because "the responding party waives any objections to the request for

8  admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this

9  request is neither admitted nor denied.

10

11  **MediciNova's Contentions Regarding Request for Admission No. 34**

12       Genzyme's objection that MediciNova's Request for Admission No. 34 seeks

13  information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

14  broadly construed, and a request for discovery should be considered relevant if there

15  is any possibility that the information sought may be relevant to the claim or defense

16  of any party." *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

17  omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

18  milestone payment under the terms of the Assignment Agreement between the

19  parties because Genzyme used MediciNova's AAV vector technology in

20  manufacturing the drug product.  AAV is a helper-dependent virus, requiring co-

21  infection with a helper molecule in order to form AAV virions.  The production

22  molecule refers to an AAV vector that contains a nucleic acid sequence encoding a

23  protein that is not native to the virus.  The helper molecule assists the production

24  molecule with replication and/or packaging in a host cell.  This Request for

25  Admission, which relates to a specified characteristic of the production molecule, is

26  therefore relevant to the issue of how Genzyme manufactured its recombinant AAV

27  product, and whether it did so using the technology described and embodied in the

28

-69-

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

'237 Patent.  As such, this Request for Admission is also relevant to the ultimate issues in this case, including whether Genzyme breached the Assignment Agreement between the parties by using MediciNova's AAV vector technology. Accordingly, the characteristics of the production molecule—and specifically, whether it contains an AAV Rep binding site that binds a REP PROTEIN, as the request asks Genzyme to admit— relate directly to the dispute as to whether the drug product is covered by the '237 patent, and Genzyme should respond to this Request for Admission.

**Genzyme's Response to MediciNova's Contentions Regarding Request for Admission No. 34**

MediciNova's Request for Admission seeks irrelevant information.  It is irrelevant whether the PRODUCTION MOLECULE contains an AAV Rep binding site.  This inquiry has nothing whatsoever to do with ascertaining the scope of the '237 patent—particularly whether the '237 patent covers drug products derived from the herpes virus—and whether that scope covers Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request seeks information that is not "relevant to any party's claim or defense," and is certainly not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

Genzyme's objections are therefore proper.

### 19.    Request for Admission No. 35

**MediciNova's Request for Admission No. 35**

Admit that the PRODUCTION MOLECULE contains an AAV Rep binding site that includes a GCTC sequence.

**Genzyme's Response to MediciNova's Request for Admission No. 35**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that it seeks information that has no relevance to the claims and defenses in this litigation, and therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows requests to admit the truth of matters "within the scope of Rule 26(b)(1)." *See, e.g.*, *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at \*2; *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at \*3; *Walker*, 2012 WL 1155140, at \*10; *Tuvalu*, 2006 WL 3201096, at \*7.

Because "the responding party waives any objections to the request for admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this request is neither admitted nor denied.

**MediciNova's Contentions Regarding Request for Admission No. 35**

Genzyme's objection that MediciNova's Request for Admission No. 35 seeks information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party."  *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a milestone payment under the terms of the Assignment Agreement between the

parties because Genzyme used MediciNova's AAV vector technology in manufacturing the drug product.  AAV is a helper-dependent virus, requiring co-infection with a helper molecule in order to form AAV virions.  The production molecule refers to an AAV vector that contains a nucleic acid sequence encoding a protein that is not native to the virus.  The helper molecule assists the production molecule with replication and/or packaging in a host cell.  This Request for Admission, which relates to a specified characteristic of the production molecule, is therefore relevant to the issue of how Genzyme manufactured its recombinant AAV product, and whether it did so using the technology described and embodied in the '237 Patent.  As such, this Request for Admission is also relevant to the ultimate issues in this case, including whether Genzyme breached the Assignment Agreement between the parties by using MediciNova's AAV vector technology.  Accordingly, the characteristics of the production molecule—and specifically, whether it contains an AAV Rep binding site that includes a GCTC sequence, as the request asks Genzyme to admit— relate directly to the dispute as to whether the drug product is covered by the '237 patent, and Genzyme should respond to this Request for Admission.

**Genzyme's Response to MediciNova's Contentions Regarding Request for Admission No. 35**

MediciNova's Request for Admission seeks irrelevant information.  It is irrelevant whether the PRODUCTION MOLECULE contains an AAV Rep binding site or what its characteristics are.  This inquiry has nothing whatsoever to do with ascertaining the scope of the '237 patent—particularly whether the '237 patent covers drug products derived from the herpes virus—and whether that scope covers Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request seeks information that is not "relevant to any

party's claim or defense," and is certainly not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

Genzyme's objections are therefore proper.

### 20.   Request for Admission No. 36

**MediciNova's Request for Admission No. 36**

Admit that the HELPER MOLECULE contains a CAP PROTEIN that contains at least a mutation.

**Genzyme's Response to MediciNova's Request for Admission No. 36**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that the phrase "a CAP PROTEIN that contains at least a mutation" is unintelligible.  Defendant objects to the Request on the grounds that the definition of the term "HELPER MOLECULE" set forth in Request No. 23 is ambiguous.

Defendant further objects to the Request on the grounds that it seeks information that has no relevance to the claims and defenses in this litigation, and therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*, *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2;

-73-

*Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

Because "the responding party waives any objections to the request for admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this request is neither admitted nor denied.

**MediciNova's Contentions Regarding Request for Admission No. 36**

A party must respond to a request for admission unless it is so unintelligible that the responding party cannot, in good faith, frame an intelligent reply.  *See Marchand*, 22 F.3d at 938 (parties should "admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted").  Contrary to Genzyme's objection, the phrase "a CAP PROTEIN that contains at least a mutation" is not unintelligible in the context of the request.  Also contrary to Genzyme's objection, the defined term "HELPER MOLECULE" ("a separate AAV vector that assists the PRODUCTION MOLECULE with replication and/or packaging in a host cell") is not ambiguous in the context of the request.  Genzyme has not explained in what way it believes the phrase or defined term are unintelligible or ambiguous, nor has it explained how any supposed ambiguity prevents it from admitting the request.

Genzyme's objection that MediciNova's Request for Admission No. 36 seeks information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party."  *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

milestone payment under the terms of the Assignment Agreement between the parties because Genzyme used MediciNova's AAV vector technology in manufacturing the drug product. AAV is a helper-dependent virus, requiring co-infection with a helper molecule in order to form AAV virions. This Request for Admission, which relates to a specified characteristic of the helper molecule, is therefore relevant to the issue of how Genzyme manufactured its recombinant AAV product, and whether it did so using the technology described and embodied in the '237 Patent. As such, this Request for Admission is also relevant to the ultimate issues in this case, including whether Genzyme breached the Assignment Agreement between the parties by using MediciNova's AAV vector technology. Accordingly, the characteristics of the helper molecule—and specifically, whether it contains CAP PROTEIN with the specific characteristics identified in the request, as the request asks Genzyme to admit— relate directly to the dispute as to whether the drug product is covered by the '237 patent, and Genzyme should respond to this Request for Admission.

**Genzyme's Response to MediciNova's Contentions Regarding Request for Admission No. 36**

MediciNova's definition of HELPER MOLECULE in Request for Admission No. 23 is ambiguous because MediciNova has not specified whether the term refers to the "separate AAV vector," the "host cell," or the "separate AAV vector" and "host cell" together (or potentially some combination with the PRODUCTION MOLECULE). The term "replication and/or packaging" is ambiguous because MediciNova has not specified whether the "separate AAV vector" must "assist" the PRODUCTION MOLECULE with replication *or* packaging *or both*; clearly the "separate AAV vector" cannot "assist" the PRODUCTION MOLECULE with replication *and* packaging *or* packaging at the same time. MediciNova's subsequent

-75-

Requests for Admission asking for Genzyme to admit aspects of the HELPER MOLECULE only add to the ambiguity of MediciNova's definition.  Specifically, the subsequent Requests for Admission ask whether the HELPER MOLECULE "contains a region that codes" (RFA Nos. 24 and 25), "contains an AAV p5 promoter" (RFA Nos. 26-31), "codes for" and "expresses" and "contains" protein (RFA Nos. 32-33), and "contains" protein (RFA No. 36).  Accordingly, MediciNova's definition of HELPER MOLECULE is hopelessly ambiguous.

Moreover, it is irrelevant whether the HELPER MOLECULE (whatever the term means) contains a mutated CAP PROTEIN.  This inquiry has nothing whatsoever to do with ascertaining the scope of the '237 patent—particularly whether the '237 patent covers drug products derived from the herpes virus—and whether that scope covers Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request seeks information that is not "relevant to any party's claim or defense," and is certainly not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

Genzyme's objections are therefore proper.

## 21.    Request for Admission No. 37

**MediciNova's Request for Admission No. 37**

Admit that the manufacturing of the DRUG PRODUCT uses or has used a cell that contains a PRODUCTION MOLECULE and a separate nucleic acid

1   containing an adenovirus E4 region (hereinafter referred to as "Accessory Function

2   Molecule").

3

4   **Genzyme's Response to MediciNova's Request for Admission No. 37**

5       In addition to its General Objections and Objections to Plaintiff's Definitions

6   and Instructions, Defendant objects to the Request on the grounds that it seeks

7   information that has no relevance to the claims and defenses in this litigation, and

8   therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows

9   requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*,

10  *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2;

11  *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL

12  1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

13

14      Because "the responding party waives any objections to the request for

15  admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this

16  request is neither admitted nor denied.

17

18  **MediciNova's Contentions Regarding Request for Admission No. 37**

19      Genzyme's objection that MediciNova's Request for Admission No. 37 seeks

20  information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

21  broadly construed, and a request for discovery should be considered relevant if there

22  is any possibility that the information sought may be relevant to the claim or defense

23  of any party."  *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

24  omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

25  milestone payment under the terms of the Assignment Agreement between the

26  parties because Genzyme used MediciNova's AAV vector technology in

27  manufacturing the drug product.  AAV is a helper-dependent virus, requiring co-

28

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

infection with a helper molecule in order to form AAV virions.  Accessory functions, which refer to non-AAV derived viral and/or cellular functions upon which AAV is dependent for its replication, may be derived from the helper molecule. The production molecule refers to an AAV vector that contains a nucleic acid sequence encoding a protein that is not native to the virus.  The helper molecule assists the production molecule with replication and/or packaging in a host cell.  This Request for Admission, which relates to specified characteristics of the production molecule and accessory function molecule, is therefore relevant to the issue of how Genzyme manufactured its recombinant AAV product, and whether it did so using the technology described and embodied in the '237 Patent.  As such, this Request for Admission is also relevant to the ultimate issues in this case, including whether Genzyme breached the Assignment Agreement between the parties by using MediciNova's AAV vector technology.  Accordingly, the characteristics of the production molecule and accessory function molecule—and specifically, whether the drug product uses a cell that contains a production molecule and specified accessory function molecule, as the request asks Genzyme to admit— relate directly to the dispute as to whether the drug product is covered by the '237 patent, and Genzyme should respond to this Request for Admission.

**Genzyme's Response to MediciNova's Contentions Regarding Request for Admission No. 37**

MediciNova's Request for Admission seeks irrelevant information.  It is irrelevant whether Genzyme's manufacturing process used/uses a cell containing a PRODUCTION MOLECULE and ACCESSORY FUNCTION MOLECULE.  This inquiry has nothing whatsoever to do with ascertaining the scope of the '237 patent—particularly whether the '237 patent covers drug products derived from the herpes virus—and whether that scope covers Genzyme's drug product.  As

MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request seeks information that is not "relevant to any party's claim or defense," and is certainly not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

Genzyme's objections are therefore proper.

### 22.    Request for Admission No. 38

**MediciNova's Request for Admission No. 38**

Admit that the ACCESSORY FUNCTION MOLECULE lacks an intact E4 ORF 6 coding region.

**Genzyme's Response to MediciNova's Request for Admission No. 38**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that it seeks information that has no relevance to the claims and defenses in this litigation, and therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*, *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2; *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

1    Because "the responding party waives any objections to the request for

2  admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this

3  request is neither admitted nor denied.

4

5  **MediciNova's Contentions Regarding Request for Admission No. 38**

6    Genzyme's objection that MediciNova's Request for Admission No. 38 seeks

7  information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

8  broadly construed, and a request for discovery should be considered relevant if there

9  is any possibility that the information sought may be relevant to the claim or defense

10 of any party."  *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

11 omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

12 milestone payment under the terms of the Assignment Agreement between the

13 parties because Genzyme used MediciNova's AAV vector technology in

14 manufacturing the drug product.  AAV is a helper-dependent virus, requiring co-

15 infection with a helper molecule in order to form AAV virions.  Accessory

16 functions, which refer to non-AAV derived viral and/or cellular functions upon

17 which AAV is dependent for its replication, may be derived from the helper

18 molecule. This Request for Admission, which relates to specified characteristics of

19 an accessory function molecule, is therefore relevant to the issue of how Genzyme

20 manufactured its recombinant AAV product, and whether it did so using the

21 technology described and embodied in the '237 Patent.  As such, this Request for

22 Admission is also relevant to the ultimate issues in this case, including whether

23 Genzyme breached the Assignment Agreement between the parties by using

24 MediciNova's AAV vector technology.  Accordingly, the characteristics of the

25 accessory function molecule—and specifically, whether the accessory function

26 molecule lacks an intact E4 ORF 6 coding region, as the request asks Genzyme to

27

28

1    admit— relate directly to the dispute as to whether the drug product is covered by

2    the '237 patent, and Genzyme should respond to this Request for Admission.

3

4    **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

5    **No. 38**

6            MediciNova's Request for Admission seeks irrelevant information.  It is

7    irrelevant whether Genzyme's manufacturing process used/uses a cell containing a

8    PRODUCTION MOLECULE and ACCESSORY FUNCTION MOLECULE or

9    what the ACCESSORY FUNCTION MOLECULE's characteristics are.  This

10   inquiry has nothing whatsoever to do with ascertaining the scope of the '237

11   patent—particularly whether the '237 patent covers drug products derived from the

12   herpes virus—and whether that scope covers Genzyme's drug product.  As

13   MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request

14   seeks information that is not "relevant to any party's claim or defense," and is

15   certainly not "proportional to the needs of the case, considering the importance of

16   the issues at stake in the action, the amount in controversy, the parties' relative

17   access to relevant information, the parties' resources, the importance of the

18   discovery in resolving the issues, and whether the burden or expense of the proposed

19   discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

20

21           Genzyme's objections are therefore proper.

22

23       **23.     Request for Admission No. 39**

24   **MediciNova's Request for Admission No. 39**

25           Admit that the ACCESSORY FUNCTION MOLECULE contains an

26   adenovirus VA RNA coding region.

27

28

-81-

**Genzyme's Response to MediciNova's Request for Admission No. 39**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that it seeks information that has no relevance to the claims and defenses in this litigation, and therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows requests to admit the truth of matters "within the scope of Rule 26(b)(1)." *See, e.g.*, *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2; *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

Because "the responding party waives any objections to the request for admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this request is neither admitted nor denied.

**MediciNova's Contentions Regarding Request for Admission No. 39**

Genzyme's objection that MediciNova's Request for Admission No. 39 seeks information irrelevant to the parties' claims and defenses is meritless. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations omitted). MediciNova's complaint alleges that Genzyme owes MediciNova a milestone payment under the terms of the Assignment Agreement between the parties because Genzyme used MediciNova's AAV vector technology in manufacturing the drug product. AAV is a helper-dependent virus, requiring co-infection with a helper molecule in order to form AAV virions. Accessory functions, which refer to non-AAV derived viral and/or cellular functions upon which AAV is dependent for its replication, may be derived from the helper

1  molecule.  This Request for Admission, which relates to specified characteristics of

2  an accessory function molecule, is therefore relevant to the issue of how Genzyme

3  manufactured its recombinant AAV product, and whether it did so using the

4  technology described and embodied in the '237 Patent.  As such, this Request for

5  Admission is also relevant to the ultimate issues in this case, including whether

6  Genzyme breached the Assignment Agreement between the parties by using

7  MediciNova's AAV vector technology.  Accordingly, the characteristics of the

8  accessory function molecule—and specifically, whether the accessory function

9  molecule contains an adenovirus VA RNA coding region, as the request asks

10  Genzyme to admit— relate directly to the dispute as to whether the drug product is

11  covered by the '237 patent, and Genzyme should respond to this Request for

12  Admission.

13

14  **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

15  **No. 39**

16      MediciNova's Request for Admission seeks irrelevant information.  It is

17  irrelevant whether Genzyme's manufacturing process used/uses a cell containing a

18  PRODUCTION MOLECULE and ACCESSORY FUNCTION MOLECULE or

19  what the ACCESSORY FUNCTION MOLECULE's characteristics are.  This

20  inquiry has nothing whatsoever to do with ascertaining the scope of the '237

21  patent—particularly whether the '237 patent covers drug products derived from the

22  herpes virus—and whether that scope covers Genzyme's drug product.  As

23  MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request

24  seeks information that is not "relevant to any party's claim or defense," and is

25  certainly not "proportional to the needs of the case, considering the importance of

26  the issues at stake in the action, the amount in controversy, the parties' relative

27  access to relevant information, the parties' resources, the importance of the

28

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

Genzyme's objections are therefore proper.

### 24.   Request for Admission No. 40

**MediciNova's Request for Admission No. 40**

Admit that the ACCESSORY FUNCTION MOLECULE contains an adenovirus E2A72KD coding region.

**Genzyme's Response to MediciNova's Request for Admission No. 40**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that it seeks information that has no relevance to the claims and defenses in this litigation, and therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*, *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2; *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

Because "the responding party waives any objections to the request for admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this request is neither admitted nor denied.

**MediciNova's Contentions Regarding Request for Admission No. 40**

Genzyme's objection that MediciNova's Request for Admission No. 40 seeks information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

-84-

1   broadly construed, and a request for discovery should be considered relevant if there

2   is any possibility that the information sought may be relevant to the claim or defense

3   of any party." *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

4   omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

5   milestone payment under the terms of the Assignment Agreement between the

6   parties because Genzyme used MediciNova's AAV vector technology in

7   manufacturing the drug product.  AAV is a helper-dependent virus, requiring co-

8   infection with a helper molecule in order to form AAV virions.  Accessory

9   functions, which refer to non-AAV derived viral and/or cellular functions upon

10  which AAV is dependent for its replication, may be derived from the helper

11  molecule.  This Request for Admission, which relates to specified characteristics of

12  an accessory function molecule, is therefore relevant to the issue of how Genzyme

13  manufactured its recombinant AAV product, and whether it did so using the

14  technology described and embodied in the '237 Patent.  As such, this Request for

15  Admission is also relevant to the ultimate issues in this case, including whether

16  Genzyme breached the Assignment Agreement between the parties by using

17  MediciNova's AAV vector technology.  Accordingly, the characteristics of the

18  accessory function molecule—and specifically, whether the accessory function

19  molecule contains an adenovirus E2A72KD coding region, as the request asks

20  Genzyme to admit— relate directly to the dispute as to whether the drug product is

21  covered by the '237 patent, and Genzyme should respond to this Request for

22  Admission.

23

24  **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

25  **No. 40**

26         MediciNova's Request for Admission seeks irrelevant information.  It is

27  irrelevant whether Genzyme's manufacturing process used/uses a cell containing a

28

-85-

1  PRODUCTION MOLECULE and ACCESSORY FUNCTION MOLECULE or

2  what the ACCESSORY FUNCTION MOLECULE's characteristics are.  This

3  inquiry has nothing whatsoever to do with ascertaining the scope of the '237

4  patent—particularly whether the '237 patent covers drug products derived from the

5  herpes virus—and whether that scope covers Genzyme's drug product.  As

6  MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request

7  seeks information that is not "relevant to any party's claim or defense," and is

8  certainly not "proportional to the needs of the case, considering the importance of

9  the issues at stake in the action, the amount in controversy, the parties' relative

10 access to relevant information, the parties' resources, the importance of the

11 discovery in resolving the issues, and whether the burden or expense of the proposed

12 discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

13

14     Genzyme's objections are therefore proper.

15

16     **25.** **Request for Admission No. 41**

17 **MediciNova's Request for Admission No. 41**

18     Admit that the ACCESSORY FUNCTION MOLECULE contains an

19 adenovirus E1A coding region.

