FILED

18 JAN -5 PM 1:00

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: RMC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDICINOVA, INC., a Delaware corporation,<br><br>        Plaintiff,<br>v.<br>GENZYME CORPORATION, a Massachusetts corporation,<br><br>        Defendant. | Case No.: 14cv2513-JLS(KSC)<br><br>**ORDER RE MOTION FOR RELIEF ARISING FROM VIOLATION OF THE [STIPULATED] PROTECTIVE ORDER [Doc. No. 60];**<br><br>**ORDER RE JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE (RE PLAINTIFF'S REQUEST FOR SUBSTITUION OF AN EXPERT) [Doc. No. 67]** |

  Before the Court are: (1) defendant's Motion for Relief Arising from Violation of the [Stipulated] Protective Order [Doc. No. 60], along with plaintiff's Opposition thereto and defendant's Reply [Doc. Nos. 62, 63]; and (2) the parties' Joint Motion for Determination of Discovery Dispute re plaintiff's request for an order allowing substitution of an expert [Doc. No. 67]. For the reasons outlined below, the Court finds that defendant's Motion for Relief Arising from Violation of the [Stipulated] Protective Order must be GRANTED in part and DENIED in part. [Doc. No. 60.] The Court also finds that plaintiff's request for an order allowing substitution of an expert must be GRANTED. [Doc. No. 67.]

1

## Background

Plaintiff's First Amended Complaint includes causes of action against defendant for breach of contract and breach of the covenant of good faith and fair dealing. [Doc. No. 13, at p. 1.] Both of these causes of action are based on defendant's alleged breach of a written Assignment Agreement dated December 19, 2005 between defendant and Avigen, Inc. [Doc. No. 13, at pp. 1-6.] "On or about December 18, 2009, Avigen, Inc. merged with [plaintiff]. As a result, [plaintiff] assumed all rights under the Assignment Agreement. . . ." [Doc. No. 13, at p. 3.]

Under the Assignment Agreement, plaintiff acquired "certain gene therapy intellectual property and gene therapy research and developmental programs." [Doc. No. 13, at p. 2.] In return, plaintiff is entitled to "certain milestone payments" based on the development of products that use the acquired intellectual property and technology. [Doc. No. 13, at p. 3.] "[A] milestone payment is due under the Assignment Agreement when the first patient is dosed or treated in a Phase I clinical study with a product that is covered by a claim of one of the Gene Therapy Patents issued in certain major markets, including the United States. . . ." [Doc. No. 13, at p. 3.] Specifically at issue in the First Amended Complaint are: (1) an AAV vector technology, which provides "a mechanism for transferring genes into a targeted set of cells within a patient in order to potentially treat a variety of diseases" [Doc. No. 13, at p. 3]; and (2) the '237 Patent and other related patents. [Doc. No. 13, at pp. 3-4.] According to the First Amended Complaint, certain claims in the '237 patent cover the AAV vector technology. [Doc. No. 13, at p.4.]

The First Amended Complaint alleges that defendant advised plaintiff in March 2014 that it "was currently conducting a Phase 1 clinical trial of a gene therapy product . . . named AAV-sFLT" and that all patients in the clinical trial "had already been dosed with AAV-sFLT." [Doc. No. 13, at p. 3.] However, defendant did not provide plaintiff "with any of the technical details of its AAV-sFLT technology" and

failed to make the $1,000,000 milestone payment under the Assignment Agreement. [Doc. No. 13, at p. 4.]

The First Amended Complaint also states as follows: "To date, [defendant] has never provided [plaintiff] with any of the underlying records or documentation concerning AAV-SFLT or its clinical trial, and [plaintiff] does not independently have access to such records and documentation. Until [plaintiff] obtains access to these records and documentation, [plaintiff] cannot fully assess whether any additional Gene Therapy Patents in the Assignment Agreement were breached by [defendant] during the AAV-sFLT clinical trial." [Doc. No. 13, at p. 4.]

