1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11   MEDICINOVA, INC.,                        Case No.: 14-CV-2513 JLS (KSC)
     a Delaware Corporation,
12                                            **ORDER (1) DENYING**
                               Plaintiff,     **DEFENDANT'S MOTION FOR**
13                                            **ATTORNEYS' FEES UNDER 35**
     v.                                       **U.S.C. § 285 AND (2) GRANTING IN**
14                                            **PART AND DENYING IN PART**
     GENZYME CORPORATION,                     **DEFENDANT'S BILL OF COSTS**
15   a Massachusetts Corporation,
16                               Defendant.
                                              (ECF Nos. 158–159)
17

18

19          Presently before the Court are Defendant Genzyme Corporation's Motion for

20   Attorneys' Fees Under 35 U.S.C. § 285 ("Mot.," ECF No. 158-1) and Bill of Costs ("Bill,"

21   ECF No. 159).  Plaintiff Medicinova, Inc. filed a Response in Opposition to ("Fees Opp'n,"

22   ECF No. 162) the Motion, and Defendant filed a Reply in Support of ("Reply," ECF No.

23   163) the Motion.  Plaintiff also filed an Opposition in Part to Defendant's Bill of Costs

24   ("Costs Opp'n," ECF No. 161).  The Court took the matter under submission without oral

25   argument pursuant to Civil Local Rule 7.1(d)(1).  *See* ECF No. 164.  After considering the

26   Parties' arguments and the law, the Court **DENIES** Defendant's Motion and **GRANTS IN**

27   **PART AND DENIES IN PART** Defendant's Bill of Costs, as set forth below.

28   / / /

                                             1

# BACKGROUND

## I.   Factual Background

### A.   U.S. Patent No. 6,376,237 (the "'237 Patent")

Through gene therapy, physicians aim "to treat disease by infecting a patient's body with genetic material designed to produce therapeutic material that treats the disease." Declaration of M. Curt Lambert in Support of Defendant's Brief ("Lambert Decl."), Ex. K at 504.1.[1]   There are various ways to introduce this therapeutic genetic material, sometimes referred to as a "heterologous gene," *see* Lambert Decl., Ex. A ("'237 patent") at 9:3–20, into a patient's body, one of which involves the use of recombinant viruses. *Id.* at 2:1–7. A recombinant virus is "a virus that has been genetically altered, *e.g.*, by the addition or insertion of a heterologous nucleic acid construct into the particle." *Id.* at 8:12–14.

One means of viral-mediated gene delivery is the use of adeno-associated virus ("AAV") vectors.  *Id.* at 2:7–9, 15–16.   There are various benefits to using AAV as compared to other viruses. *Id.* at 2:17–18.   For example, AAV can "infect a wide range of host cells, including non-dividing cells"; can "infect cells from different species"; "has not been associated with any human or animal disease[;] and does not appear to alter the biological properties of the host cell upon integration." *Id.* at 2:18–23.   Further, AAV is "stable at a wide range of physical and chemical conditions." *Id.* at 2:26–27.

AAV contains a single-stranded deoxyribonucleic acid ("DNA") molecule. *Id.* at 2:28–29.   The AAV genome comprises an internal, non-repeating genome that is flanked on either end by inverted terminal repeats ("ITRs"). *Id.* at 2:29–31.   The non-repeating genome is itself comprised of AAV replication ("rep") and capsid ("cap") genes, which code for viral proteins, allowing the virus to replicate and package, respectively, its viral genome into a virion. *Id.* at 2:36–40.   AAV may be engineered to deliver a therapeutic heterologous gene by deleting the internal, non-repeating portion of the AAV genome, *i.e.*,

---

[1] In citing to Defendant's supporting materials, except for deposition transcripts and patents, the Court cites to the consecutive pagination provided by Defendant and stamped at the bottom of each page.

the rep and cap genes, and inserting the heterologous gene between the two ITRs. *Id.* at 2:59–62. This is referred to as an AAV vector. *See id.* at 6:64–7:10.

To produce an infectious recombinant AAV ("rAAV") containing the heterologous gene, the AAV vector and two other components must be introduced to a suitable host cell. *See id.* at 3:1–10. One of these additional components is a vector, called the "AAV helper construct," *see id.* at 7:22–40, which contains the AAV rep and cap genes that were replaced in the AAV vector with the heterologous gene. *See id.* at 3:3–7. The other necessary component is a vector containing accessory function genes. *See id.* at 3:7–10. Accessory functions are "non-AAV derived viral and/or cellular functions upon which AAV is dependent for its replication," *id.* at 7:41–43, and the vector containing those accessory function genes is an "accessory function vector." *Id.* at 8:1–3.

Once these three vectors have been introduced to the host cell, the heterologous gene is replicated and packaged into a recombinant virion. *Id.* at 3:11–13. The rAAV virions can then be used to treat a patient by infecting the patient's cells. *Id.* at 3:13–14. The heterologous gene enters and is expressed by the patient's cells but, because the patient's cells lack the AAV rep and cap genes and helper virus accessory function genes necessary for the rAAV to replicate and package its genome, the rAAV do not further replicate within the patient's cells. *Id.* at 3:15–19. The absence of AAV rep and cap genes in the patient's cells also means that the patient's cells will not produce unwanted wild-type or pseudo-wild-type AAV. *Id.* at 3:19–21.