20

21 **Genzyme's Response to MediciNova's Request for Admission No. 41**

22     In addition to its General Objections and Objections to Plaintiff's Definitions

23 and Instructions, Defendant objects to the Request on the grounds that it seeks

24 information that has no relevance to the claims and defenses in this litigation, and

25 therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows

26 requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*,

27 *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2;

28

1 | *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL

2 | 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

3 |

4 |     Because "the responding party waives any objections to the request for

5 | admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this

6 | request is neither admitted nor denied.

7 |

8 | **MediciNova's Contentions Regarding Request for Admission No. 41**

9 |     Genzyme's objection that MediciNova's Request for Admission No. 41 seeks

10 | information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

11 | broadly construed, and a request for discovery should be considered relevant if there

12 | is any possibility that the information sought may be relevant to the claim or defense

13 | of any party."  *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

14 | omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

15 | milestone payment under the terms of the Assignment Agreement between the

16 | parties because Genzyme used MediciNova's AAV vector technology in

17 | manufacturing the drug product.  AAV is a helper-dependent virus, requiring co-

18 | infection with a helper molecule in order to form AAV virions.  Accessory

19 | functions, which refer to non-AAV derived viral and/or cellular functions upon

20 | which AAV is dependent for its replication, may be derived from the helper

21 | molecule.  This Request for Admission, which relates to specified characteristics of

22 | an accessory function molecule, is therefore relevant to the issue of how Genzyme

23 | manufactured its recombinant AAV product, and whether it did so using the

24 | technology described and embodied in the '237 Patent.  As such, this Request for

25 | Admission is also relevant to the ultimate issues in this case, including whether

26 | Genzyme breached the Assignment Agreement between the parties by using

27 | MediciNova's AAV vector technology.  Accordingly, the characteristics of the

28 |

-87-

1   accessory function molecule—and specifically, whether the accessory function

2   molecule contains an adenovirus E1A coding region, as the request asks Genzyme

3   to admit— relate directly to the dispute as to whether the drug product is covered by

4   the '237 patent, and Genzyme should respond to this Request for Admission.

5

6   **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

7   **No. 41**

8         MediciNova's Request for Admission seeks irrelevant information.  It is

9   irrelevant whether Genzyme's manufacturing process used/uses a cell containing a

10  PRODUCTION MOLECULE and ACCESSORY FUNCTION MOLECULE or

11  what the ACCESSORY FUNCTION MOLECULE's characteristics are.  This

12  inquiry has nothing whatsoever to do with ascertaining the scope of the '237

13  patent—particularly whether the '237 patent covers drug products derived from the

14  herpes virus—and whether that scope covers Genzyme's drug product.  As

15  MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request

16  seeks information that is not "relevant to any party's claim or defense," and is

17  certainly not "proportional to the needs of the case, considering the importance of

18  the issues at stake in the action, the amount in controversy, the parties' relative

19  access to relevant information, the parties' resources, the importance of the

20  discovery in resolving the issues, and whether the burden or expense of the proposed

21  discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

22

23        Genzyme's objections are therefore proper.

24

25

26

27

28

**26.    Request for Admission No. 42**

**MediciNova's Request for Admission No. 42**

Admit that the ACCESSORY FUNCTION MOLECULE contains an adenovirus E1B coding region.

**Genzyme's Response to MediciNova's Request for Admission No. 42**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that it seeks information that has no relevance to the claims and defenses in this litigation, and therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows requests to admit the truth of matters "within the scope of Rule 26(b)(1)." *See, e.g.*, *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2; *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

Because "the responding party waives any objections to the request for admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this request is neither admitted nor denied.

**MediciNova's Contentions Regarding Request for Admission No. 42**

Genzyme's objection that MediciNova's Request for Admission No. 42 seeks information irrelevant to the parties' claims and defenses is meritless. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations omitted). MediciNova's complaint alleges that Genzyme owes MediciNova a milestone payment under the terms of the Assignment Agreement between the

1  parties because Genzyme used MediciNova's AAV vector technology in

2  manufacturing the drug product.  AAV is a helper-dependent virus, requiring co-

3  infection with a helper molecule in order to form AAV virions.  Accessory

4  functions, which refer to non-AAV derived viral and/or cellular functions upon

5  which AAV is dependent for its replication, may be derived from the helper

6  molecule.  This Request for Admission, which relates to specified characteristics of

7  an accessory function molecule, is therefore relevant to the issue of how Genzyme

8  manufactured its recombinant AAV product, and whether it did so using the

9  technology described and embodied in the '237 Patent.  As such, this Request for

10 Admission is also relevant to the ultimate issues in this case, including whether

11 Genzyme breached the Assignment Agreement between the parties by using

12 MediciNova's AAV vector technology.  Accordingly, the characteristics of the

13 accessory function molecule—and specifically, whether the accessory function

14 molecule contains an adenovirus E1B coding region, as the request asks Genzyme to

15 admit— relate directly to the dispute as to whether the drug product is covered by

16 the '237 patent, and Genzyme should respond to this Request for Admission.

17

18 **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

19 **No. 42**

20      MediciNova's Request for Admission seeks irrelevant information.  It is

21 irrelevant whether Genzyme's manufacturing process used/uses a cell containing a

22 PRODUCTION MOLECULE and ACCESSORY FUNCTION MOLECULE or

23 what the ACCESSORY FUNCTION MOLECULE's characteristics are.  This

24 inquiry has nothing whatsoever to do with ascertaining the scope of the '237

25 patent—particularly whether the '237 patent covers drug products derived from the

26 herpes virus—and whether that scope covers Genzyme's drug product.  As

27 MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request

28

-90-

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

1  seeks information that is not "relevant to any party's claim or defense," and is

2  certainly not "proportional to the needs of the case, considering the importance of

3  the issues at stake in the action, the amount in controversy, the parties' relative

4  access to relevant information, the parties' resources, the importance of the

5  discovery in resolving the issues, and whether the burden or expense of the proposed

6  discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

7

8  Genzyme's objections are therefore proper.

9

10  **27.    Request for Admission No. 43**

11  **MediciNova's Request for Admission No. 43**

12  Admit that the adenovirus E1B coding region lacks an intact E1B 55k coding

13  region.

14

15  **Genzyme's Response to MediciNova's Request for Admission No. 43**

16  In addition to its General Objections and Objections to Plaintiff's Definitions

17  and Instructions, Defendant objects to the Request on the grounds that it seeks

18  information that has no relevance to the claims and defenses in this litigation, and

19  therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows

20  requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*,

21  *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2;

22  *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL

23  1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

24

25  Because "the responding party waives any objections to the request for

26  admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this

27  request is neither admitted nor denied.

28

-91-

**MediciNova's Contentions Regarding Request for Admission No. 43**

Genzyme's objection that MediciNova's Request for Admission No. 43 seeks information irrelevant to the parties' claims and defenses is meritless. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations omitted). MediciNova's complaint alleges that Genzyme owes MediciNova a milestone payment under the terms of the Assignment Agreement between the parties because Genzyme used MediciNova's AAV vector technology in manufacturing the drug product. AAV is a helper-dependent virus, requiring co-infection with a helper molecule in order to form AAV virions. Accessory functions, which refer to non-AAV derived viral and/or cellular functions upon which AAV is dependent for its replication, may be derived from the helper molecule. This Request for Admission, which relates to specified characteristics of an accessory function molecule, is therefore relevant to the issue of how Genzyme manufactured its recombinant AAV product, and whether it did so using the technology described and embodied in the '237 Patent. As such, this Request for Admission is also relevant to the ultimate issues in this case, including whether Genzyme breached the Assignment Agreement between the parties by using MediciNova's AAV vector technology. Accordingly, the characteristics of the accessory function molecule—and specifically, whether the adenovirus E1B coding region contained therein lacks an intact E1B 55k coding region, as the request asks Genzyme to admit— relate directly to the dispute as to whether the drug product is covered by the '237 patent, and Genzyme should respond to this Request for Admission.

SMRH:482717025.3

**Genzyme's Response to MediciNova's Contentions Regarding Request for Admission No. 43**

MediciNova's Request for Admission seeks irrelevant information.  It is irrelevant whether Genzyme's manufacturing process used/uses a cell containing a PRODUCTION MOLECULE and ACCESSORY FUNCTION MOLECULE or what the ACCESSORY FUNCTION MOLECULE's characteristics are.  This inquiry has nothing whatsoever to do with ascertaining the scope of the '237 patent—particularly whether the '237 patent covers drug products derived from the herpes virus—and whether that scope covers Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request seeks information that is not "relevant to any party's claim or defense," and is certainly not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

Genzyme's objections are therefore proper.

## 28.   Request for Admission No. 44

**MediciNova's Request for Admission No. 44**

Admit that at least one formulation of the DRUG PRODUCT contains a dihydric alcohol.

**Genzyme's Response to MediciNova's Request for Admission No. 44**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that it seeks

-93-

1    information that has no relevance to the claims and defenses in this litigation, and

2    therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows

3    requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*,

4    *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2;

5    *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL

6    1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

7

8         Because "the responding party waives any objections to the request for

9    admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this

10   request is neither admitted nor denied.

11

12   **MediciNova's Contentions Regarding Request for Admission No. 44**

13        Genzyme's objection that MediciNova's Request for Admission No. 44 seeks

14   information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

15   broadly construed, and a request for discovery should be considered relevant if there

16   is any possibility that the information sought may be relevant to the claim or defense

17   of any party."  *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

18   omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

19   milestone payment under the terms of the Assignment Agreement between the

20   parties because Genzyme used MediciNova's AAV vector technology in

21   manufacturing the drug product.  The characteristics of the drug product itself—

22   including the precise formulation(s) thereof, and whether any such formulations

23   contain a dihydric alcohol, as the request asks Genzyme to admit—are relevant to

24   whether Genzyme used MediciNova's patented technology, in the context of the

25   '237 patent and/or any other issued patent or patent application covered by the

26   Assignment Agreement.  Accordingly, the characteristics of the drug product at

27   issue in this case are relevant, and Genzyme should respond to this Request for

28

1  Admission.  In addition, the burden for Genzyme to respond is minimal.  As a party

2  to a contract with Genzyme, MediciNova should be entitled to know whether

3  Genzyme has developed any other products potentially covered by the agreement.

4  Genzyme continues to take the position that so long as it is able to prevent

5  MediciNova from knowing whether it has developed any other products covered by

6  the parties' contract, Genzyme can avoid paying the contractually mandated

7  milestones.  Genzyme should not be permitted to avoid providing this minimal level

8  of information given the parties' contractual relationship.

9

10  **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

11  **No. 44**

12       MediciNova's Request for Admission seeks irrelevant information.  It is

13  irrelevant whether Genzyme's DRUG PRODUCT formulation includes various

14  alcohols, detergents, or glycols.  This inquiry has nothing whatsoever to do with

15  ascertaining the scope of the '237 patent—particularly whether the '237 patent

16  covers drug products derived from the herpes virus—and whether that scope covers

17  Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this

18  litigation.  Accordingly, the Request seeks information that is not "relevant to any

19  party's claim or defense," and is certainly not "proportional to the needs of the case,

20  considering the importance of the issues at stake in the action, the amount in

21  controversy, the parties' relative access to relevant information, the parties'

22  resources, the importance of the discovery in resolving the issues, and whether the

23  burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.

24  Civ. Proc. 26(b)(1).

25

26       MediciNova even *concedes* that its RFA is part of a fishing expedition to find

27  out information allegedly related to the "*other products* potentially covered by the

28

-95-

agreement" (emphasis added), which falls well outside the scope of the Amended Complaint.  Specifically, the Amended Complaint (ECF No. 13), filed in response to the Court's grant of Genzyme's motion to dismiss the original Complaint (ECF No. 9), pertains solely to the issue of whether Genzyme's AAV2-sFLT01 gene product is covered by one or more claims of the '237 Patent.

Genzyme's objections are therefore proper.

**29.    Request for Admission No. 45**

**MediciNova's Request for Admission No. 45**

Admit that at least one formulation of the DRUG PRODUCT contains a polyhydric alcohol.

**Genzyme's Response to MediciNova's Request for Admission No. 45**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that it seeks information that has no relevance to the claims and defenses in this litigation, and therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows requests to admit the truth of matters "within the scope of Rule 26(b)(1)." *See, e.g.*, *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2; *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

Because "the responding party waives any objections to the request for admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this request is neither admitted nor denied.

1  **MediciNova's Contentions Regarding Request for Admission No. 45**

2       Genzyme's objection that MediciNova's Request for Admission No. 45 seeks

3  information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

4  broadly construed, and a request for discovery should be considered relevant if there

5  is any possibility that the information sought may be relevant to the claim or defense

6  of any party."  *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

7  omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

8  milestone payment under the terms of the Assignment Agreement between the

9  parties because Genzyme used MediciNova's AAV vector technology in

10  manufacturing the drug product.  The characteristics of the drug product itself—

11  including the precise formulation(s) thereof, and whether any such formulations

12  contain a polyhydric alcohol, as the request asks Genzyme to admit—are relevant to

13  whether Genzyme used MediciNova's patented technology, in the context of the

14  '237 patent and/or any other issued patent or patent application covered by the

15  Assignment Agreement.  Accordingly, the characteristics of the drug product at

16  issue in this case are relevant, and Genzyme should respond to this Request for

17  Admission.  In addition, the burden for Genzyme to respond is minimal.  As a party

18  to a contract with Genzyme, MediciNova should be entitled to know whether

19  Genzyme has developed any other products potentially covered by the agreement.

20  Genzyme continues to take the position that so long as it is able to prevent

21  MediciNova from knowing whether it has developed any other products covered by

22  the parties' contract, Genzyme can avoid paying the contractually mandated

23  milestones.  Genzyme should not be permitted to avoid providing this minimal level

24  of information given the parties' contractual relationship.

25

26

27

28

1  **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

2  **No. 45**

3       MediciNova's Request for Admission seeks irrelevant information.  It is

4  irrelevant whether Genzyme's DRUG PRODUCT formulation includes various

5  alcohols, detergents, or glycols.  This inquiry has nothing whatsoever to do with

6  ascertaining the scope of the '237 patent—particularly whether the '237 patent

7  covers drug products derived from the herpes virus—and whether that scope covers

8  Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this

9  litigation.  Accordingly, the Request seeks information that is not "relevant to any

10  party's claim or defense," and is certainly not "proportional to the needs of the case,

11  considering the importance of the issues at stake in the action, the amount in

12  controversy, the parties' relative access to relevant information, the parties'

13  resources, the importance of the discovery in resolving the issues, and whether the

14  burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.

15  Civ. Proc. 26(b)(1).

16       MediciNova even *concedes* that its RFA is part of a fishing expedition to find

17  out information allegedly related to the "*other products* potentially covered by the

18  agreement" (emphasis added), which falls well outside the scope of the Amended

19  Complaint.  Specifically, the Amended Complaint (ECF No. 13), filed in response to

20  the Court's grant of Genzyme's motion to dismiss the original Complaint (ECF No.

21  9), pertains solely to the issue of whether Genzyme's AAV2-sFLT01 gene product

22  is covered by one or more claims of the '237 Patent.

23

24       Genzyme's objections are therefore proper.

25

26

27

28

30.     **Request for Admission No. 46**

**MediciNova's Request for Admission No. 46**

Admit that at least one formulation of the DRUG PRODUCT contains a detergent and a dihydric or polyhydric alcohol.

**Genzyme's Response to MediciNova's Request for Admission No. 46**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that it seeks information that has no relevance to the claims and defenses in this litigation, and therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows requests to admit the truth of matters "within the scope of Rule 26(b)(1)." *See, e.g.*, *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2; *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

Because "the responding party waives any objections to the request for admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this request is neither admitted nor denied.

**MediciNova's Contentions Regarding Request for Admission No. 46**

Genzyme's objection that MediciNova's Request for Admission No. 46 seeks information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party."  *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a milestone payment under the terms of the Assignment Agreement between the

-99-

parties because Genzyme used MediciNova's AAV vector technology in manufacturing the drug product. The characteristics of the drug product itself—including the precise formulation(s) thereof, and whether any such formulations contain a detergent and a dihydric or polyhydric alcohol, as the request asks Genzyme to admit—are relevant to whether Genzyme used MediciNova's patented technology in the context of the '237 patent and/or any other issued patent or patent application covered by the Assignment Agreement. Accordingly, the characteristics of the drug product at issue in this case are relevant, and Genzyme should respond to this Request for Admission. In addition, the burden for Genzyme to respond is minimal. As a party to a contract with Genzyme, MediciNova should be entitled to know whether Genzyme has developed any other products potentially covered by the agreement. Genzyme continues to take the position that so long as it is able to prevent MediciNova from knowing whether it has developed any other products covered by the parties' contract, Genzyme can avoid paying the contractually mandated milestones. Genzyme should not be permitted to avoid providing this minimal level of information given the parties' contractual relationship.

**Genzyme's Response to MediciNova's Contentions Regarding Request for Admission No. 46**

MediciNova's Request for Admission seeks irrelevant information. It is irrelevant whether Genzyme's DRUG PRODUCT formulation includes various alcohols, detergents, or glycols. This inquiry has nothing whatsoever to do with ascertaining the scope of the '237 patent—particularly whether the '237 patent covers drug products derived from the herpes virus—and whether that scope covers Genzyme's drug product. As MediciNova knows, this is the *sole issue* in this litigation. Accordingly, the Request seeks information that is not "relevant to any party's claim or defense," and is certainly not "proportional to the needs of the case,

-100-

1  considering the importance of the issues at stake in the action, the amount in

2  controversy, the parties' relative access to relevant information, the parties'

3  resources, the importance of the discovery in resolving the issues, and whether the

4  burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.

5  Civ. Proc. 26(b)(1).

6

7      MediciNova even *concedes* that its RFA is part of a fishing expedition to find

8  out information allegedly related to the "*other products* potentially covered by the

9  agreement" (emphasis added), which falls well outside the scope of the Amended

10 Complaint.  Specifically, the Amended Complaint (ECF No. 13), filed in response to

11 the Court's grant of Genzyme's motion to dismiss the original Complaint (ECF No.

12 9), pertains solely to the issue of whether Genzyme's AAV2-sFLT01 gene product

13 is covered by one or more claims of the '237 Patent.

14

15     Genzyme's objections are therefore proper.

16

17     **31.    Request for Admission No. 47**

18 **MediciNova's Request for Admission No. 47**

19     Admit that at least one formulation of the DRUG PRODUCT contains a

20 propylene glycol.

21

22 **Genzyme's Response to MediciNova's Request for Admission No. 47**

23     In addition to its General Objections and Objections to Plaintiff's Definitions

24 and Instructions, Defendant objects to the Request on the grounds that it seeks

25 information that has no relevance to the claims and defenses in this litigation, and

26 therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows

27 requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*,

28

-101-

1   *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2;

2   *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL

3   1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

4

5       Because "the responding party waives any objections to the request for

6   admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this

7   request is neither admitted nor denied.

8

9   **MediciNova's Contentions Regarding Request for Admission No. 47**

10      Genzyme's objection that MediciNova's Request for Admission No. 47 seeks

11  information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

12  broadly construed, and a request for discovery should be considered relevant if there

13  is any possibility that the information sought may be relevant to the claim or defense

14  of any party."  *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

15  omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

16  milestone payment under the terms of the Assignment Agreement between the

17  parties because Genzyme used MediciNova's AAV vector technology in

18  manufacturing the drug product.  The characteristics of the drug product itself—

19  including the precise formulation(s) thereof, and whether any such formulations

20  contain a propylene glycol, as the request asks Genzyme to admit—are relevant to

21  whether Genzyme used MediciNova's patented technology, in the context of the

22  '237 patent and/or any other issued patent or patent application covered by the

23  Assignment Agreement.  Accordingly, the characteristics of the drug product at

24  issue in this case are relevant, and Genzyme should respond to this Request for

25  Admission.  In addition, the burden for Genzyme to respond is minimal.  As a party

26  to a contract with Genzyme, MediciNova should be entitled to know whether

27  Genzyme has developed any other products potentially covered by the agreement.

28

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

1    Genzyme continues to take the position that so long as it is able to prevent
2    MediciNova from knowing whether it has developed any other products covered by
3    the parties' contract, Genzyme can avoid paying the contractually mandated
4    milestones.  Genzyme should not be permitted to avoid providing this minimal level
5    of information given the parties' contractual relationship.