## *Discussion*

### I. *Defendant's Motion for Relief Arising re Protective Order Violation.*

#### A. *Background.*

On January 31, 2017, a stipulated Protective Order was entered in this case to facilitate the exchange of confidential documents and information between the parties. [Doc. No. 42.] The Protective Order states in part as follows:

> **II. DESIGNATION AND TREATMENT OF PROTECTED MATERIALS**
>
> 6. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, the Receiving Party may disclose any information or item designated 'Confidential' only to 'Qualified Persons,' who are defined to consist solely of:
>
> \* \* \* \*
>
> e. Experts (as defined in this Stipulated Protective Order) of the Receiving Party who have been approved in accordance with Section III, below, and their administrative support staff, if any, to whom disclosure is reasonably necessary for this litigation and who have signed the 'Acknowledgement and Agreement to Be Bound by Protective Order' (Exhibit A);
>
> \* \* \* \*
>
> 21. All Disclosure or Discovery Materials shall be used solely for the purpose of this litigation. Except by consent of the Producing Party or

3

order of the Court, such discovery materials shall not be used by any Party other than the Producing Party for any outside purpose, including, without limitation, any outside business or outside commercial purpose.

* * * *

## III. EXPERTS AND CONSULTANTS

1. The right of any independent expert to receive any 'Confidential' or 'Highly Confidential' information will be subject to the advance approval of such expert by the producing party or by permission of the Court. The party seeking approval of an independent expert must provide the producing party with the name and *curriculum vitae* of the proposed independent expert, and an executed copy of the form attached hereto as Exhibit A, in advance of providing any 'Confidential' or 'Highly Confidential' information of the producing part to the expert. Any objection by the producing party to an independent expert receiving 'Confidential' or 'Highly Confidential' information must be made in writing within seven (7) days following receipt of the identification of the proposed expert. 'Confidential' or 'Highly Confidential' information may be disclosed to an independent expert if the seven (7) day period has passed and no objection has been made. The approval of independent experts must not be unreasonably withheld.

[Doc. No. 42, at pp. 6-7; 13-14.]

The Protective Order defines "Expert" as follows: "a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this action and who has been approved to receive Protected Material in accordance with Section III . . . ."
[Doc. No. 42, at p. 4.]

Exhibit A to the Protective Order is a form entitled Acknowledgement and Agreement to be Bound by the Protective Order (the Acknowledgment). [Doc. No. 42, at p. 15.] The Acknowledgment reads in part as follows:

> I . . . declare under penalty of perjury that I have read in its entirely and understand the Stipulated Protective Order . . . .

>I agree to comply with and to be bound by all of the terms of the Stipulated Protective Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt of court.
>
>I will not utilize any stamped confidential document or other information subject to the Protective Order for any purpose other than this litigation. I further affirm that I will not reveal the confidential information to, nor discuss it with, anyone, except in accordance with the terms of the Protective Order.
>
>I further agree to submit to the jurisdiction of the United States District Court for the Southern District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

[Doc. No. 42, at p. 15.]

On June 30, 2017, plaintiff designated Dr. Anthony Davies (Dr. Davies) as an expert witness in accordance with the Court's Scheduling Order. [Doc. No. 62, at p. 5.] Later, on August 14, 2017, as provided in the Scheduling Order, plaintiff served defendant with an expert report prepared by Dr. Davies. A copy of Dr. Davies' *curriculum vitae* was included as an exhibit to his expert report. At this time, defendant realized that plaintiff had not complied with the Protective Order, because Dr. Davies' expert report indicated he had reviewed defendant's confidential and/or highly confidential information, but defendant had not previously received a signed Acknowledgement from Dr. Davies or a copy of his *curriculum vitae*. [Doc. No. 60-1, at pp. 6-7; Doc. No. 62, at p. 5.] Based on the information provided in this *curriculum vitae*, defendant believes that Dr. Davies is a "competitor and a consultant to other companies in the same field as [defendant]." [Doc. No. 60-1, at pp. 7-8.] As a result, defendant represents that it would have objected to allowing Dr. Davies to have access to its confidential information and would have "demanded" more information from plaintiff to "assess in detail the potential conflict and harm." [Doc. No. 60-1, at pp. 13-14.]

On August 15, 2017, defendant sent a letter to plaintiff demanding that defendant retrieve any confidential documents provided to Dr. Davies and instruct Dr. Davies to stop any further work on the case. [Doc. Nos. 60-4, at p. 3; 62, at pp. 5-6; 62-1, at p. 8.] Defendant also demanded a list of any person or entity who had received consulting or other services from Dr. Davies since January 1, 2016 ("Dr. Davies' client list") and an executed copy of the Acknowledgment to the Protective Order, along with a certification as to when the form was signed. In addition, defendant threatened to move for sanctions and/or disqualification of Dr. Davies. [Doc. Nos. 62, at p. 6; 62-1, at pp. 8-9.]