Methods of producing rAAV as of the '237 patent's filing, however, presented significant problems, including that they produced too few rAAV to be therapeutically useful and resulted in the production of replication-competent pseudo-wild-type AAV. *See id.* at 3:22–29. Although many attempts had been made to address the formation of pseudo-wild-type AAV, none had succeeded. *See id.* at 3:36–37. Indeed, the stocks resulting from U.S. Patent No. 5,753, 500 (the "'500 patent"), filed on April 3, 1995 by Thomas E. Shenk *et al.*, yielded between 0.01 and 10% wild-type AAV, a level of contamination that would be unacceptable for human trials. *See id.* at 3:38–47.

The invention claimed by the '237 patent was intended to correct these deficiencies by "provid[ing] AAV helper functions for rAAV production that do not result in the formation of pseudo-wild-type AAV" and "that allow high efficiency production of rAAV." *See id.* at 3:48–56. "The rAAV virions produced using the present invention may be used to introduce genetic material into animals, including humans, or isolated animal cells for a variety of research and therapeutic uses." *Id.* at 4:42–45. "For example, rAAV virions produced using the methods of the present invention may be used to express a protein in animals to gather preclinical data or to screen for potential drug candidates." *Id.* at 4:45–48. "Alternatively, the rAAV virions may be used to transfer genetic material into a human to cure a genetic defect or to effect a desired treatment." *Id.* at 4:48–51.

Dr. Peter Colosi filed Application No. 09/450,083 on November 29, 1999, which issued as the '237 patent on April 23, 2002. *See generally* '237 patent. The '237 patent was itself a continuation of Application No. 09/143,270, filed on August 28, 1998, which issued as U.S. Patent No. 6,001,650 (the "'650 patent"), itself a continuation of Application No. 09/107,708, filed on June 30, 1998, which issued as U.S. Patent No. 6,027,931 (the "'931 patent"), itself a continuation of Application No. 08/688,648, filed on July 29, 1996, and subsequently abandoned, itself a continuation of Application No. 08/510,790, filed on August 3, 1995, which issued as U.S. Patent No. 5,622,856. *See* '237 patent at 1:1–13.

The '237 patent, titled "High-Efficiency Wild-Type-Free AAV Helper Functions," contains seventeen claims, four of which are independent. *See generally id.* at 23:10–24:65. Each of the seventeen claims begins with the phrase "[a] stock of recombinant adeno-associated virus." *See generally id.*

## B. The Assignment Agreement

In 2005, Defendant entered into a written Assignment Agreement (the "Agreement") with Avigen, Inc. ("Avigen"). First Am. Compl. ("FAC," ECF No. 13) ¶ 6. Under the Agreement, Defendant "acquired from Avigen certain gene therapy intellectual property and gene therapy research and developmental programs. Avigen, in turn, received
/ / /

4

consideration upfront and was eligible for specified milestone payments should certain events and/or conditions be met in the future." *Id.* ¶ 7.

The technology acquired by Defendant per the Agreement included the '237 patent. *Id.* ¶ 13. Defendant owes a milestone payment to Plaintiff under the Agreement "when the first patient is dosed or treated in a Phase I clinical study with a product that is covered by a claim of one of the Gene Therapy Patents [*i.e.*, the '237 patent] issued in certain major markets," such as the United States. *Id.* ¶ 10.

In 2009, Avigen merged with Plaintiff and Plaintiff assumed all rights under the Agreement, including rights to milestone payments. *Id.* ¶ 11. In March 2014, Defendant informed Plaintiff that Defendant was "currently conducting a Phase 1 clinical trial of a gene therapy product for age-related macular degeneration named AAV-sFLT. [Defendant] explained that all patients in the clinical trial had already been dosed with AAV-sFLT." *Id.* ¶ 12.

Plaintiff alleges that Defendant owes it the $1,000,000 milestone payment because AAV-sFLT is covered by the Agreement. *Id.* ¶ 16. As a result, Plaintiff alleges Defendant breached the Agreement by not paying Plaintiff. *Id.* ¶ 22. Defendant, on the other hand, contends that AAV-sFLT is not covered by the '237 patent and, consequently, no milestone payment is owed. *See, e.g.*, Mot. at 2 n.1.

## II.   Procedural History

On October 21, 2014, Plaintiff filed a complaint against Defendant alleging two causes of action for breach of contract and breach of the covenant of good faith and fair dealing. *See generally* ECF No. 1 ("Compl."). Although nominally a breach of contract action, Plaintiff conceded in its Complaint that its "right to relief depends on resolution of a substantial question of federal patent law." *Id.* ¶ 1.

Defendant moved to dismiss, *see generally* ECF No. 3, a request that the Honorable M. James Lorenz granted with leave to amend. *See generally* ECF No. 9. Plaintiff filed the operative First Amended Complaint on September 4, 2015. *See generally* ECF No. 13. After Defendant filed its answer on September 28, 2015, *see generally* ECF No. 17, the

Parties engaged in an Early Neutral Evaluation conference, *see* ECF No. 23, and proceeded to discovery. *See, e.g.*, ECF Nos. 25, 35.

On August 9, 2017, the case was reassigned to this Court. *See generally* ECF No. 55. On November 20, 2017, Defendant moved for summary judgment as to both of Plaintiff's causes of action. *See generally* ECF Nos. 70, 96. Because Defendant sought claim construction of the patent term "a stock of recombinant adeno-associated virus" as part of its motion for summary judgment, the Court set a status conference for April 19, 2018, to discuss the necessity of a claim construction hearing. *See generally* ECF No. 89. Following the hearing, the Court ordered the Parties to file a joint claim construction chart, *see* ECF No. 90, which they filed on May 3, 2018. *See generally* ECF No. 93.