6

7    **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**
8    **No. 47**

9        MediciNova's Request for Admission seeks irrelevant information.  It is
10   irrelevant whether Genzyme's DRUG PRODUCT formulation includes various
11   alcohols, detergents, or glycols.  This inquiry has nothing whatsoever to do with
12   ascertaining the scope of the '237 patent—particularly whether the '237 patent
13   covers drug products derived from the herpes virus—and whether that scope covers
14   Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this
15   litigation.  Accordingly, the Request seeks information that is not "relevant to any
16   party's claim or defense," and is certainly not "proportional to the needs of the case,
17   considering the importance of the issues at stake in the action, the amount in
18   controversy, the parties' relative access to relevant information, the parties'
19   resources, the importance of the discovery in resolving the issues, and whether the
20   burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.
21   Civ. Proc. 26(b)(1).

22

23       MediciNova even *concedes* that its RFA is part of a fishing expedition to find
24   out information allegedly related to the "*other products* potentially covered by the
25   agreement" (emphasis added), which falls well outside the scope of the Amended
26   Complaint.  Specifically, the Amended Complaint (ECF No. 13), filed in response to
27   the Court's grant of Genzyme's motion to dismiss the original Complaint (ECF No.

28

9), pertains solely to the issue of whether Genzyme's AAV2-sFLT01 gene product is covered by one or more claims of the '237 Patent.

Genzyme's objections are therefore proper.

### 32.    Request for Admission No. 48

**MediciNova's Request for Admission No. 48**

Admit that the manufacturing of the DRUG PRODUCT uses or has used anion exchange chromatography.

**Genzyme's Response to MediciNova's Request for Admission No. 48**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that it seeks information that has no relevance to the claims and defenses in this litigation, and therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*, *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2; *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

Because "the responding party waives any objections to the request for admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this request is neither admitted nor denied.

**MediciNova's Contentions Regarding Request for Admission No. 48**

Genzyme's objection that MediciNova's Request for Admission No. 47 seeks information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

1   broadly construed, and a request for discovery should be considered relevant if there

2   is any possibility that the information sought may be relevant to the claim or defense

3   of any party." *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

4   omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

5   milestone payment under the terms of the Assignment Agreement between the

6   parties because Genzyme used MediciNova's AAV vector technology in

7   manufacturing the drug product.  Thus, the requested information regarding the

8   manufacturing itself—including whether any such processes use anion exchange

9   chromatography, as the request asks Genzyme to admit—are relevant to whether

10  Genzyme used MediciNova's patented technology, in the context of the '237 patent

11  and/or any other issued patent or patent application covered by the Assignment

12  Agreement.  Accordingly, the precise manufacturing techniques of the drug product

13  at issue are relevant, and Genzyme should respond to this Request for

14  Admission.  In addition, the burden for Genzyme to respond is minimal.  As a party

15  to a contract with Genzyme, MediciNova should be entitled to know whether

16  Genzyme has developed any other products potentially covered by the agreement.

17  Genzyme continues to take the position that so long as it is able to prevent

18  MediciNova from knowing whether it has developed any other products covered by

19  the parties' contract, Genzyme can avoid paying the contractually mandated

20  milestones.  Genzyme should not be permitted to avoid providing this minimal level

21  of information given the parties' contractual relationship.

22

23  **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

24  **No. 48**

25       MediciNova's Request for Admission seeks irrelevant information.  It is

26  irrelevant whether Genzyme's manufacturing process used/uses anion- or cation-

27  exchange chromatography.  This inquiry has nothing whatsoever to do with

28

ascertaining the scope of the '237 patent—particularly whether the '237 patent covers drug products derived from the herpes virus—and whether that scope covers Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this litigation.  Accordingly, the Request seeks information that is not "relevant to any party's claim or defense," and is certainly not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

MediciNova even *concedes* that its RFA is part of a fishing expedition to find out information allegedly related to the "*other products* potentially covered by the agreement" (emphasis added), which falls well outside the scope of the Amended Complaint.  Specifically, the Amended Complaint (ECF No. 13), filed in response to the Court's grant of Genzyme's motion to dismiss the original Complaint (ECF No. 9), pertains solely to the issue of whether Genzyme's AAV2-sFLT01 gene product is covered by one or more claims of the '237 Patent.

Genzyme's objections are therefore proper.

**33.    Request for Admission No. 49**

**MediciNova's Request for Admission No. 49**

Admit that the manufacturing of the DRUG PRODUCT uses or has used anion exchange chromatography which is washed with a reagent that contains sarcosine.

**Genzyme's Response to MediciNova's Request for Admission No. 49**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the Request on the grounds that it seeks information that has no relevance to the claims and defenses in this litigation, and therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows requests to admit the truth of matters "within the scope of Rule 26(b)(1)." *See, e.g.*, *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2; *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL 1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

Because "the responding party waives any objections to the request for admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this request is neither admitted nor denied.

**MediciNova's Contentions Regarding Request for Admission No. 49**

Genzyme's objection that MediciNova's Request for Admission No. 49 seeks information irrelevant to the parties' claims and defenses is meritless. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations omitted). MediciNova's complaint alleges that Genzyme owes MediciNova a milestone payment under the terms of the Assignment Agreement between the parties because Genzyme used MediciNova's AAV vector technology in manufacturing the drug product. Thus, the requested information regarding the manufacturing itself—including whether any such processes use anion exchange chromatography which is washed with a reagent that contains sarcosine, as the request asks Genzyme to admit—are relevant to whether Genzyme used

-107-

1    MediciNova's patented technology, in the context of the '237 patent and/or any

2    other issued patent or patent application covered by the Assignment Agreement.

3    Accordingly, the precise manufacturing techniques of the drug product at issue are

4    relevant, and Genzyme should respond to this Request for Admission.  In addition,

5    the burden for Genzyme to respond is minimal.  As a party to a contract with

6    Genzyme, MediciNova should be entitled to know whether Genzyme has developed

7    any other products potentially covered by the agreement.  Genzyme continues to

8    take the position that so long as it is able to prevent MediciNova from knowing

9    whether it has developed any other products covered by the parties' contract,

10   Genzyme can avoid paying the contractually mandated milestones.  Genzyme

11   should not be permitted to avoid providing this minimal level of information given

12   the parties' contractual relationship.

13

14   **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

15   **No. 49**

16          MediciNova's Request for Admission seeks irrelevant information.  It is

17   irrelevant whether Genzyme's manufacturing process used/uses anion- or cation-

18   exchange chromatography.  This inquiry has nothing whatsoever to do with

19   ascertaining the scope of the '237 patent—particularly whether the '237 patent

20   covers drug products derived from the herpes virus—and whether that scope covers

21   Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this

22   litigation.  Accordingly, the Request seeks information that is not "relevant to any

23   party's claim or defense," and is certainly not "proportional to the needs of the case,

24   considering the importance of the issues at stake in the action, the amount in

25   controversy, the parties' relative access to relevant information, the parties'

26   resources, the importance of the discovery in resolving the issues, and whether the

27

28

1   burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.

2   Civ. Proc. 26(b)(1).

3

4        MediciNova even *concedes* that its RFA is part of a fishing expedition to find

5   out information allegedly related to the "*other products* potentially covered by the

6   agreement" (emphasis added), which falls well outside the scope of the Amended

7   Complaint.  Specifically, the Amended Complaint (ECF No. 13), filed in response to

8   the Court's grant of Genzyme's motion to dismiss the original Complaint (ECF No.

9   9), pertains solely to the issue of whether Genzyme's AAV2-sFLT01 gene product

10  is covered by one or more claims of the '237 Patent.

11

12       Genzyme's objections are therefore proper.

13

14       **34.    Request for Admission No. 50**

15  **MediciNova's Request for Admission No. 50**

16       Admit that the manufacturing of the DRUG PRODUCT uses or has used

17  cation exchange chromatography.

18

19  **Genzyme's Response to MediciNova's Request for Admission No. 50**

20       In addition to its General Objections and Objections to Plaintiff's Definitions

21  and Instructions, Defendant objects to the Request on the grounds that it seeks

22  information that has no relevance to the claims and defenses in this litigation, and

23  therefore is an improper Request under Fed. R. Civ. Proc. 36(a)(1), which allows

24  requests to admit the truth of matters "within the scope of Rule 26(b)(1)."  *See, e.g.*,

25  *Amergen Energy*, 94 Fed. Cl. at 416-17; *Cederloff*, 2010 WL 157512, at *2;

26  *Mercantile Safe Deposit & Trust*, 1993 WL 313613, at *3; *Walker*, 2012 WL

27  1155140, at *10; *Tuvalu*, 2006 WL 3201096, at *7.

28

-109-

1    Because "the responding party waives any objections to the request for

2    admission by answering the request" (10A Fed. Proc., L. Ed. § 26:736 at n.10), this

3    request is neither admitted nor denied.

4

5    **MediciNova's Contentions Regarding Request for Admission No. 50**

6    Genzyme's objection that MediciNova's Request for Admission No. 50 seeks

7    information irrelevant to the parties' claims and defenses is meritless.  "Relevancy is

8    broadly construed, and a request for discovery should be considered relevant if there

9    is any possibility that the information sought may be relevant to the claim or defense

10   of any party." *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (internal quotations

11   omitted).  MediciNova's complaint alleges that Genzyme owes MediciNova a

12   milestone payment under the terms of the Assignment Agreement between the

13   parties because Genzyme used MediciNova's AAV vector technology in

14   manufacturing the drug product.  Thus, the requested information regarding the

15   manufacturing itself—including whether any such processes use cation exchange

16   chromatography, as the request asks Genzyme to admit—are relevant to whether

17   Genzyme used MediciNova's patented technology, in the context of the '237 patent

18   and/or any other issued patent or patent application covered by the Assignment

19   Agreement.  Accordingly, the precise manufacturing techniques of the drug product

20   at issue are relevant, and Genzyme should respond to this Request for

21   Admission.  In addition, the burden for Genzyme to respond is minimal.  As a party

22   to a contract with Genzyme, MediciNova should be entitled to know whether

23   Genzyme has developed any other products potentially covered by the agreement.

24   Genzyme continues to take the position that so long as it is able to prevent

25   MediciNova from knowing whether it has developed any other products covered by

26   the parties' contract, Genzyme can avoid paying the contractually mandated

27

28

-110-

1  milestones.  Genzyme should not be permitted to avoid providing this minimal level

2  of information given the parties' contractual relationship.

3

4  **Genzyme's Response to MediciNova's Contentions Regarding Request for Admission**

5  **No. 50**

6          MediciNova's Request for Admission seeks irrelevant information.  It is

7  irrelevant whether Genzyme's manufacturing process used/uses anion- or cation-

8  exchange chromatography.  This inquiry has nothing whatsoever to do with

9  ascertaining the scope of the '237 patent—particularly whether the '237 patent

10  covers drug products derived from the herpes virus—and whether that scope covers

11  Genzyme's drug product.  As MediciNova knows, this is the *sole issue* in this

12  litigation.  Accordingly, the Request seeks information that is not "relevant to any

13  party's claim or defense," and is certainly not "proportional to the needs of the case,

14  considering the importance of the issues at stake in the action, the amount in

15  controversy, the parties' relative access to relevant information, the parties'

16  resources, the importance of the discovery in resolving the issues, and whether the

17  burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.

18  Civ. Proc. 26(b)(1).

19

20          MediciNova even *concedes* that its RFA is part of a fishing expedition to find

21  out information allegedly related to the "*other products* potentially covered by the

22  agreement" (emphasis added), which falls well outside the scope of the Amended

23  Complaint.  Specifically, the Amended Complaint (ECF No. 13), filed in response to

24  the Court's grant of Genzyme's motion to dismiss the original Complaint (ECF No.

25  9), pertains solely to the issue of whether Genzyme's AAV2-sFLT01 gene product

26  is covered by one or more claims of the '237 Patent.

27

28

1    Genzyme's objections are therefore proper.

2

3    **B.**    **Genzyme's Responses to MediciNova's Requests for Production of Documents**

     **1.**    **Request for Production of Documents No. 1**

4

5    **MediciNova's Request for Production No. 1**

6    All DOCUMENTS and THINGS that YOU have provided to the FDA

7    relating to the DRUG PRODUCT, including but not limited to IND application and

8    documentations for the Pharmaceutical Quality and Chemistry, Manufacturing of

9    and Controls.

10

11   **Genzyme's Response to MediciNova's Request for Production No. 1**

12   In addition to its General Objections and Objections to Plaintiff's Definitions

13   and Instructions, Defendant objects to the phrase "documentations for the

14   Pharmaceutical Quality and chemistry, Manufacturing of and Controls" on the

15   grounds that it is vague.  Defendant further objects to the request because it purports

16   to seek "All" documents described in the Request on the grounds that a request for

17   "All" documents described in the Request seeks information or documents that are

18   not relevant to any party's claim or defense or not proportional to the needs of the

19   case, considering the importance of the issues at stake in the action, the amount in

20   controversy, the parties' relative access to relevant information, the parties'

21   resources, the importance of discovery in resolving the issues, and whether the

22   burden or expense of the proposed discovery outweighs its likely benefit.  Instead,

23   and subject to its General and Specific Objections, Defendant states that it will

24   produce documents sufficient to identify the Drug Product that is the subject of the

25   Request, and documents sufficient to describe the design, preparation, and

26   purification of the Drug Product that is the subject of the Request.

27

28

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

**MediciNova's Contentions Regarding Request for Production No. 1**

MediciNova has the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1). Genzyme objects in response to almost every one of MediciNova's document requests that a request seeking all documents on a given topic necessarily fails this test. The objection is meritless. MediciNova must have all the pertinent documents so it has a complete picture of the facts—otherwise, Genzyme could selectively produce only certain materials in an effort to slant the evidence in its favor. This danger is particularly acute in a case like this one, wherein Genzyme has both nearly exclusive control over the evidence pertinent to the issues under dispute and much greater resources than MediciNova.

The other pertinent factors also weigh in favor of compelling Genzyme to produce the documents MediciNova seeks. Documents and things Genzyme submitted to the FDA concerning the drug product are directly relevant to the core legal issue under dispute: whether AAV-sFLT is covered by one or more patents under the parties' Assignment Agreement. Since Genzyme would have had to submit various materials to the FDA concerning the manner in which it developed and manufactured the drug product, this evidence is relevant to MediciNova's claims and Genzyme's defenses (if any). The amount in controversy is sizeable—MediciNova seeks a minimum of one million dollars in damages, which surely justifies significant discovery to ensure that the case is resolved correctly.

1    Genzyme's objections regarding the phrase it selected are similarly meritless

2  because that phrase is simply an example of the documents sought by the request.

3  Genzyme did not object on any of these grounds to the main request itself, which

4  sought, in clear and direct language, "All DOCUMENTS and THINGS that YOU

5  have provided to the FDA relating to the DRUG PRODUCT."

6

7    During the meet and confer process, Genzyme essentially took the position

8  that MediciNova needs nothing other than Genzyme's "Investigational New Drug

9  Application" to determine whether Genzyme owes MediciNova a milestone

10  payment under the terms of the Assignment Agreement between the parties, because

11  that document should show on its face whether AAV-sFLT is covered by one or

12  more patents under the parties' Assignment Agreement and it is impossible that

13  anything stated therein could prove to be inaccurate when compared with other

14  underlying and related materials.  MediciNova respectfully disagrees; it believes it

15  has the right to discovery of the source documents on which the IND application is

16  based and other related documents and things, including those additional documents

17  and things sought via this document request, to confirm for itself whether the IND

18  Application is complete and accurate.

19

20    Genzyme's response arbitrarily limits its production to "documents sufficient

21  to identify the Drug Product that is the subject of the Request."  Genzyme should be

22  compelled to respond to the request as written.

23

24  **Genzyme's Response to MediciNova's Contentions Regarding Request for**

25  **Production No. 1**

26    Genzyme has provided, among other things, ***the entire IND for the product***

27  ***at issue in this litigation***.  The IND is sufficient to identify the drug product that is

28

1   the subject of the request and is fully responsive to the non-objectionable portions of

2   these document requests.  Indeed, the IND contains far more detail than MediciNova

3   needs to identify the characteristics of AAV2-sFLT01 that are relevant to the claims

4   of the '237 patent.  MediciNova's position that more documentation and information

5   are needed to "test" whether the statements in the IND are accurate is meritless.  The

6   IND is an official submittal made to the U.S. government requesting authorization to

7   conduct clinical trials of a drug product.  It is the best evidence to establish the drug

8   product's characteristics.  MediciNova's suggestion that Genzyme may have made

9   incorrect statements in its IND has no basis in fact and is the type of speculation that

10  courts prohibit.  *Robinson v. Horizon Blue Cross-Blue Shield of New Jersey*, No.

11  2:12-CV-02981-ES-JAD, 2013 WL 6858956, at *6 (D.N.J. Dec. 23, 2013), *aff'd,*

12  No. CIV.A. 12-2981 ES, 2014 WL 3573339 (D.N.J. July 21, 2014), and *aff'd sub*

13  *nom. Robinson v. Horizon Blue Cross Blue Shield of New Jersey*, No. 15-3049, 2017

14  WL 57771 (3d Cir. Jan. 5, 2017) ("Apparently, the voluminous discovery that

15  plaintiff has already received does not contain facts or information that can

16  reasonably support these theories; and now plaintiff urges this Court to compel

17  further discovery in hopes that something will be found to support his presently

18  unsupported theories. . . .  This is the type of "fishing expedition" that courts

19  typically view as an abuse of the liberal Rule 26 relevancy standard."); *see also*

20  *Justiano v. GS4 Secure Solutions, Inc.*, 291 F.R.D. 80, 83 (D.N.J. 2013) (Discovery

21  should not serve as a fishing expedition during which a party searches for evidence

22  to support facts not yet pleaded); *Claude P. Bamberger Int'l, Inc. v. Rohm and Haas*

23  *Co.*, C.A. No. 96–1041(WGB), 1998 WL 684263, at *2 (D.N.J. April 1, 1998)

24  ("while the standard of relevancy is a liberal one, it is not so liberal as to allow a

25  party to roam in shadow zones of relevancy and to explore matter which does not

26  appear germane merely on the theory that it might become so."); *Rivera v. Nibco,*

27  *Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use

28

-115-

of discovery to engage in 'fishing expedition[s].'"); *Watkins v. Hireright, Inc.*, No. 13CV1432-MMA (BLM), 2014 WL 11191092, at *4 (S.D. Cal. Feb. 21, 2014) ("Defendant's requests appear to be a fishing expedition in the hopes that it will get lucky and turn up some unsavory or fraudulent behavior from Plaintiff's past that can be used to argue Plaintiff is not an adequate class representative"); *Flores v. Bank of Am.*, No. CIV. 11-1817-JM WVG, 2012 WL 6725842, at *2 (S.D. Cal. Dec. 27, 2012) ("the type of discovery sought by Plaintiffs constitutes a 'fishing expedition' which would be unduly burdensome for Defendants to further respond"); *Carter v. Martel*, No. 06CV1343-BEN CAB, 2011 WL 3047672, at *2 (S.D. Cal. July 25, 2011) ("Courts should not permit a petitioner to 'use federal discovery for fishing expeditions to investigate mere speculation.'").