The next day, on August 16, 2017, plaintiff responded to defendant's letter and enclosed "[a] copy of Dr. Davies' signed acknowledgement and agreement to be bound by the protective order." [Doc. No. 60-9, at p. 2.] Plaintiff's response letter also includes assurances that Dr. Davies understood his obligations under the Protective Order and had not disclosed or disseminated any confidential documents to anyone. [Doc. No. 60-9, at p. 2.] On the other hand, plaintiff's August 16, 2017 letter does not specifically address plaintiff's request to review Dr. Davies' client list. [Doc. No. 61-1, at pp. 10-11.]

Defendant claims plaintiff's August 16, 2017 letter confirms that "Dr. Davies never executed [the Acknowledgment] . . . to the Protective Order prior to his review and preparation of his expert report." [Doc. No. 60-1, at p. 8.] Plaintiff concedes that it inadvertently failed to have Dr. Davies sign the Acknowledgement before he prepared his expert report. However, Dr. Davies did sign the Acknowledgment as soon as this error was brought to plaintiff's attention. The record also indicates that plaintiff did not provide defendant with a copy of Dr. Davies' *curriculum vitae* in a timely manner as required by the Protective Order. This, in turn, prevented defendant from exercising its right under the Protective Order to object to the disclosure of its confidential documents to Dr. Davies. [*See, e.g.*, Doc. No. 62, at pp. 7, 12, 15; Doc. No. 62-1, at pp. 2-3; Doc. No. 60-9, at pp. 2-3; Doc. No. 67, at p. 4.] At a minimum, defendant represents that it would have requested more information from plaintiff about Dr. Davies' work activities in order to assess any potential conflict or risk of harm. [Doc. No. 60-1, at p. 14.]

6

On August 18, 2017, the parties met and conferred by telephone and defendant again demanded access to Dr. Davies' client list. [Doc. No. 62-1, at p. 4.] Plaintiff advised defendant that it would only be able to provide a full client list for Dr. Davies if it was designated "Highly Confidential—Attorneys' Eyes Only." [Doc. Nos. 62, at p. 7; 62-1, at p. 4.] According to plaintiff, Dr. Davies needed to protect the identity of some of his clients "due to specific contractual arrangements." [Doc. No. 62-1, at p. 4.] Defendant "flatly refused" this offer, because the "Highly Confidential—Attorneys' Eyes Only" designation would preclude its in-house counsel from reviewing Dr. Davies' client list. [Doc. Nos. 62, at p. 12; 62-1, at p. 4; 63, at p. 6.] For some unexplained reason, defendant's position is that plaintiff's offer to make Dr. Davies' client list available to outside counsel only "would not be useful." [Doc. Nos. 63, at p. 6; 63-1, at p. 3.]

Under the circumstances, plaintiff offered to withdraw its designation of Dr. Davies and substitute a second expert, Dr. Scott R. Burger (Dr. Burger), if defendant would agree to extend the deadlines for completing expert discovery. [Doc. No. 62, at p. 8.] Plaintiff's counsel believed defense counsel was in agreement with this proposal. [Doc. Nos. 62, at p. 8; 62-1, at p. 4.] As a result, plaintiff provided defendant with Dr. Burger's *curriculum vitae* and an executed copy of the Acknowledgment. [Doc. No. 62, at p. 8.]

Defendant responded that it would not agree to the proposed substitution of Dr. Burger and was still in the process of evaluating Dr. Davies. Once again, defendant demanded a copy of Dr. Burger's client list and refused to agree to extend the time for completing expert discovery. [Doc. No. 62, at p. 9.] Defendant also refused to allow Dr. Burger to have access to any of its confidential documents. [Doc. No. 62, at p. 9.] Therefore, Dr. Burger prepared an expert report based on publicly available information, and plaintiff served defendant with Dr. Burger's report on August 31, 2017 in order to comply with the deadline in the Second Amended Scheduling Order. [Doc. Nos. 62, at pp. 9; 57 at p. 1.] On the same day, and apparently without warning to defendant,

plaintiff filed and served its Motion for Relief Arising from a Violation of the Protective Order.[1] [Doc. No. 62, at p. 9; Doc. No. 60.]

After serving defendant with Dr. Burger's expert report, plaintiff instructed Dr. Davies to destroy or return all of defendant's confidential documents, including any notes he made while reviewing these documents. At the time plaintiff filed its Opposition to defendant's Motion, this process was underway but had not yet been completed. [Doc. No. 62, at p. 9.]