In the initial joint claim construction chart, Plaintiff proposed that the disputed term "has a plain and ordinary meaning to one of ordinary skill in the art and no construction is necessary." *Id.* at 1. Defendant, on the other hand, proposed that the disputed term either (1) "excludes recombinant adeno-associated virus made using accessory functions derived from the herpes simplex type-1 (HSV-1) virus," or (2) means "[a] stock of recombinant adeno-associated virus virions," to which the '237 patent's express definitions for a "recombinant AAV virion" and "accessory functions" would apply. *See id.* at 1–3.

On June 6, 2018, the Court requested additional briefing from Plaintiff concerning Defendant's argument that "[p]rior art cited in the patent demonstrates that the invention is directed to rAAV virions," *see* ECF No. 97, in response to which Plaintiff filed a supplemental brief. *See generally* ECF No. 100. On June 11, 2018, the Court invited the Parties to provide a tutorial or preliminary statement concerning the '237 patent and underlying technical issues. *See generally* ECF No. 98.

The Court held a hearing on Defendant's motion for summary judgment and the related claim construction issue on August 6, 2018. *See generally* ECF No. 111. At the end of the hearing, after months of briefing and hours of oral argument, *see generally* ECF Nos. 70, 86, 87, 93, 100, 113, Plaintiff's counsel contended that it had "not fully briefed / / /

claim construction" and requested "the opportunity to have additional briefing on this subject." ECF No. 113 ("Aug. 6, 2018 Tr.") at 91:14–25. Consequently, the Court found that "it d[id] not have adequate information to engage in a sufficient claim construction analysis," denied without prejudice Defendant's motion for summary judgment, *see* ECF No. 112 at 1, and set a second claim construction hearing. *See* ECF No. 115.

In January 2019, Plaintiff and Defendant filed opening claim construction briefs, *see generally* ECF Nos. 126, 123, and they subsequently filed their corresponding responses to one other's claim construction briefs. *See generally* ECF Nos. 134–35. Plaintiff also filed a motion to strike portions of Defendant's opening claim construction brief, *see generally* ECF No. 130, to which Defendant filed an opposition, *see generally* ECF No. 132. Specifically, Plaintiff complained that it was unable to address Defendant's new exhibits and novel arguments contained in the opening claim construction brief. ECF No. 130 at 8. Defendant countered by noting that the "new" exhibits were part of the prosecution history of the '237 patent. ECF 132 at 6–10.

Regarding Plaintiff's motion to strike, the Court held that Plaintiff had not met its burden of showing that exclusion was warranted because Plaintiff had had the 239-page prosecution history of the '237 patent for over two years. ECF 148 at 9–10. Accordingly, the Court denied Plaintiff's motion. *Id.* at 9. Regarding claim construction, the Court adopted Defendant's proposed construction. *Id.* at 42.

On September 17, 2019, the Parties entered a joint motion for judgment in favor of Defendant so that Plaintiff could appeal the decision. *See generally* ECF 150. Plaintiff then appealed to the Federal Circuit, seeking reversal of the Court's claim construction. *See generally Medicinova, Inc. v. Genzyme Corp.*, No. 20-1064 (Fed. Cir. Oct. 21, 2019). The appellate court, however, affirmed the Court's decision. *Medicinova, Inc. v. Genzyme Corp.*, 831 F. App'x 506, 506 (Fed. Cir. 2020) (per curiam).

On February 19, 2021, Defendant filed the instant Motion for Attorneys' Fees Under 35 U.S.C. § 285, alleging that Plaintiff's litigation conduct rendered the case exceptional, thus supporting an award of attorneys' fees to Defendant as the prevailing party. *See*

*generally* Mot.   Defendant also filed a Bill of Costs.   *See generally* Bill.   In response, Plaintiff filed both a Response in Opposition to the Motion, *see generally* Fees Opp'n, and an Opposition in Part to Defendant's Bill of Costs.   *See generally* Costs Opp'n.   Defendant filed a Reply in Support of the Motion.   *See generally* Reply.

## MOTION FOR ATTORNEYS' FEES

### I.   Legal Standard

Under 35 U.S.C. § 285, the court "in exceptional cases may award reasonable attorneys' fees to the prevailing party" in a patent infringement lawsuit.   The Supreme Court construed this language in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014).   Specifically, the *Octane Fitness* Court rejected the Federal Circuit's then-prevailing interpretation of the "exceptional case" language as "rigid and mechanical."   *Id.* at 553.   The Court held that the prior method "impermissibly encumber[ed] the statutory grant of discretion to district courts."   *Id.   Octane Fitness* instead established a flexible approach: "[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."   *Id.* at 555.

Under *Octane Fitness*, a case may warrant a fee award if the litigation is objectively baseless or is brought in subjective bad faith.   *Id.*   In particular, a case is "exceptional" when it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."   *Id.* at 554.   Courts may look to pre-*Octane Fitness* case law for guidance on whether a case was litigated in an unreasonable manner.   *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015).   District courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."   *Octane Fitness*, 572 U.S. at 554.   Additionally, *Octane Fitness* rejected the former requirement that patent litigants establish their entitlement to attorneys' fees by "clear and convincing evidence" in favor of a lower "preponderance of the evidence" standard.   *Id.* at 557–58.

To guide its discretion, a court may consider a nonexclusive list of factors, including: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6.  To be found frivolous, an argument must be shown to be at least objectively unreasonable at the time it was made.  *Highmark, Inc. v. Allcare Health Mgmt. Sys.*, 687 F.3d 1300, 1316 (Fed. Cir. 2012), *rev'd on other grounds*, 572 U.S. 559 (2014).  The purpose of section 285 is remedial, and it aims to compensate the winning party for the other side's litigation misconduct.  *Id.* at 1324 n1.  Hard-fought and contentious litigation does not automatically result in vexatious or bad faith conduct.  *See LG Display Co. v. AU Optronics Corp.*, 722 F. Supp. 2d 466, 474 (D. Del. 2010).