Courts hold that demanding the production of "all documents" on a subject is overly broad, and that documents sufficient to address an issue in a case is the appropriate standard.  *See, e.g*, *Progressive Cas. Ins. Co. v. Delaney*, No. 2:11-CV-00678-LRH, 2014 WL 5449713, at *3 (D. Nev. Oct. 23, 2014) ("The requests are overbroad to the extent they seek "all documents," and the court will modify the requests to require Progressive to provide supplemental responses which provide documents "sufficient to" provide the requested information.").  Indeed, the scope of allowable discovery under Fed. R. Civ. P. 26(b)(1) was amended to make clear that "all documents" on a topic is not the standard for discovery.  *See* Fed. R. Civ. P. 26(b)(1) ("(1) Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ***and proportional to the needs of the case***, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

1  ***whether the burden or expense of the proposed discovery outweighs its likely***

2  ***benefit***.  Information within this scope of discovery need not be admissible in

3  evidence to be discoverable.") (emphasis added).  In construing the

4  "proportionality" requirement of Fed. R. Civ. P. 26(b)(1), courts use a "sufficiency"

5  standard.  *See, e.g.*, *Jessop v. City of Fresno*, No. 115CV00316-DAD-SAB, 2016

6  WL 4161087, at *7 (E.D. Cal. Aug. 4, 2016) (in assessing whether a request "for

7  these documents is ***proportional to the needs of the case***, the Court finds that

8  Plaintiff Ashjian's personal bank records and tax returns from January 1, 2010,

9  through January 1, 2014, will provide Defendant Fresno with ***sufficient information***

10  to determine whether Plaintiffs, and specifically their business, had $131,380

11  available to be seized on the day the search warrant was executed") (emphasis

12  added).

13

14  In a very recent case, this Court addressed a similar issue as follows:

15  Additional examples of Defendants' failure to focus their
16  requests on relevant and proportional requests include the requests for
17  ***all documents*** evidencing Plaintiff's weight from 2008 to the present,
    ***all documents*** relating to Plaintiff's car accident in 2015 (not just those
18  that relate to damages at issue in this case), and ***all documents***
19  evidencing any heart problems and treatment thereof.  Second, many of
    the requests, in addition to being overbroad, seek irrelevant documents.
20  For example, RFP 343 seeks all documents evidencing Plaintiff's
21  weight from 2008 to the present and RFPs 355 and 356 seek all
    documents (with no time limitation) evidencing any heart problems and
22  treatment thereof. Third, ***Defendants do not state what documents***
23  ***were produced by Plaintiff, why that production was insufficient***, and
    precisely what type of additional documentation Defendants are
24  seeking and why.  Rather, Defendants provide Plaintiff's response
25  (which sometimes was that no such documents exist or that specific
    types of documents will be produced) and then repeatedly state, without
26  legal authority or analysis, that they are entitled to all of the documents
27  they requested.  As discussed above, ***Defendants' original requests are***
    ***extremely overbroad, seek irrelevant information, and are not***

28

-117-

1
2
3

> ***proportional to the needs of this case*** so Defendants' repeated demand for all documents is not justified.  Accordingly, Defendants' motion to compel the requested supplemental production to the identified RFPs is DENIED.

4
5
6
7
8
9
10
11
12
13
14

*Alexis v. Rogers*, No. 15CV691-CAB (BLM), 2017 WL 1073404, at *7 (S.D. Cal. Mar. 21, 2017) (emphasis added).  The *Alexis* case is on all fours with the instant case—Genzyme's document production, spanning more than 121,000 pages and including the full IND file that described the gene product at issue, its makeup, its manufacturing process, and its testing, among other things, provides every bit of information that is needed in this case to assess whether the gene product falls within the scope of the '237 patent.  MediciNova has not articulated what additional information it needs (other than to say that it needs duplicative or confirmatory information).  This is because MediciNova needs no additional information—the information that Genzyme has produced is more than sufficient, and more than proportional, to the needs of the case.

15
16
17
18
19
20
21

Finally, MediciNova misstates the scope of this case as "the core legal issue under dispute [is]whether AAV-sFLT is covered by **one or more patents** under the parties' Assignment Agreement."  (emphasis added.)  The scope of this case is defined by the Amended Complaint, and the only patent at issue is the '237 patent.  Clearly, MediciNova seeks information for purposes beyond the relevant scope of this case, and this must be rejected.

22
23
24

Genzyme's document production is complete, and no supplementation is needed.

25
26
27
28

**2.    Request for Production of Documents No. 2**

**MediciNova's Request for Production No. 2**

All DOCUMENTS and THINGS RELATING TO any and all COMMUNICATIONS between YOU and the FDA concerning the DRUG PRODUCT, including but not limited to, the manufacturing, testing, clinical development, or approval of the DRUG PRODUCT.

**Genzyme's Response to MediciNova's Request for Production No. 2**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to this Request to the extent that it seeks the disclosure of documents or other information protected from disclosure by the attorney-client privilege, work product doctrine and/or any other applicable privilege or doctrine.  Defendant objects to the phrase "RELATING TO any and all COMMUNICATIONS" on the grounds that it is vague, does not describe with particularity the information sought, and purports to impose a requirement on Defendant to conduct more than a reasonable search of information in Defendant's possession, custody, or control.  Defendant further objects to the request because it purports to seek "All" documents described in the Request on the grounds that a request for "All" documents described in the Request seeks information or documents that are not relevant to any party's claim or defense or not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Instead, and subject to its General and Specific Objections, Defendant states that it will produce documents sufficient to identify the Drug Product that is the subject of the Request, and documents sufficient to describe the

-119-

1    design, preparation, and purification of the Drug Product that is the subject of the

2    Request.

3

4    **MediciNova's Contentions Regarding Request for Production No. 2**

5    MediciNova has the right to "obtain discovery regarding any nonprivileged

6    matter that is relevant to any party's claim or defense and proportional to the needs

7    of the case, considering the importance of the issues at stake in the action, the

8    amount in controversy, the parties' relative access to relevant information, the

9    parties' resources, the importance of the discovery in resolving the issues, and

10   whether the burden or expense of the proposed discovery outweighs its likely

11   benefit."  Fed. R. Civ. Proc. 26(b)(1).  Genzyme objects in response to almost every

12   one of MediciNova's document requests that a request seeking all documents on a

13   given topic necessarily fails this test.  The objection is meritless.   MediciNova must

14   have all the pertinent documents so it has a complete picture of the facts—

15   otherwise, Genzyme could selectively produce only certain materials in an effort to

16   slant the evidence in its favor.  This danger is particularly acute in a case like this

17   one, wherein Genzyme has both nearly exclusive control over the evidence pertinent

18   to the issues under dispute and much greater resources than MediciNova.

19

20   The other pertinent factors also weigh in favor of compelling Genzyme to

21   produce the documents MediciNova seeks.  Genzyme's communications with the

22   FDA concerning the drug product, and other documents and things related thereto,

23   may reveal key details about the nature of the drug product and the process by

24   which it was developed and manufactured that would not otherwise be available to

25   MediciNova solely from the IND report Genzyme has already produced.  Those

26   matters, in turn, are directly relevant to whether Genzyme whether AAV-sFLT is

27   covered by one or more patents under the parties' Assignment Agreement.  The

28

1  amount in controversy is sizeable—MediciNova seeks damages in the millions of

2  dollars, which surely justifies significant discovery to ensure that the case is

3  resolved correctly.

4

5  Genzyme's objections regarding the phrase it selected are similarly meritless

6  because that phrase is clear, unambiguous, and well within the scope of pertinent

7  discovery for the reasons stated herein.

8

9  During the meet and confer process, Genzyme essentially took the position

10  that MediciNova needs nothing other than Genzyme's "Investigational New Drug

11  Application" to determine whether Genzyme owes MediciNova a milestone

12  payment under the terms of the Assignment Agreement between the parties, because

13  that document should show on its face whether AAV-sFLT is covered by one or

14  more patents under the parties' Assignment Agreement and it is impossible that

15  anything stated therein could prove to be inaccurate when compared with other

16  underlying and related materials.  MediciNova respectfully disagrees; it believes it

17  has the right to discovery of the source documents on which the IND application is

18  based and other related documents and things, including those additional documents

19  and things sought via this document request, to confirm for itself whether the IND

20  Application is complete and accurate.

21

22  Genzyme's response arbitrarily limits its production to "documents sufficient

23  to describe the design, preparation, and purification of the Drug Product that is the

24  subject of the Request."  Genzyme should be compelled to respond to the request as

25  written.

26

27  MediciNova does not seek any privileged communications.

28

**Genzyme's Response to MediciNova's Contentions Regarding Request for Production No. 2**

Genzyme has provided, among other things, the entire IND for the product at issue in this litigation.  The IND is sufficient to identify the drug product that is the subject of the request and is fully responsive to the non-objectionable portions of these document requests.  Indeed, the IND contains far more detail than MediciNova needs to identify the characteristics of AAV2-sFLT01 that are relevant to the claims of the '237 patent.  MediciNova's position that more documentation and information are needed to "test" whether the statements in the IND are accurate is meritless.  The IND is an official submittal made to the U.S. government requesting authorization to conduct clinical trials of a drug product.  It is the best evidence to establish the drug product's characteristics.  MediciNova's suggestion that Genzyme may have made incorrect statements in its IND has no basis in fact and is the type of speculation that courts prohibit.  *Robinson*, 2013 WL 6858956, at *6; *Justiano*, 291 F.R.D. at 83; *Claude P. Bamberger Int'l*, 1998 WL 684263, at *2; *Rivera*, 364 F.3d at 1072; *Watkins*, 2014 WL 11191092, at *4; *Flores*, 2012 WL 6725842, at *2; *Carter*, 2011 WL 3047672, at *2.  Genzyme further incorporates its argument set forth above with regard to Request for Production No. 1.

Genzyme's document production is complete, and no supplementation is needed.

**3.     Request for Production of Documents No. 3**

**MediciNova's Request for Production No. 3**

All clinical trial protocols RELATING TO the DRUG PRODUCT.

-122-

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

**Genzyme's Response to MediciNova's Request for Production No. 3**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to this Request to the extent that it seeks the disclosure of documents or other information protected from disclosure by the attorney-client privilege, work product doctrine and/or any other applicable privilege or doctrine.  Defendant objects to the phrase "protocols RELATING TO the DRUG PRODUCT" on the grounds that it is vague, does not describe with particularity the information sought, and purports to impose a requirement on Defendant to conduct more than a reasonable search of information in Defendant's possession, custody, or control.  Defendant will interpret the phrase to mean "protocols for the DRUG PRODUCT."  Defendant further objects to the request because it purports to seek "All" documents described in the Request on the grounds that a request for "All" documents described in the Request seeks information or documents that are not relevant to any party's claim or defense or not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Instead, and subject to its General and Specific Objections, Defendant states that it will produce documents sufficient to identify the Drug Product that is the subject of the Request, and documents sufficient to describe the design, preparation, and purification of the Drug Product that is the subject of the Request.

**MediciNova's Contentions Regarding Request for Production No. 3**

MediciNova has the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).  Genzyme objects in response to almost every one of MediciNova's document requests that a request seeking all documents on a given topic necessarily fails this test.  The objection is meritless.   MediciNova must have all the pertinent documents so it has a complete picture of the facts— otherwise, Genzyme could selectively produce only certain materials in an effort to slant the evidence in its favor.  This danger is particularly acute in a case like this one, wherein Genzyme has both nearly exclusive control over the evidence pertinent to the issues under dispute and much greater resources than MediciNova.

The other pertinent factors also weigh in favor of compelling Genzyme to produce the documents MediciNova seeks.  The clinical trial protocols governing the drug product bear directly on how the product was developed and tested.  Those matters, in turn, are directly relevant to whether AAV-sFLT is covered by one or more patents under the parties' Assignment Agreement.  The amount in controversy is sizeable—MediciNova seeks damages in the millions of dollars, which surely justifies significant discovery to ensure that the case is resolved correctly.

MediciNova further seeks clarification of Genzyme's interpretation of "protocols RELATING TO the DRUG PRODUCT" as "protocols for the DRUG PRODUCT."  If Genzyme is using this interpretation as a basis for withholding any documents or things in response to Request for Production No. 3, MediciNova hereby requests notification of this fact and the immediate production of any such documents or things.  However, if Genzyme's production in response to this

-124-

1   Request would be unchanged by virtue of its interpretation, MediciNova requests a

2   response to the RFP as stated.

3

4          During the meet and confer process, Genzyme essentially took the position

5   that MediciNova needs nothing other than Genzyme's "Investigational New Drug

6   Application" to determine whether Genzyme owes MediciNova a milestone

7   payment under the terms of the Assignment Agreement between the parties, because

8   that document should show on its face whether AAV-sFLT is covered by one or

9   more patents under the parties' Assignment Agreement and it is impossible that

10  anything stated therein could prove to be inaccurate when compared with other

11  underlying and related materials.  MediciNova respectfully disagrees; it believes it

12  has the right to discovery of the source documents on which the IND application is

13  based and other related documents and things, including those additional documents

14  and things sought via this document request, to confirm for itself whether the IND

15  Application is complete and accurate.

16

17         Genzyme's response arbitrarily limits its production to "documents sufficient

18  to describe the design, preparation, and purification of the Drug Product that is the

19  subject of the Request."  Genzyme should be compelled to respond to the request as

20  written.

21

22         MediciNova does not seek any privileged communications.

23

24  **Genzyme's Response to MediciNova's Contentions Regarding Request for**

25  **Production No. 3**

26         Genzyme has provided, among other things, the entire IND for the product at

27  issue in this litigation.  The IND is sufficient to identify the drug product that is the

28

1 subject of the request and is fully responsive to the non-objectionable portions of

2 these document requests.  Indeed, the IND contains far more detail than MediciNova

3 needs to identify the characteristics of AAV2-sFLT01 that are relevant to the claims

4 of the '237 patent.  MediciNova's position that more documentation and information

5 are needed to "test" whether the statements in the IND are accurate is meritless.  The

6 IND is an official submittal made to the U.S. government requesting authorization to

7 conduct clinical trials of a drug product.  It is the best evidence to establish the drug

8 product's characteristics.  MediciNova's suggestion that Genzyme may have made

9 incorrect statements in its IND has no basis in fact and is the type of speculation that

10 courts prohibit.  *Robinson*, 2013 WL 6858956, at *6; *Justiano*, 291 F.R.D. at 83;

11 *Claude P. Bamberger Int'l*, 1998 WL 684263, at *2; *Rivera*, 364 F.3d at 1072;

12 *Watkins*, 2014 WL 11191092, at *4; *Flores*, 2012 WL 6725842, at *2; *Carter*, 2011

13 WL 3047672, at *2.  Genzyme further incorporates its argument set forth above

14 with regard to Request for Production No. 1.

15

16    For the first time, MediciNova "further seeks clarification of Genzyme's

17 interpretation of 'protocols RELATING TO the DRUG PRODUCT'" and "hereby

18 requests notification of this fact and the immediate production of any such

19 documents or things."  The parties never met and conferred regarding this issue, and

20 it is therefore improperly presented and should be rejected.

21

22    Genzyme's document production is complete, and no supplementation is

23 needed.

24

25

26

27

28

-126-

### 4. Request for Production of Documents No. 4

**MediciNova's Request for Production No. 4**

All supporting documentation for all clinical trial protocols RELATING TO the DRUG PRODUCT.

**Genzyme's Response to MediciNova's Request for Production No. 4**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the phrases "all supporting documentation" and "protocols RELATING TO the DRUG PRODUCT" on the grounds that they are vague, overly broad, unduly burdensome, do not describe with particularity the information sought, purport to impose a requirement on Defendant to conduct more than a reasonable search of information in Defendant's possession, custody, or control, and seek information that is not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Defendant further objects to the request because it purports to seek "All" documents described in the Request on the grounds that a request for "All" documents described in the Request seeks information or documents that are not relevant to any party's claim or defense or not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Instead, and subject to its General and Specific Objections, Defendant states that it will produce documents sufficient to identify the Drug

-127-

1   Product that is the subject of the Request, and documents sufficient to describe the

2   design, preparation, and purification of the Drug Product that is the subject of the

3   Request.

4

5   **MediciNova's Contentions Regarding Request for Production No. 4**

6        MediciNova has the right to "obtain discovery regarding any nonprivileged

7   matter that is relevant to any party's claim or defense and proportional to the needs

8   of the case, considering the importance of the issues at stake in the action, the

9   amount in controversy, the parties' relative access to relevant information, the

10  parties' resources, the importance of the discovery in resolving the issues, and

11  whether the burden or expense of the proposed discovery outweighs its likely

12  benefit." Fed. R. Civ. Proc. 26(b)(1).  Genzyme objects in response to almost every

13  one of MediciNova's document requests that a request seeking all documents on a

14  given topic necessarily fails this test.  The objection is meritless.   MediciNova must

15  have all the pertinent documents so it has a complete picture of the facts—

16  otherwise, Genzyme could selectively produce only certain materials in an effort to

17  slant the evidence in its favor.  This danger is particularly acute in a case like this

18  one, wherein Genzyme has both nearly exclusive control over the evidence pertinent

19  to the issues under dispute and much greater resources than MediciNova.

20

21       The other pertinent factors also weigh in favor of compelling Genzyme to

22  produce the documents MediciNova seeks.  The clinical trial protocols governing

23  the drug product bear directly on how the product was developed and tested.  Those

24  matters, in turn, are directly relevant to whether Genzyme whether AAV-sFLT is

25  covered by one or more patents under the parties' Assignment Agreement.  The

26  amount in controversy is sizeable—MediciNova seeks damages in the millions of

27

28

1 dollars, which surely justifies significant discovery to ensure that the case is
2 resolved correctly.

3

4 Genzyme's objections regarding the phrases it selected are similarly meritless
5 because those phrases are clear, unambiguous, and well within the scope of pertinent
6 discovery for the reasons stated herein.

7

8 During the meet and confer process, Genzyme essentially took the position
9 that MediciNova needs nothing other than Genzyme's "Investigational New Drug
10 Application" to determine whether Genzyme owes MediciNova a milestone
11 payment under the terms of the Assignment Agreement between the parties, because
12 that document should show on its face whether AAV-sFLT is covered by one or
13 more patents under the parties' Assignment Agreement and it is impossible that
14 anything stated therein could prove to be inaccurate when compared with other
15 underlying and related materials.  MediciNova respectfully disagrees; it believes it
16 has the right to discovery of the source documents on which the IND application is
17 based and other related documents and things, including those additional documents
18 and things sought via this document request, to confirm for itself whether the IND
19 Application is complete and accurate.

20

21 Genzyme's response arbitrarily limits its production to "documents sufficient
22 to describe the design, preparation, and purification of the Drug Product that is the
23 subject of the Request."  Genzyme should be compelled to respond to the request as
24 written.

25

26

27

28

-129-

**Genzyme's Response to MediciNova's Contentions Regarding Request for Production No. 4**

Genzyme has provided, among other things, the entire IND for the product at issue in this litigation.  The IND is sufficient to identify the drug product that is the subject of the request and is fully responsive to the non-objectionable portions of these document requests.  Indeed, the IND contains far more detail than MediciNova needs to identify the characteristics of AAV2-sFLT01 that are relevant to the claims of the '237 patent.  MediciNova's position that more documentation and information are needed to "test" whether the statements in the IND are accurate is meritless.  The IND is an official submittal made to the U.S. government requesting authorization to conduct clinical trials of a drug product.  It is the best evidence to establish the drug product's characteristics.  MediciNova's suggestion that Genzyme may have made incorrect statements in its IND has no basis in fact and is the type of speculation that courts prohibit.  *Robinson*, 2013 WL 6858956, at *6; *Justiano*, 291 F.R.D. at 83; *Claude P. Bamberger Int'l*, 1998 WL 684263, at *2; *Rivera*, 364 F.3d at 1072; *Watkins*, 2014 WL 11191092, at *4; *Flores*, 2012 WL 6725842, at *2; *Carter*, 2011 WL 3047672, at *2.  Genzyme further incorporates its argument set forth above with regard to Request for Production No. 1.

Genzyme's document production is complete, and no supplementation is needed.

**5.      Request for Production of Documents No. 5**

**MediciNova's Request for Production No. 5**

All IND Annual Reports relating to the DRUG PRODUCT.

-130-

1   **Genzyme's Response to MediciNova's Request for Production No. 5**

2          In addition to its General Objections and Objections to Plaintiff's Definitions

3   and Instructions, Defendant objects to the phrase "Annual Reports" on the grounds

4   that it is vague and does not describe with reasonable particularity the information

5   sought.  Defendant will interpret the phrase to mean "annual Reports submitted to

6   the FDA."