### B. *Standards for Imposing Monetary and Other Sanctions.*

As noted above, defendant threatened to seek disqualification of Dr. Davies as an expert in this case. Defendant's refusal to allow plaintiff to substitute Dr. Burger in place of Dr. Davies suggests that defendant may also seek disqualification of Dr. Burger. Preliminarily, the Court notes that "[d]isqualification [of an expert] is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely." *Hewlettt-Packard Co. v. EMC Corp.*, 330 F.Supp.2d 1087, 1092 (N.D. Cal. 2004). A motion for disqualification of an expert typically involves a concern about the expert's prior relationship with an opposing party. *See, e.g., Wang Laboratories, Inc. v. CFR Associates, Inc.*, 125 F.R.D. 10 (1989) (barring plaintiff's former employee from acting as defendant's expert as to software developed during his employment by plaintiff under a confidentiality agreement). Here, defendant's concern is the potential for misuse of confidential information or trade secrets by a possible competitor. Ordinarily, the procedures set forth in a stipulated Protective Order, such as the one in this case, are enough to protect the parties' confidentiality concerns in this regard. *Leadership Studies, Inc. v. Blanchard Training & Dev., Inc.*, No. 15CV1831-WQH(KSC), 2017 WL 2819847, at *9 (S.D. Cal. June 28, 2017), citing *A. Farber & Partners, Inc. v. Garber,*

---

[1] Rather than a surprise motion, Chambers' Rules require the parties to submit disputes involving discovery matters in the form of a joint motion. *See* Chambers' Rule V.

8

14cv2513-JLS(KSC)

234 F.R.D. 186, 191 (C.D. Cal. 2006). However, the Court can also enter a protective order under Federal Rule of Civil Procedure 26(c)(1)(G) to prohibit disclosure of confidential commercial information or trade secrets. Fed.R.Civ.P 26(c)(1)(G). When a party seeks a protective order to preclude disclosure of confidential information to prevent potential misuse by a competitor, the Court must balance conflicting interests. In this case, the Court would have balanced the risk of disclosure to an expert who might qualify as a competitor against the risk that protecting defendant's confidential information would impair plaintiff's prosecution of its claims. *See e.g., Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

As plaintiff points out in its Opposition, it would be unfair if "competitor" could be defined so broadly in a narrow field, such as gene therapy, that it would threaten to disqualify anyone competent or experienced enough to express an opinion. In addition, as noted above, the agreed upon Protective Order in this case states that "[t]he approval of independent experts must not be unreasonably withheld." [Doc. No. 42, at p. 14.]

To determine whether any such expert could be precluded by a protective order from reviewing defendant's confidential information, it would be necessary for the Court "to examine factually all the risks and safeguards" to determine whether the expert "could lock-up secrets in his mind, safe from inadvertent disclosure . . . once he had read the documents." *Id.* at 1471. *See, e.g., Isis Pharmaceuticals, Inc. v. Santaris Pharma A/S Corp.*, No. 11cv2214-GPC(KSC), 2013 WL 3367575 (S.D. Cal. July 1, 2013). Although defendant objected to both Dr. Davies and Dr. Burger, demanded that Dr. Davies stop any work on the case, threatened to seek disqualification of Dr. Davies, and prohibited Dr. Burger from reviewing any of its confidential documents, defendant's Motion for Relief only seeks monetary and other sanctions for a violation of the [Stipulated] Protective Order governing the exchange of confidential information between the parties. Defendant's Motion for Relief does not request a protective order under Federal Rule 26(c)(1)(G) precluding Dr. Davies or Dr. Burger from working on the case based on the potential for misuse of its confidential information.

Federal Rule of Civil Procedure 37(b)(2) states in part as follows: "If a party . . . fails to provide or permit discovery, . . . the court where the action is pending may issue further just orders." Fed.R.Civ.P. 37(b)(2). In addition, Rule 37(b)(2)(C) states that a court "must order" a "disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(b)(2)(C). In addition, Federal Rule of Civil Procedure 16(f) states as follows: "On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: . . . (C) fails to obey a scheduling or other pretrial order." Fed.R.Civ.P. 16(f)(C).

District Courts also "have the inherent power to sanction a lawyer for a 'full range of litigation abuses.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). "'[A] district court may levy sanctions pursuant to its inherent power for 'willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 1035, quoting *Fink v. Gomez*, 239 F.3d 989, 991-993 (9th Cir. 2001). "[A] 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Evon*, 688 F.3d at 1035. The Ninth Circuit in *Evon* upheld monetary sanctions against an attorney who sought and obtained a protective order requiring him to seal and redact his client's confidential documents before filing them, but then made a "deliberate" choice not to comply with the protective order when he realized compliance "would cause him additional time and work." *Id.* at 1035.