An important consideration in determining whether a case is exceptional is whether the fee-seeking party provided early notice of its belief that it was being subjected to exceptional litigation behavior.  *ThermoLife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1357 (Fed. Cir. 2019).  However, notice is not required for a case to be found exceptional.  *Id.* at 1357–58.  Determining a pattern of misconduct is not tied to a set of discrete facts, but rather to a specific type of litigation misconduct.  *Id.* at 1362.  District courts should also examine whether finding a case exceptional would further goals of compensation and deterrence.  *Id.*

*Octane Fitness* does not mandate a fee award in all exceptional cases; even if a court determines that a case is "exceptional," the court still has discretion to deny attorneys' fees.  *See ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002, 1005 (Fed. Cir. 2014) ("The Supreme Court's decision in *Octane* did not, however, revoke the discretion of a district court to deny fee awards even in exceptional cases."); *see also S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986) ("Even an exceptional case does not require in all circumstances the award of attorney fees.").

/ / /

/ / /

14-CV-2513 JLS (KSC)

## II.     Analysis

The parties do not dispute that Defendant is a prevailing party as required by section 285.  Therefore, whether to award attorneys' fees turns on whether Defendant has carried its burden to establish that this case is exceptional.

Defendant provides a litany of examples of allegedly "exceptional behavior" by Plaintiff to show that attorneys' fees should be awarded.  *See generally* Mot. at 1–9.  The Court finds that many of the examples provided are common litigation practices or honest mistakes and do not rise to the level of extraordinary conduct.[2]  However, some of Plaintiff's behavior is worth addressing in more detail.

### A.     *Plaintiff's Request that Defendant's Technical Expert Travel to Attend a Deposition Was Not Objectively Unreasonable*

Defendant argues that Plaintiff unreasonably demanded that Dr. Barry Byrne, Defendant's technical expert, travel across the state of Florida to attend his deposition in Jacksonville.  Mot. at 3.  Defendant also maintains that Plaintiff planned to seek fees and costs associated with Dr. Byrne's failure to appear at the location noticed for the deposition, which was situated about 70 miles from Dr. Byrne's clinic in Gainesville.  *Id.* at 3–4.  Defendant further alleges that Plaintiff "saw an edge in trying to force Dr. Byrne to go to Jacksonville (perhaps [Plaintiff] was hoping that [Defendant] would have to retain a substitute expert because Dr. Byrne was unable to leave his patients)."  Reply at 8.  Defendant also infers from Plaintiff's behavior that Plaintiff did not care that "Dr. Byrne was busy saving lives in Gainesville."  *Id.*  In response, Plaintiff notes that the deposition location was well within "100 miles of where the person resides, is employed, or regularly transacts business in person," as mandated by Federal Rule of Civil Procedure 45(c)(1)(A).  Fees Opp'n at 19.  Plaintiff further notes that it later changed its mind and acquiesced to Dr. Byrne's preference to be deposed in Gainesville.  *Id.* at 20.

---

[2] For example, the filing of an amended complaint is hardly a "harbinger" of extraordinary behavior to come.  *See* Mot. at 1.  Indeed, in this Court's own experience, the majority of plaintiffs file amended complaints.

Defendant's argument—that Plaintiff's request that Dr. Byrne travel 70 miles was objectively unreasonable—is unpersuasive. Although there is a general presumption that a defendant's deposition will be held in the district of his residence, the presumption is not a strong one. *Zurich Ins. Corp. v. Essex Crane Rental Corp.*, No. 90 Civ. 2263, 1991 WL 12133, at *2 (S.D.N.Y. Jan. 29, 1991). The presumption operates primarily when other factors do not favor a particular site. *Id.* In addition, although Defendant maintains that Dr. Byrne could not leave Gainesville for his deposition because he was "busy saving lives," his patients were apparently stable enough for Dr. Byrne to have time to be deposed locally.[3] *See* Reply at 8. As argued by Plaintiff, the travel distance was well within the 100 miles permitted by Rule 45 and is therefore presumptively reasonable. *See* Fed. R. Civ. P. 45; Fees Opp'n at 19; *see also Wierzbowski v. Dec*, No. 2:13-CV-0076-JAD-NJK, 2017 WL 11309545, at *1 (D. Nev. June 28, 2017) (noting that Rule 45(c) sets the "presumptively-reasonable location" for depositions). Thus, it was not objectively unreasonable for Plaintiff to request that Dr. Byrne travel for his deposition.

### B. Plaintiff's Improper Conference with Its Witness Was Objectively Unreasonable

Defendant alleges that Plaintiff improperly conferred with its expert witness, Dr. Scott Burger, during a break in testimony during his deposition, resulting in Dr. Burger changing his testimony. Mot. at 4. Upon questioning by Defendant's counsel, Dr. Burger made a concession that a stock of rAAV plasmids could not contain either wild-type or pseudo-wild-type AAV virions. *Id.* After a break, however, Dr. Burger changed his testimony. *Id.* Dr. Burger admitted that he and Plaintiff's counsel discussed the substance of questioning and that he was asked to not discuss the substance of the discussion. *Id.* at 4–5. Defendant notes that previous cases have affirmed the principle that counsel may not coach the witness on a specific response, citing *New Age Imports, Inc. v. VD Importers,*

---

[3] Also, presumably, Dr. Byrne sometimes takes time off to go on vacation or because he is ill, and he must have some protocol in place to take care of his patients in his absence.