7

8          Subject to and without waiving its objections, Defendant will produce

9   relevant, non-privileged documents responsive to the non-objectionable portions of

10  this Request that are in its possession, to the extent such documents exist and can be

11  readily identified after a reasonable search.

12

13  **MediciNova's Contentions Regarding Request for Production No. 5**

14          Genzyme's response that it will produce documents "responsive to the non-

15  objectionable portions of this Request that are in its possession, to the extent such

16  documents exist and can be readily identified after a reasonable search" is improper.

17  First, Genzyme must produce not only documents in its possession but also those in

18  its custody and/or control.  Fed. R. Civ. P. 34(a)(1).  Second, Genzyme "must state

19  whether any responsive materials are being withheld" based on its objections.  Fed.

20  R. Civ. P. 34(b)(2)(C).  Third, rather than simply saying it will make a reasonable

21  search, Genzyme must identify the sources containing potentially responsive

22  information that it is neither searching nor producing with enough detail to permit

23  MediciNova to evaluate both the burdens and costs of providing the discovery and

24  the likelihood that those sources include responsive information.  *See* Adv. Comm.

25  Note to 2006 Amendment to Fed. R. Civ. P. 26(b)(2).  And fourth, Genzyme cannot

26  say it will produce responsive materials "to the extent such documents exist."

27  Instead, it must state affirmatively whether it will produce responsive materials and,

28

-131-

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

1  if not, the reason why (e.g. the documents never existed or were destroyed).

2  Genzyme's vague answer gives no information as to whether any responsive

3  materials exist and thus gives MediciNova no way to evaluate the sufficiency of

4  Genzyme's document production in response to this request.

5

6  MediciNova specifically requests the production of the 2014 IND Annual

7  Report, which is absent from Genzyme's production, as well the production of any

8  Annual Reports that have issued since 2015 (or, alternatively, confirmation that

9  Genzyme's production will be promptly supplemented at such a time that

10  subsequent annual reports become available).

11

12  **Genzyme's Response to MediciNova's Contentions Regarding Request for**

13  **Production No. 5**

14  Genzyme has provided, among other things, the entire IND for the product at

15  issue in this litigation. The IND is sufficient to identify the drug product that is the

16  subject of the request and is fully responsive to the non-objectionable portions of

17  these document requests. Indeed, the IND contains far more detail than MediciNova

18  needs to identify the characteristics of AAV2-sFLT01 that are relevant to the claims

19  of the '237 patent. MediciNova's position that more documentation and information

20  are needed to "test" whether the statements in the IND are accurate is meritless. The

21  IND is an official submittal made to the U.S. government requesting authorization to

22  conduct clinical trials of a drug product. It is the best evidence to establish the drug

23  product's characteristics. MediciNova's suggestion that Genzyme may have made

24  incorrect statements in its IND has no basis in fact and is the type of speculation that

25  courts prohibit. *Robinson*, 2013 WL 6858956, at *6; *Justiano*, 291 F.R.D. at 83;

26  *Claude P. Bamberger Int'l*, 1998 WL 684263, at *2; *Rivera*, 364 F.3d at 1072;

27  *Watkins*, 2014 WL 11191092, at *4; *Flores*, 2012 WL 6725842, at *2; *Carter*, 2011

28

-132-

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

WL 3047672, at *2.  Genzyme further incorporates its argument set forth above with regard to Request for Production No. 1.

For the first time, MediciNova "specifically requests the production of the 2014 IND Annual Report, which is absent from Genzyme's production, as well the production of any Annual Reports that have issued since 2015 (or, alternatively, confirmation that Genzyme's production will be promptly supplemented at such a time that subsequent annual reports become available)."  The parties never met and conferred regarding this issue, and it is therefore improperly presented and should be rejected.

Genzyme's document production is complete, and no supplementation is needed.

### 6.    Request for Production of Documents No. 6

**MediciNova's Request for Production No. 6**

All DOCUMENTS and THINGS RELATING TO the manufacturing of the Drug Product, including but not limited to, manufacturing protocols, manufacturing reports, contract manufacturing agreements, and contract manufacturing reports.

**Genzyme's Response to MediciNova's Request for Production No. 6**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the phrase "RELATING TO the manufacturing of the Drug Product" on the grounds that it is overly broad, unduly burdensome, purports to impose a requirement on Defendant to conduct more than a reasonable search of information in Defendant's possession, custody, or control, and seeks information that is not relevant to any party's claim or defense and is not

-133-

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Defendant further objects to the request because it purports to seek "All" documents described in the Request on the grounds that a request for "All" documents described in the Request seeks information or documents that are not relevant to any party's claim or defense or not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Instead, and subject to its General and Specific Objections, Defendant states that it will produce documents sufficient to describe how the Drug Product that is the subject of the Request was manufactured.

### MediciNova's Contentions Regarding Request for Production No. 6

MediciNova has the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).  Genzyme objects in response to almost every one of MediciNova's document requests that a request seeking all documents on a given topic necessarily fails this test.  The objection is meritless.   MediciNova must have all the pertinent documents so it has a complete picture of the facts—

otherwise, Genzyme could selectively produce only certain materials in an effort to slant the evidence in its favor.  This danger is particularly acute in a case like this one, wherein Genzyme has both nearly exclusive control over the evidence pertinent to the issues under dispute and much greater resources than MediciNova.

The other pertinent factors also weigh in favor of compelling Genzyme to produce the documents MediciNova seeks.  One of MediciNova's contentions is that the process for manufacturing the drug product may have been covered by one or more patents under the parties' Assignment Agreement.  It seeks discovery of materials relating to the manufacturing process because those materials are necessary to test that theory.  The amount in controversy is sizeable—MediciNova seeks damages in the millions of dollars, which surely justifies significant discovery to ensure that the case is resolved correctly.

Genzyme's objections regarding the phrase it selected are similarly meritless because that phrase is clear, unambiguous, and well within the scope of pertinent discovery for the reasons stated herein.

During the meet and confer process, Genzyme essentially took the position that MediciNova needs nothing other than Genzyme's "Investigational New Drug Application" to determine whether Genzyme owes MediciNova a milestone payment under the terms of the Assignment Agreement between the parties, because that document should show on its face whether AAV-sFLT is covered by one or more patents under the parties' Assignment Agreement and it is impossible that anything stated therein could prove to be inaccurate when compared with other underlying and related materials.  MediciNova respectfully disagrees; it believes it has the right to discovery of the source documents on which the IND application is

1   based and other related documents and things, including those additional documents

2   and things sought via this document request, to confirm for itself whether the IND

3   Application is complete and accurate.

4

5       Genzyme's response arbitrarily limits its production to "documents sufficient

6   to describe how the Drug Product that is the subject of the Request was

7   manufactured."  Genzyme should be compelled to respond to the request as written.

8

9   **Genzyme's Response to MediciNova's Contentions Regarding Request for**

10  **Production No. 6**

11      Genzyme has provided, among other things, the entire IND for the product at

12  issue in this litigation.  The IND is sufficient to identify the drug product that is the

13  subject of the request and is fully responsive to the non-objectionable portions of

14  these document requests.  Indeed, the IND contains far more detail than MediciNova

15  needs to identify the characteristics of AAV2-sFLT01 that are relevant to the claims

16  of the '237 patent.  MediciNova's position that more documentation and information

17  are needed to "test" whether the statements in the IND are accurate is meritless.  The

18  IND is an official submittal made to the U.S. government requesting authorization to

19  conduct clinical trials of a drug product.  It is the best evidence to establish the drug

20  product's characteristics.  MediciNova's suggestion that Genzyme may have made

21  incorrect statements in its IND has no basis in fact and is the type of speculation that

22  courts prohibit.  *Robinson*, 2013 WL 6858956, at *6; *Justiano*, 291 F.R.D. at 83;

23  *Claude P. Bamberger Int'l*, 1998 WL 684263, at *2; *Rivera*, 364 F.3d at 1072;

24  *Watkins*, 2014 WL 11191092, at *4; *Flores*, 2012 WL 6725842, at *2; *Carter*, 2011

25  WL 3047672, at *2.  Genzyme further incorporates its argument set forth above

26  with regard to Request for Production No. 1.

27

28

1   Moreover, Genzyme already identified documents responsive to this request
2   by Bates number on April 14, 2017.  Specifically, as a Second Supplemental
3   Response to MediciNova's Interrogatory No. 11 (requesting the identification of
4   "the procedure, including but not limited to materials and methods, for
5   manufacturing the DRUG PRODUCT"), Genzyme identified GENZYME0002907 -
6   GENZYME0002911 and GENZYME0002875 - GENZYME0002881.

7

8   Genzyme's document production is complete, and no supplementation is
9   needed.

10
    ### 7.   Request for Production of Documents No. 7
11

12  **MediciNova's Request for Production No. 7**

13   All agreements and amendments and supplements thereto between YOU and
14  Applied Genetic Technologies Corporation (AGTC) relating to the DRUG
15  PRODUCT, including but not limited to, clinical trial agreements, collaboration
16  agreements, and licensing agreements.

17

18  **Genzyme's Response to MediciNova's Request for Production No. 7**

19   In addition to its General Objections and Objections to Plaintiff's Definitions
20  and Instructions, Defendant objects to the phrase "agreements and amendments and
21  supplements thereto . . . RELATING TO the DRUG PRODUCT" on the grounds
22  that it is vague, does not describe with reasonable particularity the information
23  sought, and purports to impose a requirement on Defendant to conduct more than a
24  reasonable search of information in Defendant's possession, custody, or control.
25  Defendant will interpret the phrase to mean "agreements and amendments and
26  supplements thereto . . . governing the DRUG PRODUCT."

27

28

-137-

1     Subject to and without waiving its objections, Defendant will produce

2 relevant, non-privileged documents that are in its possession, to the extent such

3 documents exist and can be readily identified after a reasonable search.

4

5 **MediciNova's Contentions Regarding Request for Production No. 7**

6     MediciNova disagrees with Genzyme's interpretation of "agreements and

7 amendments and supplements thereto…relating to the DRUG PRODUCT" as

8 "agreements and amendments and supplements thereto…governing the DRUG

9 PRODUCT."  Genzyme's narrow interpretation of the clear language in this Request

10 is unnecessarily vague and, ultimately, untenable. MediciNova understands

11 Genzyme's interpretation as limiting Genzyme's response to the production of

12 documents that specifically rule or dictate the manufacture and use of its drug

13 product.  The Request, however, specifically asks more broadly for agreements and

14 amendments and supplements thereto "relating" to the drug product, which

15 conceivably includes documents outside of ones that specifically rule or dictate its

16 manufacture and use.  Accordingly, MediciNova's position is that Genzyme has

17 improperly, and without any substantive basis for doing so, limited its response to

18 this RFP.

19

20     Further, if Genzyme is using this interpretation as a basis for withholding any

21 documents or things in response to Request for Production No. 7, MediciNova

22 hereby requests notification of this fact and the immediate production of any such

23 documents or things.  However, if Genzyme's production in response to this

24 Request would be unchanged by virtue of its interpretation, MediciNova requests a

25 response to the RFP as stated.

26

27

28

1    Genzyme's response that it will produce documents "responsive to the non-

2    objectionable portions of this Request that are in its possession, to the extent such

3    documents exist and can be readily identified after a reasonable search" is improper.

4    First, Genzyme must produce not only documents in its possession but also those in

5    its custody and/or control.  Fed. R. Civ. P. 34(a)(1).  Second, Genzyme "must state

6    whether any responsive materials are being withheld" based on its objections.  Fed.

7    R. Civ. P. 34(b)(2)(C).  Third, rather than simply saying it will make a reasonable

8    search, Genzyme must identify the sources containing potentially responsive

9    information that it is neither searching nor producing with enough detail to permit

10   MediciNova to evaluate both the burdens and costs of providing the discovery and

11   the likelihood that those sources include responsive information.  *See* Adv. Comm.

12   Note to 2006 Amendment to Fed. R. Civ. P. 26(b)(2).  And fourth, Genzyme cannot

13   say it will produce responsive materials "to the extent such documents exist."

14   Instead, it must state affirmatively whether it will produce responsive materials and,

15   if not, the reason why (e.g. the documents never existed or were destroyed).

16   Genzyme's vague answer gives no information as to whether any responsive

17   materials exist and thus gives MediciNova no way to evaluate the sufficiency of

18   Genzyme's document production in response to this request.

19

20   Finally, and most importantly, as best MediciNova can tell, Genzyme has thus

21   far produced no documents at all that are responsive to this request.  Thus, either no

22   responsive documents exist—in which case Genzyme's response should so state—

23   or Genzyme is improperly withholding responsive documents.

24

25

26

27

28

-139-

**Genzyme's Response to MediciNova's Contentions Regarding Request for Production No. 7**

During the parties' meet and confer, MediciNova was unable to articulate a single reason why license agreements between AGTC and Genzyme were in any way relevant to the sole issue in this case, nor does MediciNova do so now.  Indeed, MediciNova's use of the term "conceivably" demonstrates the speculative nature of MediciNova's request.  Such speculation is not allowed.  *Robinson*, 2013 WL 6858956, at *6; *Justiano*, 291 F.R.D. at 83; *Claude P. Bamberger Int'l*, 1998 WL 684263, at *2; *Rivera*, 364 F.3d at 1072; *Watkins*, 2014 WL 11191092, at *4; *Flores*, 2012 WL 6725842, at *2; *Carter*, 2011 WL 3047672, at *2.

For the first time, MediciNova "further seeks clarification of Genzyme's interpretation of 'protocols RELATING TO the DRUG PRODUCT'" and "hereby requests notification of this fact [of a particular word interpretation] and the immediate production of any such documents or things."  The parties never met and conferred regarding this issue, and it is therefore improperly presented and should be rejected.

## 8.     Request for Production of Documents No. 8

**MediciNova's Request for Production No. 8**

All agreements and amendments and supplements thereto between YOU and Applied Genetic Technologies Corporation (AGTC) concerning the manufacturing or clinical or commercial development of any therapeutic product other than the DRUG PRODUCT, that uses an adeno-associated virus vector or is developed for treating macular degeneration, including but not limited to clinical trial agreements, collaboration agreements, and licensing agreements.

-140-

1  **Genzyme's Response to MediciNova's Request for Production No. 8**

2        In addition to its General Objections and Objections to Plaintiff's Definitions

3  and Instructions, Defendant objects to the phrase "agreements and amendments and

4  supplements thereto . . . concerning the manufacturing or clinical or commercial

5  development" on the grounds that it is vague, overly broad, unduly burdensome,

6  does not describe with reasonable particularity the information sought, purports to

7  impose a requirement on Defendant to conduct more than a reasonable search of

8  information in Defendant's possession, custody, or control, and seeks information

9  that is not relevant to any party's claim or defense and is not proportional to the

10  needs of the case, considering the importance of the issues at stake in the action, the

11  amount in controversy, the parties' relative access to relevant information, the

12  parties' resources, the importance of the discovery in resolving the issues, and

13  whether the burden or expense of the proposed discovery outweighs its likely

14  benefit.  Defendant objects to the phrase "any therapeutic product other than the

15  DRUG PRODUCT, that uses an adeno-associated virus vector or is developed for

16  treating macular degeneration" on the grounds that it is vague, overly broad, unduly

17  burdensome, does not describe with reasonable particularity the information sought,

18  purports to impose a requirement on Defendant to conduct more than a reasonable

19  search of information in Defendant's possession, custody, or control, and seeks

20  information that is not relevant to any party's claim or defense and is not

21  proportional to the needs of the case, considering the importance of the issues at

22  stake in the action, the amount in controversy, the parties' relative access to relevant

23  information, the parties' resources, the importance of the discovery in resolving the

24  issues, and whether the burden or expense of the proposed discovery outweighs its

25  likely benefit.

26

27

28

                                      

1    Due to the extreme over breadth, burdensomeness, and inclusion of a vast

2    amount of irrelevant materials in this Request, and the fact that other Requests will

3    be responded to by Defendant, Defendant will not make a separate search or

4    production responsive to this Request.  Defendant will consider responding to

5    narrower, more focused demands if submitted and not duplicative of other demands

6    to which Defendant has agreed to respond.

7

8    **MediciNova's Contentions Regarding Request for Production No. 8**

9    MediciNova has the right to "obtain discovery regarding any nonprivileged

10   matter that is relevant to any party's claim or defense and proportional to the needs

11   of the case, considering the importance of the issues at stake in the action, the

12   amount in controversy, the parties' relative access to relevant information, the

13   parties' resources, the importance of the discovery in resolving the issues, and

14   whether the burden or expense of the proposed discovery outweighs its likely

15   benefit."  Fed. R. Civ. Proc. 26(b)(1).

16

17   In this case, discovery concerning agreements between Genzyme and AGTC

18   concerning products other than the drug product at issue using the AAV vector is

19   relevant to the parties' claims and defenses because under the Assignment

20   Agreement, certain milestone payments to MediciNova are required based on the

21   development of products using specific AAV vector technology.  Accordingly, *any*

22   Genzyme drug product that uses this technology would also be relevant to the

23   present case.   Genzyme has nearly exclusive control over the evidence pertinent to

24   the parties' claims and defenses because it is the party developing drugs that may

25   trigger its obligation to make a payment under the Assignment Agreement.  The

26   amount in controversy is sizeable—MediciNova seeks damages in the millions of

27   dollars, which surely justifies significant discovery to ensure that the case is

28

-142-

resolved correctly.  Genzyme also has much greater resources than MediciNova.  In sum, this discovery may be crucial to resolving the dispute between the parties.

Genzyme's objections regarding the phrase it selected are similarly meritless because that phrase is clear, unambiguous, and well within the scope of pertinent discovery for the reasons stated herein.

During the meet and confer process, Genzyme essentially took the position that MediciNova needs nothing other than Genzyme's "Investigational New Drug Application" to determine whether Genzyme owes MediciNova a milestone payment under the terms of the Assignment Agreement between the parties, because that document should show on its face whether AAV-sFLT is covered by one or more patents under the parties' Assignment Agreement and it is impossible that anything stated therein could prove to be inaccurate when compared with other underlying and related materials.  MediciNova respectfully disagrees; it believes it has the right to discovery of the source documents on which the IND application is based and other related documents and things, including those additional documents and things sought via this document request, to confirm for itself whether the IND Application is complete and accurate.

Genzyme's blanket refusal to produce any responsive documents based on its objections is improper.  Instead, Genzyme "must state whether any responsive materials are being withheld" based on its objections.  Fed. R. Civ. P. 34(b)(2)(C). It must also identify the sources containing potentially responsive information that it is neither searching nor producing with enough detail to permit MediciNova to evaluate both the burdens and costs of providing the discovery and the likelihood that those sources include responsive information.  *See* Adv. Comm. Note to 2006

-143-

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

1  Amendment to Fed. R. Civ. P. 26(b)(2).  Genzyme's vague answer gives no

2  information as to whether any responsive materials exist and thus gives MediciNova

3  no way to evaluate the sufficiency of Genzyme's document production in response

4  to this request.

5

6      Genzyme should be compelled to respond to the request as written.

7

8  **Genzyme's Response to MediciNova's Contentions Regarding Request for**

9  **Production No. 8**

10      MediciNova's document request *explicitly* seeks information regarding

11  products that are not at issue in this litigation and is therefore in violation of Fed. R.

12  Civ. Proc. 26(b)(1) *per se*.  Fishing expeditions are not permitted.  *Robinson*, 2013

13  WL 6858956, at *6; *Justiano*, 291 F.R.D. at 83; *Claude P. Bamberger Int'l*, 1998

14  WL 684263, at *2; *Rivera*, 364 F.3d at 1072; *Watkins*, 2014 WL 11191092, at *4;

15  *Flores*, 2012 WL 6725842, at *2; *Carter*, 2011 WL 3047672, at *2.

16

17      **9.      Request for Production of Documents No. 9**

18  **MediciNova's Request for Production No. 9**

19      All agreements and amendments and supplements thereto between YOU and

20  any investigators, universities, companies, hospitals, medical centers, National

21  Institutes of Health or other government entities, research institutes, or other

22  institutions concerning the clinical or commercial development of any therapeutic

23  product that uses an adeno-associated virus vector, including but not limited to

24  clinical trial agreements, collaboration agreements and licensing agreements.