In support of its Motion, defendant cites two unpublished decisions involving protective order violations. First, in *Allergan, Inc. v. Sandoz, Inc.*, 2011 WL 2563238 (E.D. Texas June 28, 2011), a stipulated protective order required the parties to provide written notice and an opportunity to object before disclosing confidential information to an expert or consultant. The defendants disclosed 9 of 10 experts in accordance with the

10

14cv2513-JLS(KSC)

protective order but failed to disclose a tenth expert who previously served as plaintiff's consultant. The "inadvertent oversight" was discovered at a late stage of the case when the defendants served the plaintiff with the expert's report. *Id.* at 1. An extension of time to complete expert discovery was not feasible. *Id.* at 2. Citing Rule 37, the District Court concluded that the defendant's violation of the protective order was a "discovery abuse." *Id.* at 3. To prevent prejudice to the plaintiff, the District Court issued an order striking the expert's report and precluding the expert from testifying at trial. However, the District Court declined to impose any monetary sanctions, as they would not deter future "inadvertent" conduct or cure any prejudice caused by defendants' conduct. *Id.* at 2-3.

Second, in *Life Technologies Corp. v. Biosearch Technologies, Inc.*, 2012 WL 16000393 (N.D. Cal. May 7, 2012), a patent case, the plaintiff produced confidential "inventor notebooks of the patent-in-suit" to the defendant pursuant to a local rule stating that disclosure of confidential information was limited to each party's outside counsel. The inventor notebooks were marked "Outside Attorneys' Eyes Only." *Id.* at 1. Despite the local rule and the clear designation, counsel e-mailed the inventor notebooks to the defendant's chief executive officer (CEO). The CEO downloaded the notebooks, saved them on a thumb drive, printed them, and placed the printed copies in binders. He also sent excerpts of the notebooks to other employees, who, in turn, sent them to other employees and a testifying expert witness. *Id.* at 1-2. When defense counsel realized the mistake, he instructed the CEO to destroy all copies, but did not inform plaintiff of the improper disclosure. The parties then entered into a protective order requiring immediate notice of all pertinent facts in the event that confidential materials were disseminated to unauthorized recipients. Plaintiff eventually discovered the improper disclosure and filed a motion for sanctions alleging that the defendant violated the local rule and the protective order. *Id.* at 2-5. Citing Rules 37(b) and 16(f) and noting that a showing of willfulness or bad faith was not required, the District Court partially granted the motion for sanctions. As a sanction, the District Court barred the attorney who made the improper disclosure from further access to plaintiff's confidential documents. The

11

1  District Court also imposed monetary sanctions against the defendant to cover attorney's
2  fees and costs incurred by plaintiff to prepare the motion for sanctions and to investigate
3  the unauthorized disclosure. *Id.* at 11-13 n.7.

### C. *Defendant's Request for Monetary Sanctions.*

In its Motion for Relief, defendant claims that monetary and other sanctions are appropriate under the circumstances, because plaintiff violated/"ignored" the Protective Order in an "egregious way" and, as a result, it "has been irreparably harmed" by Dr. Davies' review of its confidential and/or highly confidential information. [Doc. No. 60-1, at p. 4, 13.] In support of its position, defendant submitted a Declaration by a senior patent counsel who states that defendant "could be harmed" by Dr. Davies' review of its confidential information. [Doc. No. 60-2, at pp. 3-4.] According to the Declaration, publicly available information indicates that Dr. Davies is the CEO of a company that works in the same gene therapy field as defendant, and the clinical focus of his company's work appears to "significantly overlap" with the issues in this litigation. [Doc. No. 60-2, at pp. 3-4.] The Declaration further states that allowing Dr. Davies access to its confidential information, which includes its "proprietary methods" and its most guarded and valuable trade secrets," "could be harmful to [defendant's] competitive position in the market place." [Doc. No. 60-2, at p. 3-4.] Defendant wants the Court to impose monetary sanctions against plaintiff under Federal Rule of Civil Procedure 37 to cover the fees and costs incurred in "investigating" the violation of the Protective Order and pursuing its Motion for Relief. [Doc. No. 60-1, at p. 16.]