14-CV-2513 JLS (KSC)

*Inc.*, No. CV 18-4857, 2019 WL 1427468 (C.D. Cal. Nov. 5, 2019). Mot. at 19. *New Age Imports* holds that a sharp contrast between responses before and after a break in testimony can support an inference that the witness was improperly coached. 2019 WL 1427468, at *4. Plaintiff responds that *New Age Imports* notes that there is no binding precedent in the Ninth Circuit that requires a court to prohibit witnesses from conferring with their counsel during a deposition. *See id.*; Fees Opp'n at 21. Plaintiff also maintains that improperly conferring with a witness is not sufficient to render a case extraordinary and that the authorities cited by Defendant include improper conference among a host of other improper litigation tactics. Fees Opp'n at 21–22 (citations omitted).

While it is true that there is no binding Ninth Circuit precedent holding that counsel are prohibited from conferring with their witnesses, that does not mean that the Court cannot find Plaintiff's counsel's behavior unacceptable. A plaintiff's improper conference with an expert witness, resulting in the witness changing his answer, is litigation misconduct. *See ReedHycalog UK, Ltd. v. Diamond Innovations, Inc.*, No. 08-CV-325 PATENT CASE, 2010 BL 427587, *8–9 (E.D. Tex. Aug. 12, 2010); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058-SC, 2015 WL 12942210, at *3 (N.D. Cal. May 29, 2015) ("[D]epositions are to be conducted as if the witness were testifying at trial. Courts have ruled that once a deposition begins, counsel should not confer with the witness except to determine whether a privilege should be asserted.") (citations omitted), *report and recommendation adopted*, No. C-07-5944-SC, 2015 WL 13653876 (N.D. Cal. Sept. 11, 2015), *report and recommendation adopted*, No. C-07-5944-SC, 2015 WL 13653877 (N.D. Cal. Oct. 28, 2015). If, as Plaintiff contends, Dr. Burger misspoke during his deposition, a proper way for Plaintiff to remedy the issue would have been for Plaintiff's counsel to question Dr. Burger at the conclusion of the deposition. *See Barajas v. Abbott Labs., Inc.*, No. 18-cv-00839, 2018 WL 6248550, at *4 (N.D. Cal. Nov. 29, 2018). Instead, Plaintiff chose to assert attorney-client privilege rather than clear up the record. *See* Reply at 9. The Court finds that such behavior was objectively unreasonable.

/ / /

Further, Plaintiff's argument that this incident alone does not render the case exceptional misses the mark; the entire purpose of Defendant's Motion is to determine whether the entire litigation was exceptional. Defendant does not contend that this incident alone renders the case exceptional; rather, Defendant argues that this incident, in conjunction with Plaintiff's other litigation tactics, make this an exceptional case. *See id.* at 9–10.

### C.     Plaintiff's Insufficient Notice to Witnesses for Their Appearances Was Not Objectively Unreasonable

Defendant alleges that Plaintiff untimely served subpoenas on third-party witnesses, sometimes with only three business-days' notice, resulting in the Court quashing the subpoenas. Reply at 7; Mot. at 2–3. Defendant cites to *Lucas v. Breg, Inc.*, No. 15-CV-00258, 2015 WL 8328696, at *2 (S.D. Cal. Dec. 8, 2015), where the court noted that it was unreasonable to give only ten business-days' notice for a subpoena near the discovery cut-off for an exceedingly complex case. Reply at 7. In that case, even seven business-days' notice was determined to be unreasonable. *Id.* (citing *Lucas*, 2015 WL 8328696, at *2). Plaintiff, however, notes that the magistrate judge's order quashing the subpoenas in this cas was ultimately overturned, because this Court found that the order was not sufficiently reasoned. Fees Opp'n at 18 (citing ECF No. 56). Both Parties had agreed that Defendant could take depositions past the discovery deadline, but Defendant did not allow Plaintiff the same courtesy to cure any alleged deficiencies in the timing of notice. *Id.* (citation omitted).

While three business-days' notice is certainly inconsiderate, and perhaps unprofessional, the Court concludes that this behavior does not render the case extraordinary in this instance. At the time, the discovery deadline was fast approaching, and the Parties had already agreed that Defendant could depose its witnesses after the discovery deadline. *Id.* Parties often scramble to complete discovery in civil matters in the eleventh hour. Plaintiff reasonably could have believed that Defendant had advised its deponents that the deposition deadline was quickly approaching and that the deponents

14-CV-2513 JLS (KSC)

could expect subpoenas at any moment. The fact that the Court found the magistrate judge's reasoning insufficient to sustain quashing the subpoenas also supports the conclusion that the notice was not objectively unreasonable. *Id.* For these reasons, the Court finds that Plaintiff's late notice, while poorly planned, was not objectively unreasonable.

### D.   *Plaintiff's Behavior Regarding Summary Judgment and Claim Construction*

#### 1.   *Plaintiff's Lack of Preparation for the Summary Judgment Hearing Was Not Objectively Unreasonable*

Defendant argues that Plaintiff's behavior regarding the summary judgment hearing was unreasonable. Plaintiff arrived at the hearing without being prepared to discuss claim construction. Mot. at 6. Defendant also claims that Plaintiff must have been aware that claim construction was necessary because the Joint Discovery Plan stated that claim construction was a central issue. *Id.* In addition, the Court admonished Plaintiff's response that a separate *Markman* process was necessary. *Id.* at 16. The Court noted that claim construction can come up in the context of summary judgment and that the Court specifically had requested a claim construction chart. *Id.* Plaintiff, in turn, maintains that it did not think claim construction was necessary and did not unilaterally prevent the process from occurring. Fees Opp'n at 13. Plaintiff also asserts that the magistrate judge could have ordered a separate *Markman* hearing or that Defendant could have contacted this Court and requested a change in the way the claim construction was handled. *Id.* at 13–14. Finally, Plaintiff notes that the Court found the claim construction process more effective at the second hearing. *Id.* at 14–15.