25

26

27

28

1    **Genzyme's Response to MediciNova's Request for Production No. 9**

2         In addition to its General Objections and Objections to Plaintiff's Definitions

3    and Instructions, Defendant objects to the phrase "agreements and amendments and

4    supplements thereto . . . concerning the clinical or commercial development" on the

5    grounds that it is vague, overly broad, unduly burdensome, does not describe with

6    reasonable particularity the information sought, purports to impose a requirement on

7    Defendant to conduct more than a reasonable search of information in Defendant's

8    possession, custody, or control, and seeks information that is not relevant to any

9    party's claim or defense and is not proportional to the needs of the case, considering

10   the importance of the issues at stake in the action, the amount in controversy, the

11   parties' relative access to relevant information, the parties' resources, the

12   importance of the discovery in resolving the issues, and whether the burden or

13   expense of the proposed discovery outweighs its likely benefit.  Defendant objects

14   to the phrase "any therapeutic product that uses an adeno-associated virus vector" on

15   the grounds that it is vague, overly broad, unduly burdensome, does not describe

16   with reasonable particularity the information sought, purports to impose a

17   requirement on Defendant to conduct more than a reasonable search of information

18   in Defendant's possession, custody, or control, and seeks information that is not

19   relevant to any party's claim or defense and is not proportional to the needs of the

20   case, considering the importance of the issues at stake in the action, the amount in

21   controversy, the parties' relative access to relevant information, the parties'

22   resources, the importance of the discovery in resolving the issues, and whether the

23   burden or expense of the proposed discovery outweighs its likely benefit.

24

25        Due to the extreme over breadth, burdensomeness, and inclusion of a vast

26   amount of irrelevant materials in this Request, and the fact that other Requests will

27   be responded to by Defendant, Defendant will not make a separate search or

28

1  production responsive to this Request.  Defendant will consider responding to

2  narrower, more focused demands if submitted and not duplicative of other demands

3  to which Defendant has agreed to respond.

4

5  **MediciNova's Contentions Regarding Request for Production No. 9**

6       MediciNova has the right to "obtain discovery regarding any nonprivileged

7  matter that is relevant to any party's claim or defense and proportional to the needs

8  of the case, considering the importance of the issues at stake in the action, the

9  amount in controversy, the parties' relative access to relevant information, the

10 parties' resources, the importance of the discovery in resolving the issues, and

11 whether the burden or expense of the proposed discovery outweighs its likely

12 benefit."  Fed. R. Civ. Proc. 26(b)(1).  In this case, discovery concerning agreements

13 between Genzyme and the identified entities concerning products using the AAV

14 vector are relevant to the parties' claims and defenses because under the Assignment

15 Agreement, certain milestone payments to MediciNova are required based on the

16 development of products using AAV vector technology.  Accordingly, information

17 pertaining to the clinical or commercial development for any Genzyme drug product

18 that uses this technology would also be relevant to the present case.  Genzyme has

19 nearly exclusive control over the evidence pertinent to the parties' claims and

20 defenses because it is the party developing drugs that may trigger its obligation to

21 make a payment under the Assignment Agreement.  The amount in controversy is

22 sizeable—MediciNova seeks damages in the millions of dollars, which surely

23 justifies significant discovery to ensure that the case is resolved correctly.  Genzyme

24 also has much greater resources than MediciNova.  In sum, this discovery may be

25 crucial to resolving the dispute between the parties.

26

27

28

1   Genzyme's objections regarding the phrase it selected are similarly meritless

2   because that phrase is clear, unambiguous, and well within the scope of pertinent

3   discovery for the reasons stated herein.

4

5   During the meet and confer process, Genzyme essentially took the position

6   that MediciNova needs nothing other than Genzyme's "Investigational New Drug

7   Application" to determine whether Genzyme owes MediciNova a milestone

8   payment under the terms of the Assignment Agreement between the parties, because

9   that document should show on its face whether AAV-sFLT is covered by one or

10  more patents under the parties' Assignment Agreement and it is impossible that

11  anything stated therein could prove to be inaccurate when compared with other

12  underlying and related materials.  MediciNova respectfully disagrees; it believes it

13  has the right to discovery of the source documents on which the IND application is

14  based and other related documents and things, including those additional documents

15  and things sought via this document request, to confirm for itself whether the IND

16  Application is complete and accurate.

17

18  Genzyme's blanket refusal to produce any responsive documents based on its

19  objections is improper.  Instead, Genzyme "must state whether any responsive

20  materials are being withheld" based on its objections.  Fed. R. Civ. P. 34(b)(2)(C).

21  It must also identify the sources containing potentially responsive information that it

22  is neither searching nor producing with enough detail to permit MediciNova to

23  evaluate both the burdens and costs of providing the discovery and the likelihood

24  that those sources include responsive information.  *See* Adv. Comm. Note to 2006

25  Amendment to Fed. R. Civ. P. 26(b)(2).  Genzyme's vague answer gives no

26  information as to whether any responsive materials exist and thus gives MediciNova

27

28

1  no way to evaluate the sufficiency of Genzyme's document production in response

2  to this request.

3

4        Genzyme should be compelled to respond to the request as written.

5

6  **Genzyme's Response to MediciNova's Contentions Regarding Request for**

7  **Production No. 9**

8        MediciNova's document request *explicitly* seeks information regarding

9  products that are not at issue in this litigation and is therefore in violation of Fed. R.

10  Civ. Proc. 26(b)(1) *per se*.  Fishing expeditions are not permitted.  *Robinson*, 2013

11  WL 6858956, at *6; *Justiano*, 291 F.R.D. at 83; *Claude P. Bamberger Int'l*, 1998

12  WL 684263, at *2; *Rivera*, 364 F.3d at 1072; *Watkins*, 2014 WL 11191092, at *4;

13  *Flores*, 2012 WL 6725842, at *2; *Carter*, 2011 WL 3047672, at *2.  This document

14  request is drafted in such a way that it encompasses far more that what is at issue in

15  this case.  The request is not tethered in any way to the patent at issue (the '237

16  patent) or the gene product at issue (AAV2-sFLT01), both of which dictate the

17  scope of relevance in this case.  Instead, the request pertains to any "adeno-

18  associated virus vector," which not only exceeds the scope of the issues in this case

19  as framed by the Amended Complaint, but would constitute a wholesale invasion

20  into Genzyme's proprietary research activities unrelated to this case.  Moreover, the

21  agreements and other documents sought by this request are not relevant to the

22  determination of the patent coverage issue in this case.  Genzyme's objections

23  should be sustained.

24

25

26

27

28

SMRH:482717025.3

10.    **Request for Production of Documents No. 10**

**MediciNova's Request for Production No. 10**

All laboratory notes concerning the design, preparation, purification and/or testing of the DRUG PRODUCT.

**Genzyme's Response to MediciNova's Request for Production No. 10**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the request because it purports to seek "All" documents described in the Request on the grounds that a request for "All" documents described in the Request seeks information or documents that are not relevant to any party's claim or defense or not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Instead, and subject to its General and Specific Objections, Defendant states that it will produce documents sufficient to describe the design, preparation, and purification of the Drug Product that is the subject of the Request.

**MediciNova's Contentions Regarding Request for Production No. 10**

MediciNova has the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1). Genzyme objects in response to almost every

-149-

1   one of MediciNova's document requests that a request seeking all documents on a

2   given topic necessarily fails this test.  The objection is meritless.   MediciNova must

3   have all the pertinent documents so it has a complete picture of the facts—

4   otherwise, Genzyme could selectively produce only certain materials in an effort to

5   slant the evidence in its favor.  This danger is particularly acute in a case like this

6   one, wherein Genzyme has both nearly exclusive control over the evidence pertinent

7   to the issues under dispute and much greater resources than MediciNova.

8

9        The other pertinent factors also weigh in favor of compelling Genzyme to

10  produce the documents MediciNova seeks.  Genzyme's laboratory notes are

11  important to MediciNova's case because they are among the best contemporaneous

12  evidence of what happened in the laboratory while Genzyme was designing,

13  preparing, purifying, and testing the drug product and the IND Application is not a

14  sufficient substitute.  Those matters, in turn, are directly relevant to whether

15  Genzyme whether AAV-sFLT is covered by one or more patents under the parties'

16  Assignment Agreement.  The amount in controversy is sizeable—MediciNova seeks

17  damages in the millions of dollars, which surely justifies significant discovery to

18  ensure that the case is resolved correctly.

19

20       During the meet and confer process, Genzyme essentially took the position

21  that MediciNova needs nothing other than Genzyme's "Investigational New Drug

22  Application" to determine whether Genzyme owes MediciNova a milestone

23  payment under the terms of the Assignment Agreement between the parties, because

24  that document should show on its face whether AAV-sFLT is covered by one or

25  more patents under the parties' Assignment Agreement and it is impossible that

26  anything stated therein could prove to be inaccurate when compared with other

27  underlying and related materials.  MediciNova respectfully disagrees; it believes it

28

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

1   has the right to discovery of the source documents on which the IND Application is

2   based and other related documents and things, including those additional documents

3   and things sought via this document request, to confirm for itself whether the IND

4   Application is complete and accurate.

5

6          Genzyme's response arbitrarily limits its production to "documents sufficient

7   to describe the design, preparation, and purification of the Drug Product that is the

8   subject of the Request."  Genzyme should be compelled to respond to the request as

9   written.

10

11  **Genzyme's Response to MediciNova's Contentions Regarding Request for**

12  **Production No. 10**

13         Genzyme has provided, among other things, the entire IND for the product at

14  issue in this litigation.  The IND is sufficient to identify the drug product that is the

15  subject of the request and is fully responsive to the non-objectionable portions of

16  these document requests.  Indeed, the IND contains far more detail than MediciNova

17  needs to identify the characteristics of AAV2-sFLT01 that are relevant to the claims

18  of the '237 patent.  MediciNova's position that more documentation and information

19  are needed to "test" whether the statements in the IND are accurate is meritless.  The

20  IND is an official submittal made to the U.S. government requesting authorization to

21  conduct clinical trials of a drug product.  It is the best evidence to establish the drug

22  product's characteristics.  MediciNova's suggestion that Genzyme may have made

23  incorrect statements in its IND has no basis in fact and is the type of speculation that

24  courts prohibit.  *Robinson*, 2013 WL 6858956, at *6; *Justiano*, 291 F.R.D. at 83;

25  *Claude P. Bamberger Int'l*, 1998 WL 684263, at *2; *Rivera*, 364 F.3d at 1072;

26  *Watkins*, 2014 WL 11191092, at *4; *Flores*, 2012 WL 6725842, at *2; *Carter*, 2011

27

28

WL 3047672, at *2.  Genzyme further incorporates its argument set forth above with regard to Request for Production No. 1.

**11.   Request for Production of Documents No. 11**

**MediciNova's Request for Production No. 11**

All DOCUMENTS and THINGS RELATING TO the PATENT-IN-SUIT.

**Genzyme's Response to MediciNova's Request for Production No. 11**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the request to the extent that it seeks the disclosure of documents or other information protected from disclosure by the attorney-client privilege, work product doctrine and/or any other applicable privilege or doctrine.  Defendant further objects to the request because it purports to seek "All" documents described in the Request on the grounds that a request for "All" documents described in the Request seeks information or documents that are not relevant to any party's claim or defense or not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Instead, and subject to its General and Specific Objections, Defendant states that it will produce the patent, its prosecution history, and documents relating to the construction of the patent claims at issue in this litigation.

**MediciNova's Contentions Regarding Request for Production No. 11**

MediciNova has the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

-152-

of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).  Genzyme objects in response to almost every one of MediciNova's document requests that a request seeking all documents on a given topic necessarily fails this test.  The objection is meritless.  MediciNova must have all the pertinent documents so it has a complete picture of the facts—otherwise, Genzyme could selectively produce only certain materials in an effort to slant the evidence in its favor.  This danger is particularly acute in a case like this one, wherein Genzyme has both nearly exclusive control over the evidence pertinent to the issues under dispute and much greater resources than MediciNova.

The other pertinent factors also weigh in favor of compelling Genzyme to produce the documents MediciNova seeks.  Genzyme's use of the technology embodied in the '237 Patent is the basis for the present dispute, and MediciNova is entitled to all documents and things within Genzyme's possession or control that relate to the '237 patent.  Such documents might include documents that are uniquely within Genzyme's possession or control, such as, by way of example only, technical opinions or analyses relating to the '237 patent, internal discussions or relating to the '237 patent, and legal opinions relating to, for instance, the validity, enforceability, or non-infringement of the '237 patent. Such documents or things, and many others, would bear directly upon to MediciNova's claim that Genzyme has used the AAV technology in the '237 patent covered by the Assignment Agreement.  Accordingly, and for this reason, MediciNova's RFP specifically requests the production of "*[a]ll* DOCUMENTS and THINGS" relating to the '237 patent.  Genzyme's production of only "the patent, its prosecution history, and

-153-

1   documents relating to the construction of the patent claims at issue in this litigation"
2   is so completely insufficient as to be unresponsive.  The amount in controversy is
3   sizeable—MediciNova seeks damages in the millions of dollars, which surely
4   justifies significant discovery to ensure that the case is resolved correctly.
5
6       During the meet and confer process, Genzyme essentially took the position
7   that MediciNova needs nothing other than Genzyme's "Investigational New Drug
8   Application" to determine whether Genzyme owes MediciNova a milestone
9   payment under the terms of the Assignment Agreement between the parties, because
10  that document should show on its face whether AAV-sFLT is covered by one or
11  more patents under the parties' Assignment Agreement and it is impossible that
12  anything stated therein could prove to be inaccurate when compared with other
13  underlying and related materials.  MediciNova respectfully disagrees; it believes it
14  has the right to discovery of the source documents on which the IND Application is
15  based and other related documents and things, including those additional documents
16  and things sought via this document request, to confirm for itself whether the IND
17  Application is complete and accurate.  Genzyme should be compelled to respond to
18  the request as written.
19
20      MediciNova does not seek any privileged communications.
21
22  **Genzyme's Response to MediciNova's Contentions Regarding Request for**
23  **Production No. 11**
24      The sole issue in this case is whether the '237 patent covers drug products
25  derived from the herpes virus and whether that scope covers Genzyme's drug
26  product.  Genzyme contends that the '237 patent claims, properly construed, do not
27  cover drug products derived from the herpes virus.  MediciNova's request for all
28

-154-

documents relating to the '237 patent is simply a request for all documents related to this case *and then much more*, which is impermissibly broad.  *See, e.g.*, *Payless Shoesource Worldwide, Inc. v. Target Corp.*, No. CIV.A. 05-4023-JAR, 2006 WL 6225139, at *8 (D. Kan. Nov. 17, 2006) (finding requests "*worded broadly* to ensure Payless receives *any and all* documents *related* to those marks that *might* impact this case" as unduly burdensome and overly broad) (emphasis in original).

### 12.      Request for Production of Documents No. 12

**MediciNova's Request for Production No. 12**

All DOCUMENTS and THINGS RELATING TO the maintenance and reinstatement of the PATENT-IN-SUIT.

**Genzyme's Response to MediciNova's Request for Production No. 12**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the request to the extent that it seeks the disclosure of documents or other information protected from disclosure by the attorney-client privilege, work product doctrine and/or any other applicable privilege or doctrine.  Defendants object to this Request on the grounds that the phrase "maintenance and reinstatement of the PATENT-IN-SUIT" seeks information that is not relevant to any party's claim or defense.  Defendant further objects to the request because it purports to seek "All" documents described in the Request on the grounds that a request for "All" documents described in the Request seeks information or documents that are not relevant to any party's claim or defense or not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs

its likely benefit. Instead, and subject to its General and Specific Objections,

Defendant states that it will produce the patent and its prosecution history.

**MediciNova's Contentions Regarding Request for Production No. 12**

MediciNova has the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1). Genzyme objects in response to almost every one of MediciNova's document requests that a request seeking all documents on a given topic necessarily fails this test. The objection is meritless. MediciNova must have all the pertinent documents so it has a complete picture of the facts—otherwise, Genzyme could selectively produce only certain materials in an effort to slant the evidence in its favor. This danger is particularly acute in a case like this one, wherein Genzyme has both nearly exclusive control over the evidence pertinent to the issues under dispute and much greater resources than MediciNova.

As noted above, Genzyme's use of the technology embodied in the '237 Patent is the basis for the present dispute. Accordingly, any documents or things in the possession or control of Genzyme and related to the '237 patent—including documents relating to the maintenance and reinstatement of this patent at the United States Patent and Trademark Office—are relevant to the enforceability of the '237 patent, and therefore, to MediciNova's claim that Genzyme has used the AAV technology in the '237 patent covered by the Assignment Agreement. Further, because Genzyme assumed responsibility for maintenance fee payments under the

1   Assignment Agreement, such documents might include documents that are uniquely
2   within Genzyme's possession or control.

3

4           During the meet and confer process, Genzyme essentially took the position
5   that MediciNova needs nothing other than Genzyme's "Investigational New Drug
6   Application" to determine whether Genzyme owes MediciNova a milestone
7   payment under the terms of the Assignment Agreement between the parties, because
8   that document should show on its face whether AAV-sFLT is covered by one or
9   more patents under the parties' Assignment Agreement and it is impossible that
10  anything stated therein could prove to be inaccurate when compared with other
11  underlying and related materials.  MediciNova respectfully disagrees; it believes it
12  has the right to discovery of the source documents on which the IND Application is
13  based and other related documents and things, including those additional documents
14  and things sought via this document request, to confirm for itself whether the IND
15  Application is complete and accurate.  Genzyme should be compelled to respond to
16  the request as written.

17

18          MediciNova does not seek any privileged communications.

19

20  **Genzyme's Response to MediciNova's Contentions Regarding Request for**
21  **Production No. 12**

22          During the parties' meet and confer, MediciNova was unable to articulate a
23  single reason why "All DOCUMENTS and THINGS RELATING TO the
24  maintenance and reinstatement of the PATENT-IN-SUIT" were in any way relevant
25  to the sole issue in this case, nor does MediciNova do so now.  In fact, the '237
26  patent was issued on 04/23/2002, its application was filed on 11/29/1999, its earliest
27  effective filing date is 08/03/1995, and it is subject to a terminal disclaimer.  The

28

-157-

payment of maintenance and reinstatement fees is public information.  A few simple keystrokes on the web page at http://portal.uspto.gov/pair/PublicPair[12] show that the maintenance fees for the '237 Patent have been paid.   Knowing that, "All DOCUMENTS and THINGS RELATING TO the maintenance and reinstatement of the PATENT-IN-SUIT" (which would presumably include a copy of the payment made to the Patent Office, correspondence regarding the payment, and the calendaring of the payment) are irrelevant to this litigation.

### 13.   Request for Production of Documents No. 13

**MediciNova's Request for Production No. 13**

All publications, abstracts, posters, internal presentations, and invention disclosures RELATING TO the construction, manufacturing, or preclinical or clinical development of the DRUG PRODUCT.

**Genzyme's Response to MediciNova's Request for Production No. 13**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to the request to the extent that it seeks the disclosure of documents or other information protected from disclosure by the attorney-client privilege, work product doctrine and/or any other applicable privilege or doctrine.  Defendant further objects to the request because it purports to seek "All" documents described in the Request on the grounds that a request for "All" documents described in the Request seeks information or documents that are not relevant to any party's claim or defense or not proportional to the needs of the

---

[12] The web page, maintained by the United States Patent and Trademark Office, instructs users after clicking on the "fees" tab:  "View and Pay Fees - Follow the steps below to look up the current status and pay the maintenance fee for one or many patents."

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

1    case, considering the importance of the issues at stake in the action, the amount in

2    controversy, the parties' relative access to relevant information, the parties'

3    resources, the importance of discovery in resolving the issues, and whether the

4    burden or expense of the proposed discovery outweighs its likely benefit.  Instead,

5    and subject to its General and Specific Objections, Defendant states that it will

6    produce documents sufficient to identify the Drug Product that is the subject of the

7    Request, documents sufficient to describe how the Drug Product that is the subject

8    of the Request was manufactured, and documents sufficient to describe the design,

9    preparation, and purification of the Drug Product that is the subject of the Request.