Defendant believes that monetary sanctions against plaintiff are particularly appropriate, because it was deprived of the opportunity provided in the Protective Order to object to allowing Dr. Davies access to its confidential materials. If plaintiff complied with the Protective Order, defendant claims it would have objected to allowing Dr. Davies to have access to its confidential materials and would have demanded more information about Dr. Davies' work activities so that it could better assess the potential conflict and potential harm to its business interests. [Doc. No. 60-1, at pp. 13-14.]

1         Plaintiff argues that defendant's Motion for Relief should be denied, because
2 plaintiff's counsel has taken all possible steps to address defendant's concerns about its
3 premature disclosure of confidential documents to Dr. Davies and defendant has not been
4 harmed by the disclosure. In addition, plaintiff disputes defendant's contention that
5 Dr. Davies is a competitor and argues that defendant's Motion for Relief was filed for
6 purposes of "gamesmanship" and "to gain some type of strategic advantage" rather than
7 to resolve a genuine dispute. [Doc. No. 62, at pp. 14, 19.]
8         Based on a review of the parties' moving, opposing, and reply papers, it is this
9 Court's view that it would not be appropriate to impose monetary sanctions against
10 plaintiff to cover any costs defendant incurred in "investigating" the Protective Order
11 violation and preparing the Motion for Relief. First, the Court cannot agree with
12 defendant's contention that plaintiff violated or "ignored" the Protective Order in an
13 "egregious way." [Doc. No. 60-1, at pp. 4, 13.] Rather, the record indicates that the
14 subject disclosure was inadvertent and not egregious. Nor is there anything in the record
15 beyond speculation to support defendant's assertion that it "has been irreparably harmed"
16 because confidential documents were disclosed to Dr. Davies. [Doc. No. 60-1, at pp. 4,
17 13.] Albeit after the fact, Dr. Davies did sign the Acknowledgment form agreeing to be
18 bound by the terms of the Protective Order. There is nothing to indicate there is any risk
19 that Dr. Davies would violate that Protective Order simply because he is involved in the
20 same gene therapy field and may have some involvement in a competitive entity.
21         Second, it is obvious from the record that plaintiff has been cooperative and has
22 made every effort to address, correct, and alleviate any risk of harm that could have
23 resulted from the inadvertent violation of the Protective Order without the Court's
24 intervention. When the error was discovered, plaintiff's counsel immediately took a
25 number of steps in a good faith effort to resolve the situation and to address any
26 objections defendant had to Dr. Davies' participation in the case as an expert with access
27 to confidential information. Most notably, plaintiff's counsel promptly sent defense
28 counsel an Acknowledgement signed by Dr. Davies indicating he agreed to be bound by

the terms of the Protective Order. In addition, plaintiff's counsel reassured defense counsel that Dr. Davies had at all times understood the confidential nature of the documents disclosed to him and did not disseminate them to anyone.

Third, when the above-cited acts of good faith were not enough to satisfy defendant, plaintiff's counsel made an undoubtedly costly decision to withdraw its preferred expert, Dr. Davies, and to retain and designate a new expert, Dr. Burger. It is apparent that this decision was made not only because of the inadvertent violation of the Protective Order but also because defendant strongly objected to Dr. Davies based on his apparent connections to the same gene therapy field that is involved in the parties' instant dispute. In this regard, defendant's letter to plaintiff on August 15, 2017 demanded that Dr. Davies stop any further work on the case. Defendant also threatened to seek sanctions and/or disqualification of Dr. Davies. Under these circumstances and the case law cited by the parties indicating that a possible sanction for this type of violation of a Protective Order could include an order striking the expert's report, it is understandable that plaintiff's counsel decided to withdraw Dr. Davies as an expert and to start fresh by replacing Dr. Davies with Dr. Burger. In other words, plaintiff has already imposed the most proportional and fair sanction on itself without the Court's intervention, so the Court will not now impose an additional monetary sanction on plaintiff just because defendant felt compelled to file a Motion to see if it could exact an even greater penalty.