The Court finds that Plaintiff's unpreparedness to present a claim construction at the summary judgment hearing was not objectively unreasonable. Plaintiff was following direction from the magistrate judge, who declined to schedule a separate *Markman* hearing. *See id.* at 13–14. Defendant should have contacted the Court if it thought that a *Markman* hearing was required. *See id.* at 13 (citing ECF No. 113 at 93). Given these facts and the

confusion about the proper procedure under the magistrate judge's order, it was not objectively unreasonable that Plaintiff was not prepared to discuss claim construction at the summary judgment hearing.

> **2.** *Plaintiff's Motion to Exclude the Prosecution History from the Second Claim Construction Hearing Was Objectively Unreasonable*

Defendant asserts that Plaintiff's motion to strike the prosecution history of the '237 patent from the second claim construction proceedings was unreasonable. Mot. at 7. Defendant notes that it already had listed the prosecution history of the '237 patent in the Joint Claim Construction Chart. *Id.* Also, in denying the motion to strike, the Court noted that nothing from the prosecution history could conceivably be new four years into litigation. *Id.* (citing ECF No. 148 at 9–10). Plaintiff responds that, during a hearing, Defendant relied on a portion of the prosecution history not included in Defendant's claim construction chart. Fees Opp'n at 24. Plaintiff would have addressed these portions of the prosecution history in its own claim construction brief had it known that Defendant would rely on them. *Id.* Plaintiff also maintains that it was prejudiced by the failure to comply with the Patent Local Rules. *Id.*

The question of whether moving to exclude a patent's prosecution history from a claim construction hearing would render a case exceptional appears to be an issue of first impression. However, it is well-settled law that the prosecution history informs the meaning of the claim language. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005). A court should also consider the patent's prosecution history if it is in evidence. *Id.* The prosecution history provides evidence of how the Patent and Trademark Office and the inventor understood the patent and thus serves as an important component of the claim construction process. *See id.* Accordingly, moving to exclude portions of the prosecution history would be objectively unreasonable on the first day of a patent litigation action, let alone in the litigation's fourth year. Thus, this Court concludes that Plaintiff's motion to exclude portions of the prosecution history from a claim construction hearing was objectively unreasonable.

### 3. *Plaintiff's Flip-Flopping on Whether the Local Patent Rules Applied Was Objectively Unreasonable*

Defendant claims that Plaintiff's position that the Patent Local Rules did not apply makes the case exceptional. *See* Reply at 6. Defendant alleges that Plaintiff initially fought the application of the Patent Local Rules to avoid claim construction and confidential document production. *Id.* Later, Plaintiff changed its mind, claiming that the Patent Local Rules indeed did apply, and argued that Defendant's claim construction arguments were barred as untimely under the Patent Local Rules. *Id.* Defendant points out that this argument is especially unfair because Defendant had been trying to initiate claim construction proceedings from the beginning of the litigation. *See* Mot. at 15. Finally, Defendant asserts that Plaintiff's appeal to the Federal Circuit, arguing that the case was functionally a patent-infringement action, was outrageous given Plaintiff's previous assertion that the Patent Local Rules did not apply. Reply at 6. In response, Plaintiff notes that the magistrate judge agreed that the Patent Local Rules would not apply. Fees Opp'n at 7. Plaintiff claims that its belief that the central dispute of the suit would relate to a contract or the allegedly infringing product, rather than "the meaning of the '237 Patent," was why the Patent Local Rules did not apply. *Id.* at 12.

What makes Plaintiff's behavior exceptional is not that it changed its mind that the Patent Local Rules applied, but rather that it weaponized its change-of-mind against Defendant. Plaintiff's belief that the suit was primarily a contract or product dispute, especially given the magistrate judge's agreement that the Local Patent Rules did not apply, was not objectively unreasonable. In addition, Plaintiff's appeal mentioning that this was primarily a patent infringement case was reasonable, because at that point in the case, all Parties, and the Court, agreed that this was a patent case and that the Patent Local Rules applied. However, Plaintiff's attempt to use the Patent Local Rules against Defendant, when Defendant had tried to apply the Patent Local Rules to this case throughout the litigation, was objectively unreasonable and likely in bad faith. In addition, Plaintiff did not even apply the Patent Local Rules correctly, stating that claim construction was

untimely at the summary judgment stage when it was not. Mot. at 5. Thus, it was objectively unreasonable for Plaintiff to attempt to use the Local Patent Rules to bar claim construction.

### E.   Plaintiff's Overall Conduct Was Not Unreasonable

Determining a pattern of misconduct is not tied to a set of discrete facts, but rather to a specific type of litigation misconduct. *ThermoLife Int'l*, 922 F.3d at 1632. Isolated behavior, though objectively unreasonable, is not sufficient for a finding of litigation misconduct. *See id.* An unsuccessful litigation strategy does not in and of itself mean that the party's conduct was exceptional. S*ee LG Display*, 722 F. Supp. 2d at 474; *see also W. Plastics, Inc. v. Dubose Strapping, Inc.*, No. 5:15-CV-294-D, 2020 WL 5752095, at *3 (E.D.N.C. Sept. 24, 2020) ("[Defendant]'s strategy had its risks. That [Defendant] chose to roll the dice does not mean [Defendant] was destined to lose."). District courts should also examine whether finding a case exceptional would further the goals of compensation and deterrence. *ThermoLife Int'l*, 922 F.3d at 1632.