10

11   **MediciNova's Contentions Regarding Request for Production No. 13**

12           MediciNova has the right to "obtain discovery regarding any nonprivileged

13   matter that is relevant to any party's claim or defense and proportional to the needs

14   of the case, considering the importance of the issues at stake in the action, the

15   amount in controversy, the parties' relative access to relevant information, the

16   parties' resources, the importance of the discovery in resolving the issues, and

17   whether the burden or expense of the proposed discovery outweighs its likely

18   benefit." Fed. R. Civ. Proc. 26(b)(1).  Genzyme objects in response to almost every

19   one of MediciNova's document requests that a request seeking all documents on a

20   given topic necessarily fails this test.  The objection is meritless.   MediciNova must

21   have all the pertinent documents so it has a complete picture of the facts—

22   otherwise, Genzyme could selectively produce only certain materials in an effort to

23   slant the evidence in its favor.  This danger is particularly acute in a case like this

24   one, wherein Genzyme has both nearly exclusive control over the evidence pertinent

25   to the issues under dispute and much greater resources than MediciNova.

26

27

28

1        The other pertinent factors also weigh in favor of compelling Genzyme to

2 produce the documents MediciNova seeks.  Genzyme's publications, abstracts,

3 posters, internal presentations, and invention disclosures are important to

4 MediciNova's case because they are among the best contemporaneous evidence of

5 what happened while Genzyme was designing, preparing, purifying, and testing the

6 drug product and the IND Application is not a sufficient substitute.  Those matters,

7 in turn, are directly relevant to whether AAV-sFLT is covered by one or more

8 patents under the parties' Assignment Agreement.  The amount in controversy is

9 sizeable—MediciNova seeks damages in the millions of dollars, which surely

10 justifies significant discovery to ensure that the case is resolved correctly.

11

12        During the meet and confer process, Genzyme essentially took the position

13 that MediciNova needs nothing other than Genzyme's "Investigational New Drug

14 Application" to determine whether Genzyme owes MediciNova a milestone

15 payment under the terms of the Assignment Agreement between the parties, because

16 that document should show on its face whether AAV-sFLT is covered by one or

17 more patents under the parties' Assignment Agreement and it is impossible that

18 anything stated therein could prove to be inaccurate when compared with other

19 underlying and related materials.  MediciNova respectfully disagrees; it believes it

20 has the right to discovery of the source documents on which the IND Application is

21 based and other related documents and things, including those additional documents

22 and things sought via this document request, to confirm for itself whether the IND

23 Application is complete and accurate.

24

25        Genzyme's response arbitrarily limits its production to "documents sufficient

26 to describe the design, preparation, and purification of the Drug Product that is the

27 subject of the Request."  Genzyme should be compelled to respond to the request as

28

1   written.  To the extent Genzyme is limiting its response because it considers the

2   request unduly burdensome, Genzyme must also identify the sources containing

3   potentially responsive information that it is neither searching nor producing with

4   enough detail to permit MediciNova to evaluate both the burdens and costs of

5   providing the discovery and the likelihood that those sources include responsive

6   information.  *See* Adv. Comm. Note to 2006 Amendment to Fed. R. Civ. P.

7   26(b)(2).

8

9          MediciNova does not seek any privileged communications.

10

11   **Genzyme's Response to MediciNova's Contentions Regarding Request for**

12   **Production No. 13**

13          Genzyme has provided, among other things, the entire IND for the product at

14   issue in this litigation.  The IND is sufficient to identify the drug product that is the

15   subject of the request and is fully responsive to the non-objectionable portions of

16   these document requests.  Indeed, the IND contains far more detail than MediciNova

17   needs to identify the characteristics of AAV2-sFLT01 that are relevant to the claims

18   of the '237 patent.  MediciNova's position that more documentation and information

19   are needed to "test" whether the statements in the IND are accurate is meritless.  The

20   IND is an official submittal made to the U.S. government requesting authorization to

21   conduct clinical trials of a drug product.  It is the best evidence to establish the drug

22   product's characteristics.  MediciNova's suggestion that Genzyme may have made

23   incorrect statements in its IND has no basis in fact and is the type of speculation that

24   courts prohibit.  *Robinson*, 2013 WL 6858956, at *6; *Justiano*, 291 F.R.D. at 83;

25   *Claude P. Bamberger Int'l*, 1998 WL 684263, at *2; *Rivera*, 364 F.3d at 1072;

26   *Watkins*, 2014 WL 11191092, at *4; *Flores*, 2012 WL 6725842, at *2; *Carter*, 2011

27

28

-161-

WL 3047672, at *2.  Genzyme further incorporates its argument set forth above with regard to Request for Production No. 1.

**14.    Request for Production of Documents No. 14**

**MediciNova's Request for Production No. 14**

All DOCUMENTS and THINGS RELATING TO YOUR contention that the DRUG PRODUCT is not covered by the PATENT-IN-SUIT.

**Genzyme's Response to MediciNova's Request for Production No. 14**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to this Request to the extent that it seeks the disclosure of documents or other information protected from disclosure by the attorney-client privilege, work product doctrine and/or any other applicable privilege or doctrine.  Defendant objects to this Request to the extent that Plaintiff has not identified the specific claims of the '237 patent that Plaintiff contends read on the drug product at issue.  Defendant objects to this Request on the grounds that it does not describe with reasonable particularity each item or category of items to be inspected, as required by Fed. R. Civ. Proc. 34(b)(1)(A).

Due to the extreme over breadth, burdensomeness, and lack of particularity in describing the information sought in this Request, and the fact that other Requests will be responded to by Defendant, Defendant will not make a separate search or production responsive to this Request.  Defendant will consider responding to narrower, more focused demands if submitted and not duplicative of other demands to which Defendant has agreed to respond.

1 | **MediciNova's Contentions Regarding Request for Production No. 14**

2 | MediciNova has the right to "obtain discovery regarding any nonprivileged

3 | matter that is relevant to any party's claim or defense and proportional to the needs

4 | of the case, considering the importance of the issues at stake in the action, the

5 | amount in controversy, the parties' relative access to relevant information, the

6 | parties' resources, the importance of the discovery in resolving the issues, and

7 | whether the burden or expense of the proposed discovery outweighs its likely

8 | benefit."  Fed. R. Civ. Proc. 26(b)(1).  MediciNova's Request for Production No. 14

9 | appropriately seeks discovery of whatever evidence, in Genzyme's opinion,

10 | supports Genzyme's core claim in this action: that the patent in suit does not cover

11 | the disputed drug product.  MediciNova is not in a position to make a more

12 | particularized request of this type because Genzyme, not MediciNova, is the party

13 | with the best knowledge of the specifics of its contentions and the nature of the

14 | evidence supporting those contentions, and is in sole possession of most of the

15 | evidence relevant to the issues under dispute.  MediciNova is not obligated in its

16 | discovery to specify which claims of the patent bear on the drug product—the

17 | purpose of its discovery is to procure evidence, if any, that supports Genzyme's

18 | position.

19 |

20 | During the meet and confer process, Genzyme essentially took the position

21 | that MediciNova needs nothing other than Genzyme's "Investigational New Drug

22 | Application" to determine whether Genzyme owes MediciNova a milestone

23 | payment under the terms of the Assignment Agreement between the parties, because

24 | that document should show on its face whether AAV-sFLT is covered by one or

25 | more patents under the parties' Assignment Agreement and it is impossible that

26 | anything stated therein could prove to be inaccurate when compared with other

27 | underlying and related materials.  MediciNova respectfully disagrees; it believes it

28 |

-163-

1   has the right to discovery of the source documents on which the IND application is

2   based and other related documents and things, including those additional documents

3   and things sought via this document request, to confirm for itself whether the IND

4   Application is complete and accurate.

5

6       Genzyme's blanket refusal to produce any responsive documents based on its

7   objections is improper.  Instead, Genzyme "must state whether any responsive

8   materials are being withheld" based on its objections.  Fed. R. Civ. P. 34(b)(2)(C).

9   It must also identify the sources containing potentially responsive information that it

10  is neither searching nor producing with enough detail to permit MediciNova to

11  evaluate both the burdens and costs of providing the discovery and the likelihood

12  that those sources include responsive information.  *See* Adv. Comm. Note to 2006

13  Amendment to Fed. R. Civ. P. 26(b)(2).  Genzyme's vague answer gives no

14  information as to whether any responsive materials exist and thus gives MediciNova

15  no way to evaluate the sufficiency of Genzyme's document production in response

16  to this request.

17

18      Genzyme should be compelled to respond to the request as written.

19

20      MediciNova does not seek any privileged communications.

21

22  **Genzyme's Response to MediciNova's Contentions Regarding Request for**

23  **Production No. 14**

24      The sole issue in this case is whether the '237 patent covers drug products

25  derived from the herpes virus and whether that scope covers Genzyme's drug

26  product.  Genzyme contends that the '237 patent claims, properly construed, do not

27  cover drug products derived from the herpes virus.  MediciNova's request for all

28

-164-

documents relating to this contention is simply a request for all documents related to this case, which is impermissibly broad. *See, e.g.*, *Payless*, 2006 WL 6225139, at *8. Genzyme further incorporates its argument set forth above with regard to Request for Production No. 1, wherein Genzyme explains why the IND file, which has been produced, more than sufficiently provides documents and information to satisfy the needs of the parties in the case, including the inquiry, included in this request, as to why "the DRUG PRODUCT is not covered by the PATENT-IN-SUIT."

### 15.   Request for Production of Documents No. 15

**MediciNova's Request for Production No. 15**

All COMMUNICATIONS RELATING TO YOUR contention that the DRUG PRODUCT is not covered by the PATENT-IN-SUIT.

**Genzyme's Response to MediciNova's Request for Production No. 15**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to this Request to the extent that it seeks the disclosure of documents or other information protected from disclosure by the attorney-client privilege, work product doctrine and/or any other applicable privilege or doctrine. Defendant objects to this Request to the extent that Plaintiff has not identified the specific claims of the '237 patent that Plaintiff contends read on the drug product at issue. Defendant objects to this Request on the grounds that it does not describe with reasonable particularity each item or category of items to be inspected, as required by Fed. R. Civ. Proc. 34(b)(1)(A).

Due to the extreme over breadth, burdensomeness, and lack of particularity in describing the information sought in this Request, and the fact that other Requests

1  will be responded to by Defendant, Defendant will not make a separate search or

2  production responsive to this Request.  Defendant will consider responding to

3  narrower, more focused demands if submitted and not duplicative of other demands

4  to which Defendant has agreed to respond.

5

6  **MediciNova's Contentions Regarding Request for Production No. 15**

7      MediciNova has the right to "obtain discovery regarding any nonprivileged

8  matter that is relevant to any party's claim or defense and proportional to the needs

9  of the case, considering the importance of the issues at stake in the action, the

10  amount in controversy, the parties' relative access to relevant information, the

11  parties' resources, the importance of the discovery in resolving the issues, and

12  whether the burden or expense of the proposed discovery outweighs its likely

13  benefit."  Fed. R. Civ. Proc. 26(b)(1).  MediciNova's Request for Production No. 15

14  appropriately seeks discovery of whatever communications, in Genzyme's opinion,

15  support Genzyme's core claim in this action: that the patent in suit does not cover

16  the disputed drug product.  MediciNova is not in a position to make a more

17  particularized request of this type because Genzyme, not MediciNova, is the party

18  with the best knowledge of the specifics of its contentions and the nature of the

19  evidence supporting those contentions, and is in sole possession of most of the

20  evidence relevant to the issues under dispute.  MediciNova is not obligated to

21  specify in its discovery which claims of the patent bear on the drug product—the

22  purpose of its discovery is to procure evidence, if any, that supports Genzyme's

23  position.

24

25      During the meet and confer process, Genzyme essentially took the position

26  that MediciNova needs nothing other than Genzyme's "Investigational New Drug

27  Application" to determine whether Genzyme owes MediciNova a milestone

28

1 | payment under the terms of the Assignment Agreement between the parties, because
2 | that document should show on its face whether AAV-sFLT is covered by one or
3 | more patents under the parties' Assignment Agreement and it is impossible that
4 | anything stated therein could prove to be inaccurate when compared with other
5 | underlying and related materials.  MediciNova respectfully disagrees; it believes it
6 | has the right to discovery of the source documents on which the IND application is
7 | based and other related documents and things, including those additional documents
8 | and things sought via this document request, to confirm for itself whether the IND
9 | Application is complete and accurate.

11 | Genzyme's blanket refusal to produce any responsive documents based on its
12 | objections is improper.  Instead, Genzyme "must state whether any responsive
13 | materials are being withheld" based on its objections.  Fed. R. Civ. P. 34(b)(2)(C).
14 | It must also identify the sources containing potentially responsive information that it
15 | is neither searching nor producing with enough detail to permit MediciNova to
16 | evaluate both the burdens and costs of providing the discovery and the likelihood
17 | that those sources include responsive information.  *See* Adv. Comm. Note to 2006
18 | Amendment to Fed. R. Civ. P. 26(b)(2).  Genzyme's vague answer gives no
19 | information as to whether any responsive materials exist and thus gives MediciNova
20 | no way to evaluate the sufficiency of Genzyme's document production in response
21 | to this request.

23 | Genzyme should be compelled to respond to the request as written.

25 | MediciNova does not seek any privileged communications.

|

**Genzyme's Response to MediciNova's Contentions Regarding Request for Production No. 15**

The sole issue in this case is whether the '237 patent covers drug products derived from the herpes virus and whether that scope covers Genzyme's drug product.  Genzyme contends that the '237 patent claims, properly construed, do not cover drug products derived from the herpes virus.  MediciNova's request for all documents relating to this contention is simply a request for all documents related to this case, which is impermissibly broad.  *See, e.g.*, *Payless*, 2006 WL 6225139, at *8.  Genzyme further incorporates its argument set forth above with regard to Request for Production No. 1, wherein Genzyme explains why the IND file, which has been produced, more than sufficiently provides documents and information to satisfy the needs of the parties in the case, including the inquiry, included in this request, as to why "the DRUG PRODUCT is not covered by the PATENT-IN-SUIT."

**16.    Request for Production of Documents No. 16**

**MediciNova's Request for Production No. 16**

All DOCUMENTS and THINGS RELATING TO YOUR contention that the PATENT-IN-SUIT contains an exclusion pertaining to the use of herpes simplex virus type-1 ("HSV-1").

**Genzyme's Response to MediciNova's Request for Production No. 16**

In addition to its General Objections and Objections to Plaintiff's Definitions and Instructions, Defendant objects to this Request to the extent that it seeks the disclosure of documents or other information protected from disclosure by the attorney-client privilege, work product doctrine and/or any other applicable privilege or doctrine.  Defendant objects to this Request on the grounds that it does

-168-

not describe with reasonable particularity each item or category of items to be inspected, as required by Fed. R. Civ. Proc. 34(b)(1)(A).

Due to the extreme over breadth, burdensomeness, and lack of particularity in describing the information sought in this Request, and the fact that other Requests will be responded to by Defendant, Defendant will not make a separate search or production responsive to this Request.  Defendant will consider responding to narrower, more focused demands if submitted and not duplicative of other demands to which Defendant has agreed to respond.

**MediciNova's Contentions Regarding Request for Production No. 16**

MediciNova has the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).  MediciNova's Request for Production No. 16 appropriately seeks discovery of whatever evidence, in Genzyme's opinion, supports Genzyme's claim that the patent in suit contains an exclusion for the use of HSV-1, which in turn goes to whether the patent in suit covers the drug product. MediciNova is not in a position to make a more particularized request of this type because Genzyme, not MediciNova, is the party with the best knowledge of the specifics of its contentions and the nature of the evidence supporting those contentions, and is in sole possession of most of the evidence relevant to the issues under dispute.

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

During the meet and confer process, Genzyme essentially took the position that MediciNova needs nothing other than Genzyme's "Investigational New Drug Application" to determine whether Genzyme owes MediciNova a milestone payment under the terms of the Assignment Agreement between the parties, because that document should show on its face whether AAV-sFLT is covered by one or more patents under the parties' Assignment Agreement and it is impossible that anything stated therein could prove to be inaccurate when compared with other underlying and related materials.  MediciNova respectfully disagrees; it believes it has the right to discovery of the source documents on which the IND application is based and other related documents and things, including those additional documents and things sought via this document request, to confirm for itself whether the IND Application is complete and accurate.

Genzyme's blanket refusal to produce any responsive documents based on its objections is improper.  Instead, Genzyme "must state whether any responsive materials are being withheld" based on its objections.  Fed. R. Civ. P. 34(b)(2)(C). It must also identify the sources containing potentially responsive information that it is neither searching nor producing with enough detail to permit MediciNova to evaluate both the burdens and costs of providing the discovery and the likelihood that those sources include responsive information.  *See* Adv. Comm. Note to 2006 Amendment to Fed. R. Civ. P. 26(b)(2).  Genzyme's vague answer gives no information as to whether any responsive materials exist and thus gives MediciNova no way to evaluate the sufficiency of Genzyme's document production in response to this request.

Genzyme should be compelled to respond to the request as written.

-170-

1    MediciNova does not seek any privileged communications.

2

3    **Genzyme's Response to MediciNova's Contentions Regarding Request for**

4    **Production No. 16**

5    The sole issue in this case is whether the '237 patent covers drug products

6    derived from the herpes virus and whether that scope covers Genzyme's drug

7    product.  Genzyme contends that the '237 patent claims, properly construed, do not

8    cover drug products derived from the herpes virus.  MediciNova's request for all

9    documents relating to this contention is simply a request for all documents related to

10   this case, which is impermissibly broad.  *See, e.g.*, *Payless*, 2006 WL 6225139, at

11   *8.  Genzyme further incorporates its argument set forth above with regard to

12   Request for Production No. 1.  The IND file, and the patent file, and the other

13   documents produced by Genzyme, provide the documents and information to satisfy

14   the inquiry, included in this request, as to why "PATENT-IN-SUIT contains an

15   exclusion pertaining to the use of herpes simplex virus type-1 ("HSV-1")."

16

17   **17.    Request for Production of Documents No. 17**

18   **MediciNova's Request for Production No. 17**

19   All COMMUNICATIONS RELATING TO YOUR contention that the

20   PATENT-IN-SUIT contains an exclusion pertaining to the use of HSV-1.

21

22   **Genzyme's Response to MediciNova's Request for Production No. 17**

23   In addition to its General Objections and Objections to Plaintiff's Definitions

24   and Instructions, Defendant objects to this Request to the extent that it seeks the

25   disclosure of documents or other information protected from disclosure by the

26   attorney-client privilege, work product doctrine and/or any other applicable

27   privilege or doctrine.  Defendant objects to this Request on the grounds that it does

28

not describe with reasonable particularity each item or category of items to be
inspected, as required by Fed. R. Civ. Proc. 34(b)(1)(A).

Due to the extreme over breadth, burdensomeness, and lack of particularity in
describing the information sought in this Request, and the fact that other Requests
will be responded to by Defendant, Defendant will not make a separate search or
production responsive to this Request.  Defendant will consider responding to
narrower, more focused demands if submitted and not duplicative of other demands
to which Defendant has agreed to respond.

**MediciNova's Contentions Regarding Request for Production No. 17**

MediciNova has the right to "obtain discovery regarding any nonprivileged
matter that is relevant to any party's claim or defense and proportional to the needs
of the case, considering the importance of the issues at stake in the action, the
amount in controversy, the parties' relative access to relevant information, the
parties' resources, the importance of the discovery in resolving the issues, and
whether the burden or expense of the proposed discovery outweighs its likely
benefit." Fed. R. Civ. Proc. 26(b)(1).  MediciNova's Request for Production No. 17
appropriately seeks discovery of whatever communications, in Genzyme's opinion,
support Genzyme's claim that the patent in suit contains an exclusion for the use of
HSV-1, which in turn goes to whether the patent in suit covers the drug product.
MediciNova is not in a position to make a more particularized request of this type
because Genzyme, not MediciNova, is the party with the best knowledge of the
specifics of its contentions and the nature of the evidence supporting those
contentions, and is in sole possession of most of the evidence relevant to the issues
under dispute.