Fourth, the Court is unconvinced by defendant's new argument, made for the first time in its Reply, that the Court should only consider plaintiff's replacement of Dr. Davies with Dr. Burger as a "proposed 'remedy' to the situation," because this replacement has the potential to "double the harm" to defendant. [Doc. No. 63, at p. 6.] Despite its previous, strong objection to Dr. Davies, which essentially forced plaintiff to withdraw him as an expert, defendant now contends that replacing Dr. Davies with Dr. Burger would result in the disclosure of its confidential commercial information to two third party experts instead of one, thereby increasing the risk of disclosure. [Doc. No. 63, at p. 6.] Defendant further states in its Reply that, "subject to the outcome of

14

[defendant's] review of Dr. Davies' gene therapy client information (which [defendant] has asked the Court to order), Dr. Davies *may well be the best option in a bad situation* that [plaintiff] has caused." [Doc. No. 63, at p. 6 (emphasis added).] As noted above, defendant also demanded access to Dr. Burger's client list at the same time it was seeking to block him from acting as plaintiff's expert [Doc. No. 62, at p. 9], and there is nothing to indicate this demand has been withdrawn. In addition, defendant noticed the depositions of both Dr. Davies and Dr. Burger. [Doc. No. 63-1, at p. 2.] Under these circumstances, it appears that plaintiff may be correct in its assertion that defendant's ulterior motive in filing its Motion for Relief may not be to resolve a dispute resulting from an inadvertent and harmless violation of the Protective Order, but to gain some strategic advantage, such as controlling plaintiff's choice of expert.

Finally, plaintiff also made defendant a reasonable offer to produce Dr. Davies' client list on an "attorney's eyes only" basis, but defendant refused the offer without a viable explanation, choosing instead to file its Motion for Relief. Plaintiff represented in its Opposition and in a supporting Declaration that it had offered to disclose Dr. Davies' client list on an "attorney's eyes only" basis, explaining that "specific contractual arrangements" required Dr. Davies to protect the identity of certain clients. [Doc. No. 62, at p. 7; Doc. No. 62-1, at p. 4.] With no explanation whatsoever, defendant "did not accept this proposal." [Doc. No. 63-1, at p. 2.] In its Reply, defendant states only that providing this information to outside counsel only "would not be useful to allow [defendant] to assess the harm. . . ." [Doc. No. 63, at p. 6.] Without more, it is simply untenable that outside counsel would be incapable of reviewing Dr. Davies' client list with comparative information from defendant's inside counsel to determine whether there is any real potential for harm or any real basis to object to Dr. Davies as plaintiff's expert. [Doc. Nos. 63, at p. 6; 63-1, at p. 3.] In this Court's view, defendant's position borders on a violation of the provision of the Protective Order which states that "[t]he approval of independent experts must not be unreasonably withheld." [Doc. No. 42, at p. 14.] Accordingly, under the circumstances presented, the Court finds that an award of

15

14cv2513-JLS(KSC)

monetary sanctions against plaintiff would be unjust. As a result, the Court finds that defendant's Motion for Relief must be DENIED to the extent it seeks monetary sanctions against plaintiff.

## D. *Defendant's Request for Other Orders.*

Defendant requests that the Court impose a list of other "sanctions" against plaintiff. Specifically, defendant wants the Court to order plaintiff to: (1) retrieve any confidential documents it provided to Dr. Davies; (2) require Dr. Davies to disclose his client list; and (3) preclude Dr. Davies from using defendant's confidential information in any way. [Doc. No. 60-1, at p. 15.]

Defendant's request for an order precluding Dr. Davies from using defendant's confidential information in any way is unnecessary. Dr. Davies has already signed the Acknowledgment form agreeing to be bound by the Protective Order. The Acknowledgment and Protective Order already precludes Dr. Davies from using defendant's confidential information in any way and provides defendant with a remedy in the event an authorized use of its confidential information does occur.

Defendant's request for an order requiring Dr. Davies to disclose his client list is also unnecessary. It is the Court's understanding that Dr. Davies is no longer acting as an expert witness or consultant in this case, and, as noted above, he has agreed to be bound by the terms of the Protective Order. The Court has no reason to even suspect that Dr. Davies would violate the Protective Order simply because he has some involvement in the same gene therapy field as defendant. In addition, plaintiff made a reasonable offer to provide this information on an attorney's eyes only basis, but defendant refused the offer.

Defendant's request for an order requiring plaintiff to retrieve any confidential documents it provided to Dr. Davies is reasonable under the circumstances. Although plaintiff's counsel represented in the Opposition that he contacted Dr. Davies and asked him to destroy or return all of defendant's documents, including any notes he made based on his review of the documents, this process was not completed at the time the parties'

16

14cv2513-JLS(KSC)

papers were filed. As a result, the record is unclear. Accordingly, the Court finds that defendant's Motion for Relief must be GRANTED to the extent it seeks confirmation from plaintiff that Dr. Davies destroyed or returned all of defendant's confidential documents and information.