Although some of Plaintiff's behavior regarding claim construction was objectively unreasonable, *see supra* Section II.D §§ 2–3, as was Plaintiff's improper conference with its expert during a deposition, *see supra* Section II.B, these incidents, even in the aggregate, are not sufficient to find a pattern of misconduct. *See ThermoLife Int'l*, 922 F.3d at 1632. The Court finds that Plaintiff's litigation conduct is consistent with avoiding an unfavorable claim construction. In addition, the Court finds no compelling reason for compensation or deterrence. Indeed, the Court hesitates to award attorneys' fees against a party that followed a magistrate judge's orders. *See* Fees Opp'n at 13–14. As previously noted, the proper way to handle this fundamental disagreement would have been for Defendant to escalate the issue to this Court and request a separate *Markman* hearing. ECF No. 113 at 93.

In sum, while Plaintiff acted unreasonably in some aspects of this litigation, most notably regarding claim construction, the Court does not find these actions rise to an overall level of unreasonableness or bad faith warranting an exceptional case finding.

## BILL OF COSTS

Under the Civil Local Rules, the winning party is entitled as of right to certain costs from the losing party.  *See generally* S.D. Cal. CivLR 54.1.  There is a presumption in favor of awarding costs to the prevailing party, but the district court may refuse to award costs within its discretion.  *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003).  Here, as the prevailing party, Defendant has submitted a bill seeking a total of $24,217.45 in costs, *see generally* Bill; *see also* Declaration of Francis DiGiovanni in Support ("DiGiovanni Decl.," ECF No. 159-2) Ex. A ("Itemized Bill"), which Plaintiff partially opposes, *see generally* Costs Opp'n.  The Court will address each of Defendant's requests, and any arguments by Plaintiff in opposition thereto, in turn.

First, pursuant to Civil Local Rule 54.1(b)(6)(a), Defendant seeks costs of $16.48 for copying papers for the Early Neutral Evaluation conference, *see* Bill at 5; Itemized Bill at 8, which costs Plaintiff does not contest, *see* Costs Opp'n at 2.  Accordingly, the Court awards $16.48 in costs for copying.

However, Defendant and Plaintiff disagree about the acceptableness of the costs Defendant seeks for exemplification of patent file-wrappers.  Defendant seeks costs of $955 for patent file-wrappers pursuant to Civil Local Rule 54.1(b)(6)(a).  *See* Bill at 5; Itemized Bill at 8–9.  Plaintiff contests these costs because, under Rule 54.1(b)(6)(a), the cost of patent file-wrappers is taxable at the rate charged by the Patent and Trademark Office.  Costs Opp'n at 3.  By statute, this cost is $60 per file wrapper, 37 C.F.R. § 54.1(b)(6)(a), which, for five file-wrappers, results in a total of $300.  Costs Opp'n at 3.  The Court agrees with Plaintiff and awards Defendant the reduced sum of $300 in costs for the exemplification of patent file-wrappers.

Defendant and Plaintiff also disagree about the acceptableness of the costs Defendant seeks for deposition transcripts.  Per the Civil Local Rules, deposition transcripts and reporter fees are allowed as costs to the prevailing party.  S.D. Cal. CivLR 54.1(b)(3).  However, Rule 54.1(b)(3) does not allow for taxation of costs incurred for expedited processing.  *Zopatti v. Rancho Dorado Homeowners Ass'n*, No. 10CV1091,

2012 WL 92338, at *4 (S.D. Cal. Jan. 10, 2012).  Defendant seeks costs for transcript and/or court-reporter expenses relating to depositions totaling $7,614.05.  *See* Bill at 3–5; Itemized Bill at 8.  Plaintiff agrees that Defendant generally is entitled to these costs, except for a 2017 expedited deposition transcript for Dr. Burger.  Costs Opp'n at 2.  As Defendant did not specify the cost of an expedited deposition transcript in comparison to a standard one, *see generally* Bill, Plaintiff suggests that the cost be taxed at a 25% reduction.  Costs Opp'n at 2.  This is roughly the reduction in price between an expedited and ordinary transcript in the Federal Court Reporting Program.  *See id.* (citing Fed. Ct. Reporting Program, https://www.uscourts.gov/services-forms/federal-court-reporting-program).  The Court agrees with Plaintiff's assessment as to the reasonable cost of the deposition transcript for Dr. Burger and awards reduced deposition costs in the amount of $7,236.93.

Defendant and Plaintiff also disagree as to what costs for visual aids Defendant may recover.  Preparation of visual aids is taxable as costs if the visual aids are reasonably necessary to assist the jury or the court in understanding issues.  S.D. Cal. CivLR 54.1(b)(7)(a).  Costs may be awarded for the physical preparation and duplication of documents, but not the intellectual effort involved in their preparation.  *Romero v. City of Pomona*, 883 F.2d 1418, 1428 (9th Cir. 1989).  Document review is intellectual effort, rather than physical preparation, and thus such costs are not awarded as part of the preparation of visual aids.  *See Jardin v. DATAllegro, Inc.*, No. 08-CV-1462, 2011 WL 4835742, at *9 (S.D. Cal. Oct. 12, 2011).  Moreover, courts have found that using a more engaging method of conveying information does not make that method necessary.  *See, e.g.*, *Affymetrix, Inc. v. Multilyte Ltd.*, No. C 03-03779, 2005 WL 2072113, at *4 (N.D. Cal. Aug. 26, 2005) ("While using animated PowerPoint presentations was admittedly a more engaging method of conveying information, it was not necessary.  Poster boards would have sufficed.").  Thus, costs for visual aids are taxable if (1) they constitute physical preparation, but not intellectual effort; and (2) the visual aids are reasonably necessary to assist the Court in understanding the case's issues.