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

1   During the meet and confer process, Genzyme essentially took the position

2   that MediciNova needs nothing other than Genzyme's "Investigational New Drug

3   Application" to determine whether Genzyme owes MediciNova a milestone

4   payment under the terms of the Assignment Agreement between the parties, because

5   that document should show on its face whether AAV-sFLT is covered by one or

6   more patents under the parties' Assignment Agreement and it is impossible that

7   anything stated therein could prove to be inaccurate when compared with other

8   underlying and related materials.  MediciNova respectfully disagrees; it believes it

9   has the right to discovery of the source documents on which the IND application is

10  based and other related documents and things, including those additional documents

11  and things sought via this document request, to confirm for itself whether the IND

12  Application is complete and accurate.

13

14  Genzyme's blanket refusal to produce any responsive documents based on its

15  objections is improper.  Instead, Genzyme "must state whether any responsive

16  materials are being withheld" based on its objections.  Fed. R. Civ. P. 34(b)(2)(C).

17  It must also identify the sources containing potentially responsive information that it

18  is neither searching nor producing with enough detail to permit MediciNova to

19  evaluate both the burdens and costs of providing the discovery and the likelihood

20  that those sources include responsive information.  *See* Adv. Comm. Note to 2006

21  Amendment to Fed. R. Civ. P. 26(b)(2).  Genzyme's vague answer gives no

22  information as to whether any responsive materials exist and thus gives MediciNova

23  no way to evaluate the sufficiency of Genzyme's document production in response

24  to this request.

25

26  Genzyme should be compelled to respond to the request as written.

27

28

-173-

1    MediciNova does not seek any privileged communications.

2

3    **Genzyme's Response to MediciNova's Contentions Regarding Request for**

4    **Production No. 17**

5         The sole issue in this case is whether the '237 patent covers drug products

6    derived from the herpes virus and whether that scope covers Genzyme's drug

7    product.  Genzyme contends that the '237 patent claims, properly construed, do not

8    cover drug products derived from the herpes virus.  MediciNova's request for all

9    documents relating to this contention is simply a request for all documents related to

10   this case, which is impermissibly broad.  *See, e.g.*, *Payless*, 2006 WL 6225139, at

11   *8.  Genzyme further incorporates its argument set forth above with regard to

12   Request for Production No. 1.  The IND file, and the patent file, and the other

13   documents produced by Genzyme, provide the documents and information to satisfy

14   the inquiry, included in this request, as to Genzyme's contentions that the

15   "PATENT-IN-SUIT contains an exclusion pertaining to the use of HSV-1."

16

17        **18.     Request for Production of Documents No. 18**

18   **MediciNova's Request for Production No. 18**

19        All DOCUMENTS and THINGS RELATING TO YOUR contention that

20   YOU do not owe a milestone payment to MediciNova, Inc. under the

21   ASSIGNMENT AGREEMENT for the DRUG PRODUCT.

22

23   **Genzyme's Response to MediciNova's Request for Production No. 18**

24        In addition to its General Objections and Objections to Plaintiff's Definitions

25   and Instructions, Defendant objects to this Request to the extent that it seeks the

26   disclosure of documents or other information protected from disclosure by the

27   attorney-client privilege, work product doctrine and/or any other applicable

28

-174-

1   privilege or doctrine.  Defendant objects to this Request on the grounds that it does

2   not describe with reasonable particularity each item or category of items to be

3   inspected, as required by Fed. R. Civ. Proc. 34(b)(1)(A).

4

5       Due to the extreme over breadth, burdensomeness, and lack of particularity in

6   describing the information sought in this Request, and the fact that other Requests

7   will be responded to by Defendant, Defendant will not make a separate search or

8   production responsive to this Request.  Defendant will consider responding to

9   narrower, more focused demands if submitted and not duplicative of other demands

10  to which Defendant has agreed to respond.

11

12  **MediciNova's Contentions Regarding Request for Production No. 18**

13      MediciNova has the right to "obtain discovery regarding any nonprivileged

14  matter that is relevant to any party's claim or defense and proportional to the needs

15  of the case, considering the importance of the issues at stake in the action, the

16  amount in controversy, the parties' relative access to relevant information, the

17  parties' resources, the importance of the discovery in resolving the issues, and

18  whether the burden or expense of the proposed discovery outweighs its likely

19  benefit." Fed. R. Civ. Proc. 26(b)(1).  MediciNova's Request for Production No. 18

20  appropriately seeks discovery of whatever evidence, in Genzyme's opinion,

21  supports Genzyme's claim that the Genzyme does not owe MediciNova a milestone

22  payment under the terms of the Assignment Agreement between the parties.

23  MediciNova is not in a position to make a more particularized request of this type

24  because Genzyme, not MediciNova, is the party with the best knowledge of the

25  specifics of its contentions and the nature of the evidence supporting those

26  contentions, and is in sole possession of most of the evidence relevant to the issues

27  under dispute.

28

1    During the meet and confer process, Genzyme essentially took the position

2  that MediciNova needs nothing other than Genzyme's "Investigational New Drug

3  Application" to determine whether Genzyme owes MediciNova a milestone

4  payment under the terms of the Assignment Agreement between the parties, because

5  that document should show on its face whether AAV-sFLT is covered by one or

6  more patents under the parties' Assignment Agreement and it is impossible that

7  anything stated therein could prove to be inaccurate when compared with other

8  underlying and related materials.  MediciNova respectfully disagrees; it believes it

9  has the right to discovery of the source documents on which the IND application is

10 based and other related documents and things, including those additional documents

11 and things sought via this document request, to confirm for itself whether the IND

12 Application is complete and accurate.

13

14    Genzyme's blanket refusal to produce any responsive documents based on its

15 objections is improper.  Instead, Genzyme "must state whether any responsive

16 materials are being withheld" based on its objections.  Fed. R. Civ. P. 34(b)(2)(C).

17 It must also identify the sources containing potentially responsive information that it

18 is neither searching nor producing with enough detail to permit MediciNova to

19 evaluate both the burdens and costs of providing the discovery and the likelihood

20 that those sources include responsive information.  *See* Adv. Comm. Note to 2006

21 Amendment to Fed. R. Civ. P. 26(b)(2).  Genzyme's vague answer gives no

22 information as to whether any responsive materials exist and thus gives MediciNova

23 no way to evaluate the sufficiency of Genzyme's document production in response

24 to this request.

25

26    Genzyme should be compelled to respond to the request as written.

27

28

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

1   MediciNova does not seek any privileged communications.

2

3   **Genzyme's Response to MediciNova's Contentions Regarding Request for**

4   **Production No. 18**

5   The sole issue in this case is whether the '237 patent covers drug products

6   derived from the herpes virus and whether that scope covers Genzyme's drug

7   product.  Genzyme contends that the '237 patent claims, properly construed, do not

8   cover drug products derived from the herpes virus.  MediciNova's request for all

9   documents relating to this contention is simply a request for all documents related to

10  this case, which is impermissibly broad.  *See, e.g.*, *Payless*, 2006 WL 6225139, at

11  *8.  Genzyme further incorporates its argument set forth above with regard to

12  Request for Production No. 1.  Moreover, the IND file, and the patent file, and the

13  other documents produced by Genzyme, provide the documents and information to

14  satisfy the inquiry, included in this request, as to Genzyme's contentions.

15

16   **19.    Request for Production of Documents No. 19**

17   **MediciNova's Request for Production No. 19**

18   All COMMUNICATIONS RELATING TO YOUR contention that YOU do

19  not owe a milestone payment to MediciNova, Inc. under the ASSIGNMENT

20  AGREEMENT for the DRUG PRODUCT.

21

22   **Genzyme's Response to MediciNova's Request for Production No. 19**

23   In addition to its General Objections and Objections to Plaintiff's Definitions

24  and Instructions, Defendant objects to this Request to the extent that it seeks the

25  disclosure of documents or other information protected from disclosure by the

26  attorney-client privilege, work product doctrine and/or any other applicable

27  privilege or doctrine.  Defendant objects to this Request on the grounds that it does

28

-177-

1  not describe with reasonable particularity each item or category of items to be

2  inspected, as required by Fed. R. Civ. Proc. 34(b)(1)(A).

3

4        Due to the extreme over breadth, burdensomeness, and lack of particularity in

5  describing the information sought in this Request, and the fact that other Requests

6  will be responded to by Defendant, Defendant will not make a separate search or

7  production responsive to this Request.  Defendant will consider responding to

8  narrower, more focused demands if submitted and not duplicative of other demands

9  to which Defendant has agreed to respond.

10

11  **MediciNova's Contentions Regarding Request for Production No. 19**

12        MediciNova has the right to "obtain discovery regarding any nonprivileged

13  matter that is relevant to any party's claim or defense and proportional to the needs

14  of the case, considering the importance of the issues at stake in the action, the

15  amount in controversy, the parties' relative access to relevant information, the

16  parties' resources, the importance of the discovery in resolving the issues, and

17  whether the burden or expense of the proposed discovery outweighs its likely

18  benefit."  Fed. R. Civ. Proc. 26(b)(1).  MediciNova's Request for Production No. 19

19  appropriately seeks discovery of whatever communications, in Genzyme's opinion,

20  support Genzyme's claim that the Genzyme does not owe MediciNova a milestone

21  payment under the terms of the Assignment Agreement between the parties.

22  MediciNova is not in a position to make a more particularized request of this type

23  because Genzyme, not MediciNova, is the party with the best knowledge of the

24  specifics of its contentions and the nature of the evidence supporting those

25  contentions, and is in sole possession of most of the evidence relevant to the issues

26  under dispute.

27

28

1    During the meet and confer process, Genzyme essentially took the position
2 that MediciNova needs nothing other than Genzyme's "Investigational New Drug
3 Application" to determine whether Genzyme owes MediciNova a milestone
4 payment under the terms of the Assignment Agreement between the parties, because
5 that document should show on its face whether AAV-sFLT is covered by one or
6 more patents under the parties' Assignment Agreement and it is impossible that
7 anything stated therein could prove to be inaccurate when compared with other
8 underlying and related materials.  MediciNova respectfully disagrees; it believes it
9 has the right to discovery of the source documents on which the IND application is
10 based and other related documents and things, including those additional documents
11 and things sought via this document request, to confirm for itself whether the IND
12 Application is complete and accurate.

13

14    Genzyme's blanket refusal to produce any responsive documents based on its
15 objections is improper.  Instead, Genzyme "must state whether any responsive
16 materials are being withheld" based on its objections.  Fed. R. Civ. P. 34(b)(2)(C).
17 It must also identify the sources containing potentially responsive information that it
18 is neither searching nor producing with enough detail to permit MediciNova to
19 evaluate both the burdens and costs of providing the discovery and the likelihood
20 that those sources include responsive information.  *See* Adv. Comm. Note to 2006
21 Amendment to Fed. R. Civ. P. 26(b)(2).  Genzyme's vague answer gives no
22 information as to whether any responsive materials exist and thus gives MediciNova
23 no way to evaluate the sufficiency of Genzyme's document production in response
24 to this request.

25

26    Genzyme should be compelled to respond to the request as written.

27

28

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

1    MediciNova does not seek any privileged communications.

2

3    **Genzyme's Response to MediciNova's Contentions Regarding Request for**

4    **Production No. 19**

5        The sole issue in this case is whether the '237 patent covers drug products

6    derived from the herpes virus and whether that scope covers Genzyme's drug

7    product.  Genzyme contends that the '237 patent claims, properly construed, do not

8    cover drug products derived from the herpes virus.  MediciNova's request for all

9    documents relating to this contention is simply a request for all documents related to

10   this case, which is impermissibly broad.  *See, e.g.*, *Payless*, 2006 WL 6225139, at

11   *8.  Moreover, the IND file and the patent file, and the other documents produced

12   by Genzyme, provide the documents and information necessary to satisfy the

13   inquiry, included in this request, as to Genzyme's contentions.

14

15       20.    **Request for Production of Documents No. 20**

16   **MediciNova's Request for Production No. 20**

17       All DOCUMENTS and THINGS describing all nucleic acid sequences used

18   in the manufacturing and purification of the DRUG PRODUCT, including those

19   during laboratory testing, pre-clinical testing and clinical testing.

20

21   **Genzyme's Response to MediciNova's Request for Production No. 20**

22       In addition to its General Objections and Objections to Plaintiff's Definitions

23   and Instructions, Defendant objects to the request because it purports to seek "All"

24   documents described in the Request on the grounds that a request for "All"

25   documents described in the Request seeks information or documents that are not

26   relevant to any party's claim or defense or not proportional to the needs of the case,

27   considering the importance of the issues at stake in the action, the amount in

28

1  controversy, the parties' relative access to relevant information, the parties'

2  resources, the importance of discovery in resolving the issues, and whether the

3  burden or expense of the proposed discovery outweighs its likely benefit.

4  Defendant further objects to the phrase "all nucleic acid sequences used in the

5  manufacturing and purification of the DRUG PRODUCT" on the grounds that it is

6  overly broad, unduly burdensome, purports to impose a requirement on Defendant

7  to conduct more than a reasonable search of information in Defendant's possession,

8  custody, or control, and seeks information that is not relevant to any party's claim or

9  defense and is not proportional to the needs of the case, considering the importance

10  of the issues at stake in the action, the amount in controversy, the parties' relative

11  access to information, the parties' resources, the importance of the discovery in

12  resolving the issues, and whether the burden or expense of the proposed discovery

13  outweighs its likely benefit.

14

15      Subject to and without waiving its objections, Defendant will produce

16  relevant, non-privileged documents responsive to the non-objectionable portions of

17  this Request that are in its possession, to the extent such documents exist and can be

18  readily identified after a reasonable search.

19

20  **MediciNova's Contentions Regarding Request for Production No. 20**

21      MediciNova has the right to "obtain discovery regarding any nonprivileged

22  matter that is relevant to any party's claim or defense and proportional to the needs

23  of the case, considering the importance of the issues at stake in the action, the

24  amount in controversy, the parties' relative access to relevant information, the

25  parties' resources, the importance of the discovery in resolving the issues, and

26  whether the burden or expense of the proposed discovery outweighs its likely

27  benefit." Fed. R. Civ. Proc. 26(b)(1). Genzyme objects in response to almost every

28

1   one of MediciNova's document requests that a request seeking all documents on a

2   given topic necessarily fails this test.  The objection is meritless.   MediciNova must

3   have all the pertinent documents so it has a complete picture of the facts—

4   otherwise, Genzyme could selectively produce only certain materials in an effort to

5   slant the evidence in its favor.  This danger is particularly acute in a case like this

6   one, wherein Genzyme has both nearly exclusive control over the evidence pertinent

7   to the issues under dispute and much greater resources than MediciNova.

8

9        The other pertinent factors also weigh in favor of compelling Genzyme to

10   produce the documents MediciNova seeks.  Information relating to the

11   manufacturing and purification of Genzyme's drug product bears directly upon the

12   central issue in this case of whether Genzyme used the AAV technology covered by

13   the Assignment Agreement.  Genzyme has nearly exclusive control over the

14   evidence pertinent to the parties' claims and defenses because it is the party

15   developing drugs that may trigger its obligation to make a payment under the

16   Assignment Agreement.  The amount in controversy is sizeable—MediciNova seeks

17   damages in the millions of dollars, which surely justifies significant discovery to

18   ensure that the case is resolved correctly.  Genzyme also has much greater resources

19   than MediciNova.  In sum, this discovery may be crucial to resolving the dispute

20   between the parties.

21

22        During the meet and confer process, Genzyme essentially took the position

23   that MediciNova needs nothing other than Genzyme's "Investigational New Drug

24   Application" to determine whether Genzyme owes MediciNova a milestone

25   payment under the terms of the Assignment Agreement between the parties, because

26   that document should show on its face whether AAV-sFLT is covered by one or

27   more patents under the parties' Assignment Agreement and it is impossible that

28

-182-

1   anything stated therein could prove to be inaccurate when compared with other

2   underlying and related materials.  MediciNova respectfully disagrees; it believes it

3   has the right to discovery of the source documents on which the IND application is

4   based and other related documents and things, including those additional documents

5   and things sought via this document request, to confirm for itself whether the IND

6   Application is complete and accurate.  Genzyme should be compelled to respond to

7   the request as written.

8

9       Genzyme's objections regarding the phrases it selected are similarly meritless

10   because that phrase is clear, unambiguous, and well within the scope of pertinent

11   discovery for the reasons stated herein.

12

13       Genzyme's response that it will produce documents "responsive to the non-

14   objectionable portions of this Request that are in its possession, to the extent such

15   documents exist and can be readily identified after a reasonable search" is improper.

16   First, Genzyme must produce not only documents in its possession but also those in

17   its custody and/or control.  Fed. R. Civ. P. 34(a)(1).  Second, Genzyme "must state

18   whether any responsive materials are being withheld" based on its objections.  Fed.

19   R. Civ. P. 34(b)(2)(C).  Third, rather than simply saying it will make a reasonable

20   search, Genzyme must identify the sources containing potentially responsive

21   information that it is neither searching nor producing with enough detail to permit

22   MediciNova to evaluate both the burdens and costs of providing the discovery and

23   the likelihood that those sources include responsive information.  *See* Adv. Comm.

24   Note to 2006 Amendment to Fed. R. Civ. P. 26(b)(2).  And fourth, Genzyme cannot

25   say it will produce responsive materials "to the extent such documents exist."

26   Instead, it must state affirmatively whether it will produce responsive materials and,

27   if not, the reason why (e.g. the documents never existed or were destroyed).

28

      JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

1    Genzyme's vague answer gives no information as to whether any responsive

2    materials exist and thus gives MediciNova no way to evaluate the sufficiency of

3    Genzyme's document production in response to this request.

4

5    **Genzyme's Response to MediciNova's Contentions Regarding Request for**

6    **Production No. 20**

7            Genzyme has provided, among other things, the entire IND for the product at

8    issue in this litigation.  The IND is sufficient to identify the drug product that is the

9    subject of the request and is fully responsive to the non-objectionable portions of

10   these document requests.  Indeed, the IND contains far more detail than MediciNova

11   needs to identify the characteristics of AAV2-sFLT01 that are relevant to the claims

12   of the '237 patent.  MediciNova's position that more documentation and information

13   are needed to "test" whether the statements in the IND are accurate is meritless.  The

14   IND is an official submittal made to the U.S. government requesting authorization to

15   conduct clinical trials of a drug product.  It is the best evidence to establish the drug

16   product's characteristics.  MediciNova's suggestion that Genzyme may have made

17   incorrect statements in its IND has no basis in fact and is the type of speculation that

18   courts prohibit.  *Robinson*, 2013 WL 6858956, at *6; *Justiano*, 291 F.R.D. at 83;

19   *Claude P. Bamberger Int'l*, 1998 WL 684263, at *2; *Rivera*, 364 F.3d at 1072;

20   *Watkins*, 2014 WL 11191092, at *4; *Flores*, 2012 WL 6725842, at *2; *Carter*, 2011

21   WL 3047672, at *2.

22

23

24

25

26

27

28

Dated:  April 28, 2017

Respectfully Submitted,

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP

By: /s/ Matthew S. McConnell
       Matthew S. McConnell

   Attorney for Plaintiff
   MEDICINOVA, INC.
   E-mail:
   mmcconnell@sheppardmullin.com

BLANCHARD, KRASNER & FRENCH

By: /s/ Ann E. Kinsey
       Ann E. Kinsey

   Attorney for Defendant
   GENZYME CORPORATION
   E-mail:
   akinsey@bkflaw.com

**Signature Certification:**

        Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Ann Kinsey, counsel for Genzyme Corporation, and that I have obtained Ms. Kinsey's authorization to affix her electronic signature to this document.

                                    Dated:  April 28, 2017

                                    Respectfully Submitted,

                                    SHEPPARD, MULLIN, RICHTER &
                                    HAMPTON LLP

                                    By: /s/ Matthew S. McConnell
                                           Matthew S. McConnell

                                       Attorney for Plaintiff
                                       MEDICINOVA, INC.
                                        E-mail:
                                        mmcconnell@sheppardmullin.com

-185-