## II. *Plaintiff's Request to Compel Substitution of Dr. Burger.*

In a Joint Motion for Determination of Discovery Dispute filed after defendant's Motion for Relief [Doc. No. 67], plaintiff seeks an order compelling defendant to approve Dr. Burger's involvement in this case as an expert in place of Dr. Davies. [Doc. No. 67, at pp. 1-10.] In reaching a determination on the parties' Joint Motion, the Court has also considered the information outlined above that was submitted in connection with defendant's related Motion for Relief. As mentioned above in connection with defendant's prior Motion for Relief and in the parties' Joint Motion [Doc. Nos. 60, 67], defendant's main objection to the substitution of Dr. Burger in place of Dr. Davies is that it has not had an opportunity to review Dr. Burger's client information. [Doc. No. 67, at pp. 10-21.]

Based on the foregoing, and for good cause shown, the Court finds that plaintiff's request must be GRANTED and that Dr. Burger must be permitted to substitute into the case as plaintiff's expert in place of Dr. Davies. However, the Court also finds that plaintiff should be required to provide defendant with Dr. Burger's client list for any consulting work he has done in the gene therapy field from January 1, 2016 through the present. As part of his client list, Dr. Burger must also reveal whether he previously completed any consulting or other work for Avigen, Inc. [*See* Doc. No. 13, at pp. 2-3.] With the exception of any consulting work he completed for Avigen, Inc, plaintiff may provide Dr. Burger's client list to defendant on an "attorney's eyes only" basis.

If defendant does not object in writing within seven (7) days following receipt of Dr. Burger's client list, plaintiff may permit Dr. Burger to review defendant's confidential and/or highly confidential documents or information. As stated in the Protective Order, "[t]he approval of independent experts must not be unreasonably

17

14cv2513-JLS(KSC)

withheld." [Doc. No. 42, at p. 13-14.] Dr. Burger may not be denied access to defendant's confidential and/or highly confidential documents or information solely because he is involved in the same or similar gene therapy field as defendant and/or because he has done consulting work with a competitor of defendant.

Both parties have also requested attorney's fees and costs in connection with the filing of the Joint Motion, but for the reasons outlined in Section I, the Court finds that imposing monetary sanctions against either party would be unjust. Accordingly, the Court finds that the parties' requests for monetary sanctions must be DENIED.

## *Conclusion*

Under the circumstances presented, IT IS HEREBY ORDERED that:

1. Defendant's Motion for Relief Arising from Violation of the Protective Order is GRANTED in part and DENIED in part. [Doc. No. 60.]

2. Defendant's request for an order compelling Dr. Davies to disclose his client list and precluding Dr. Davies from using any of defendant's confidential information is DENIED as unnecessary. Dr. Davies is no longer acting as plaintiff's expert in this case and has signed the Acknowledgment form indicating he has agreed to be bound by the terms of the Protective Order.

3. Defendant's request for an order requiring Dr. Davies to return or destroy any of defendant's confidential documents or information in his possession is GRANTED. Although plaintiff's Opposition to defendant's Motion states that Dr. Davies was directed to destroy or return all of defendant's documents and any notes he made while reviewing the documents, this process was incomplete as of the date plaintiff's Opposition was filed. Defendant is entitled to reassurance that this process was completed. Therefore, ***no later than January 19, 2018***, plaintiff's counsel shall provide defendant's counsel with a declaration by Dr. Davies under penalty of perjury stating that all of defendant's confidential documents and information that he received in connection with this case, including any notes he made based on the information contained therein, have either been destroyed or returned to plaintiff's counsel. Dr.

1  Davies' declaration shall include an explanation as to what steps have been taken to
2  ensure that he no longer possesses or has access to any of defendant's confidential
3  documents or information.

4.  Plaintiff's request for an order allowing Dr. Burger to substitute into the case as an expert is GRANTED. [Doc. No. 67.]

5.  ***No later than January 26, 2018***, plaintiff shall provide defendant with Dr. Burger's client list for any consulting work he performed in the gene therapy field from January 1, 2016 through the present on an "attorney's eyes only" basis pursuant to the Protective Order. As part of the client list, Dr. Burger shall state whether he previously completed any consulting or other work for Avigen, Inc. [*See* Doc. No. 13, at pp. 2-3.]

6.  The parties' respective requests for monetary sanctions are DENIED, because the Court finds based on the record as presented that an award of monetary sanctions against either party would be unjust.

IT IS SO ORDERED.

Dated: January 5, 2018

Hon. Karen S. Crawford
United States Magistrate Judge