/ / /

Defendant seeks to recover $13,487.50 in costs paid to TrialGraphix to physically prepare visual aids. *See* Bill at 6–7; Itemized Bill at 9. Plaintiff raises several objections to this sum. First, Plaintiff argues that certain costs, totaling $3,225.00, concern the review and discussion of the visual aids rather than their preparation and therefore are not recoverable. Costs Opp'n at 3–5 (citing DiGiovanni Decl. Ex. J ("TrialGraphix Invoices") at 31–33). The Court agrees with Plaintiff that visual-aid planning and review are intellectual efforts and thus should not be taxed as costs. *See Jardin*, 2011 WL 4835742, at *9. Accordingly, the Court will not tax the $3,225.00 in costs identified by Plaintiff.

Second, Plaintiff alleges that Defendant's use of animated slides was not reasonably necessary to help the Court understand the issues of the case, and thus the remaining costs of $10,262.50 should be reduced by half. Costs Opp'n at 4–5. In support, Plaintiff cites *Affymetrix*, where the court held that it was not reasonably necessary for the plaintiff to use engaging PowerPoint presentations. *Id.* (citing 2005 WL 2072113, at *4). In *Affymetrix*, the court awarded costs for creating poster boards but not for creating a PowerPoint presentation. 2005 WL 2072113, at *4. However, the present case is distinguishable from *Affymetrix*. Here, Defendant did not use poster boards at all, but PowerPoint presentations alone, whereas in *Affymetrix* the plaintiff used *both* poster boards and a PowerPoint presentation. *See id.* The Court finds that Defendant's use of slides was reasonably necessary given the complexity of the case. At any rate, the Court is not persuaded by Plaintiff's method of removing the allegedly "unnecessary" costs. Plaintiff's proposal simply to divide the costs by two is rough and unreasoned. *See* Costs Opp'n at 5. Given the presumption that costs are awarded to the winning party, *see Champion Produce*, 342 F.3d at 1022, and the lack of a reasoned method for eliminating the allegedly unnecessary costs incurred in making the PowerPoint slides "engaging," the Court declines to divide the remainder of the costs by a factor of two and instead awards costs in the amount of $10,262.50 for Defendant's visual aids.

Finally, the Parties have different opinions as to the amount of costs to be awarded for Plaintiff's appeal. Appellate costs are awardable as allowed by the Federal Rules of

Appellate Procedure. *See* S.D. Cal. CivLR 54.1(b)(12). Under Federal Rule of Appellate Procedure 39(e), costs are allowed for: "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a bond or other security to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." In addition, 28 U.S.C. § 1920(4) lists "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" as costs recoverable under Rule 39(e).

Plaintiff claims that Defendant's costs for printing documents filed for the appeal are not encompassed by Rule 39(e). Costs Opp'n at 5. Plaintiff further avers that Defendant's costs for filing an appendix should not be recoverable, as only the appellant (in this case, Plaintiff) is required to file an appendix, whereas the appellee (in this case, Defendant) has the discretion to file an appendix. *Id.* at 7. Finally, Plaintiff contends that, even if these costs are taxable, Defendant's costs should be limited to paper copies at the rate of reimbursement of $0.08 per page and $2.00 for a cover, and limited to six copies of each document. Fed. Cir. R. 25(c)(3); Fed. Cir. Form 24; *Id.* at 5–6. The Court will address each of Plaintiff's arguments regarding appellate fees in turn.

First, Plaintiff's argument that printing documents filed for an appeal should not be taxed is unpersuasive. *See* Costs Opp'n at 5. These costs are covered under section 1920(4) as "the costs of making copies of any materials where the copies are necessarily obtained for use in the case," which would include paperwork filed for the appeal. Second, Plaintiff's claim that Defendant should not be awarded costs for filing an appendix is also unpersuasive. *See id.* at 6. Although the appellant is required to file an appendix, the appellee may do so as well, Fed. R. App. Proc. 30(a), 30(b), and Plaintiff fails to give any convincing reason why these costs should not be awarded to Defendant as the prevailing party. Finally, the Court agrees with Plaintiff that the awardable printing costs should be limited to those mandated by Federal Circuit Rule 25(c)(3) and Federal Circuit Form 24. *See* Costs Opp'n at 5–6. Thus, the Court awards Defendant a total of $481.44 in costs relating to the appeal, calculated as follows:

| Item | Pages | Cover | Cost/Copy | # Copies | Total |
|------|-------|-------|-----------|----------|-------|
| Appellee's Br. | 74×0.08=$5.92 | $2.00 | $7.92 | ×6 | $47.52 |
| Appendix | 845×0.08 =$67.60 | $2.00 | $69.60 | ×6 | $417.60 |
| Supp. Br. | 9×0.08 =$0.72 | $2.00 | $2.72 | ×6 | $16.32 |
| **Total** | | | | | **$481.44** |

Accordingly, for the reasons provided above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Bill of Costs, awarding costs to Defendant in the total amount of $18,297.35.

## CONCLUSION

Based on the foregoing, the Court concludes that, under the totality of the circumstances, Defendant has not shown that this case is exceptional such that an award of attorneys' fees is justified. The Court therefore **DENIES** Defendant's Motion for Exceptional Case Finding and Attorneys' Fees (ECF No. 158) and **GRANTS IN PART AND DENIES IN PART** Defendant's Bill of Costs (ECF No. 159).

**IT IS SO ORDERED.**

Dated: July 20, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

22

14-CV-2513 JLS (KSC)